IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CONSTANCE SWANSTON, WOMEN'S ELEVATED SOBER LIVING, LLC, AND SHANNON JONES<br><br>v.<br><br>CITY OF PLANO, TEXAS | §<br>§<br>§<br>§   Civil Action No. 4:19-cv-00412-ALM<br>§              Judge Mazzant<br>§<br>§<br>§ |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants, the City of Plano, Texas (the "City") and its Board of Adjustment (the "BOA") (together, "Defendants") file this Motion for Protective Order.[1]

### I.
### Introduction

1.1     Plaintiffs are the operator of a for-profit sober living recovery home, the managing member of the home's operator, and one resident of the home who is also the house manager. Plaintiffs allege that the City's ordinance limiting the sober living home to ten unrelated residents, as well as the BOA's denial of the home's request for an accommodation to house 15 residents, violate the Fair Housing Act and Americans with Disabilities Act.

1.2     The BOA denied the home's request for an accommodation at an open meeting. Plaintiffs attended the meeting, and Plaintiffs' counsel made a presentation in support of the requested accommodation. Exhibits were introduced. Members of the BOA also spoke on the record. A transcript was made of the proceedings, and this transcript has been produced to Plaintiffs. This lawsuit followed.

---

[1] Defendants do not request oral argument on this motion. This motion, and Plaintiffs' responses, should provide sufficient information for the Court to determine whether a protective order is appropriate.

1.3     Plaintiffs have requested the depositions of several City employees, members of the BOA, and a corporate representative for the City and the BOA. Defendants object to Plaintiffs request to depose Pat Morgan, Robert Miller, and Jim Norton—three members of the BOA (the "BOA Witnesses")—because their testimony is protected by the mental process privilege, judicial process privilege, and deliberative process privilege (the "Privileges"), and because their testimony would be cumulative and/or irrelevant.

1.4     Additionally, Defendants object to several of Plaintiffs' proposed topics of deposition for the City's and BOA's corporate representatives, because testimony about these topics is protected by the Privileges. Defendants do not object to producing a corporate representative for deposition, only to certain proposed topics, to the extent they violate the Privileges.

1.5     Defendants seek an order from this Court protecting the BOA Witnesses from having to testify at deposition, and an order protecting Defendants' corporate representatives from having to testify about topics covered by the Privileges.

## II.
## Argument and Authorities

### A.     The BOA is a quasi-judicial body.

2.1     "It has been held that boards of adjustment are quasi-judicial." *Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex. App.—Beaumont 1973, no writ) (citing *Dallas v. Halbert*, 246 S.W.2d 686, 691 (Tex. App.—Dallas 1952, no writ) (a "Board of Adjustment's functions are administrative, fact finding, and quasi-judicial in nature."); *See* TEX. LOC. GOV'T CODE § 211.008 - § 211.011 (providing that municipalities may appoint a board of adjustment to adjudicate requests for special exceptions to the terms of zoning ordinances); *see also Washington v. Dallas*, 159 S.W. 2d 579, 581 (Tex. App.—Dallas 1942, no writ) ("It is well settled in states where the question has

arisen, that boards of adjustment . . . act as quasijudicial bodies"). Accordingly, the BOA is a quasi-judicial body, and exercised its judicial functions when it considered and rejected the home's request for an accommodation.

### B. The Privileges.

2.2 "The Courts have recognized an exemption from compulsory testimony when necessary to protect the integrity of governmental officials whose duties involve the exercise of judicial **and quasi-judicial** authority." *Gary W. v. Louisiana Dep't of Health & Human Resources*, 861 F.2d 1366, 1368 (5th Cir. 1988) (emphasis added). This is called the "Mental Process Rule." *Id.* "The Mental Process Rule has been applied to prevent the involuntary testimony of judicial **and quasi-judicial** officers." *Id.* at 1369 (emphasis added).

2.3 *Gary W.*, cited *supra*, is the leading Fifth Circuit case explaining the Mental Process Rule. In *Gary W.*, the Court appointed a special master to issue a formal report and recommendation concerning incidents of abuse and neglect of the plaintiffs, a class of persons with mental disabilities. *Id.* at 1367. The State subpoenaed the special master to discover the substance of her report and her mental impressions, but the Court quashed the subpoena, finding that the special master was performing a quasi-judicial function, and therefore "an examination of her mental process in making [her] recommendation would have been inappropriate." *Id.* at 1638.

2.4 The *Gary W.* Court relied on several U.S. Supreme Court and Fifth Circuit cases, including *United States v. Morgan*, 313 U.S. 409, 61 S. Ct. 999, 85 L. Ed. 1429 (1941) (protecting the Secretary of Agriculture from compulsory testimony about why he issued an order setting maximum rates to be charged by market agencies for stockyard services because a "proceeding before the Secretary 'has a quality resembling that of a judicial proceeding'" and "[s]uch an examination of a judge would be destructive of judicial responsibility."); *Bank of Commerce of*

*Laredo v. City National Bank of Laredo*, 484 F.2d 284 (5th Cir.1973), cert. denied, 416 U.S. 905, 94 S. Ct. 1609, 40 L. Ed. 2d 109 (1974) (applying the Mental Process rule and refusing to allow the plaintiff to depose the Comptroller of the Currency about his decision to set aside a national bank charter granted to a bank because "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'"). Further, *Gary W.* favorably quoted a Western District of Virginia case for the proposition that the examination of a quasi-judicial officer would be permitted "only with a strong showing of bad faith or improper behavior. Following this principle, courts have refused to issue subpoenas for oral testimony of the decision-makers as to the basis for their opinions absent extreme and extraordinary circumstances." *Gary W.*, 861 F.2d at 1369 (quoting *United States v. Dowdy*, 440 F. Supp. 894, 896 (W.D.Va. 1977)). As shown by these cases cited by the Fifth Circuit, there is widespread agreement that the Mental Process Rule/Privilege protects the mental impressions of quasi-judicial officers.

2.5     Other jurisdictions also apply the Mental Process Rule (also called the judicial process privilege). These courts have also upheld judicial and quasi-judicial officials' privilege from testimony. *See, e.g., Mendez v. City of Chicago*, 2020 U.S. Dist. LEXIS 47530, *4 (N.D. Ill.) ("a judge may decline a subpoena requiring him to answer questions about his court proceedings or the rationale for his findings"; the privilege "exists to further the principle that courts speak through their records"; "Although the validity of this privilege has been 'universally recognized' a relatively small number of cases addresses the issue, likely because it is so well-entrenched in both federal and state law." (internal citations omitted)).

2.6     In addition to the mental process and judicial process privileges, "the U.S. Supreme Court has recognized a deliberative process privilege covering . . . 'deliberations comprising part

of a process by which governmental decisions and policies are formulated.'" *Harding v. Cnty. of Dallas*, 2016 U.S. Dist. LEXIS 177937, *34 (N.D. Tex. 2016) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Importantly, the privilege protects information which "reflect(s) the **subjective intent**" of the decision maker. *Id.* at *33; *see also, id.* at n.7 ("the Supreme Court recognized a testimonial privilege for state legislators, severely limiting—but not entirely foreclosing—the possibility of piercing the privilege in discriminatory-intent claims") (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)). As such, in the Fifth Circuit, the privilege applies to communications and mental processes of government decision makers **even when intent is at-issue.** This makes sense—the subjective intent of any one member of a quasi-judicial board (like the BOA) is irrelevant because a board of adjustment can speak only through the body corporate. *See* analysis below.

      **C.**    **The BOA Witnesses' testimony is privileged.**

2.7    Plaintiffs request to depose the BOA witnesses "to find out what was on the minds of the members of the City Council and Board of Adjustment when they made the decisions [Plaintiffs] believe were intended to discriminate against disabled individuals" and "to ask questions about what was discussed in their executive, off the record sessions, and . . . about their own intentions." See **Exhibit 1**, a true and correct copy of email correspondence between Plaintiffs' counsel and Defendants' counsel discussing this discovery dispute. This information is, without question, covered by the Privileges.

2.8    "What was on the minds" of the BOA Witnesses pertains only to their mental process. "What was discussed in their executive, off the record sessions" reflects these decision makers' deliberations. The BOA Witnesses' "own intentions" are their subjective intents, and part

of their mental impressions/process. Any deposition of the BOA Witnesses is sure to intrude upon these privileged areas, and should thus be prohibited.

2.9 Importantly in this case, there is **no need** to depose the BOA Witnesses because a transcript of the proceedings was made, and has been produced to Plaintiffs. Therefore, there is another, less invasive means of discovering what the BOA Witnesses considered at the meeting in which the requested accommodation was denied.

### D. The BOA Witnesses' testimony is cumulative and/or irrelevant.

2.10 Moreover, the subjective intent of any one member of a quasi-judicial board (like the BOA) is irrelevant because a board of adjustment can speak only through the body corporate. *See Lufkin v. McVicker*, 510 S.W.2d 141, 143 (Tex. App.—Beaumont, no writ) ("the Board of Adjustment is like unto a commissioners court which 'speaks through its minutes, and not by the mouths of the members of the body.'" (quoting *Gano v. County of Palo Pinto*, 71 Tex. 99 (1888)). Therefore, the intent of the BOA Witnesses is irrelevant. The discriminatory intent of the BOA, if any (which is denied), can be gleaned from the record made of the BOA meeting (which again, has been transcribed and produced to Plaintiffs). As such, the BOA Witnesses should not be compelled to testify.

2.11 Additionally, even if the testimony of the BOA Witnesses is not privileged (it is) and not irrelevant (it is), it is cumulative. There is no need for any of the BOA Witnesses to testify because the BOA will produce a corporate representative to testify about non-privileged matters. There is no need for one, let alone three, BOA Witnesses to testify. A protective order is thus appropriate.

### D. The Topics request testimony subject to the Privileges.

2.12   Defendants also object to several of the topics Plaintiffs about which propose to question Defendants' respective corporate representatives because these topics are covered by the Privileges. Attached hereto as **Exhibit 2** (City) and **Exhibit 3** (BOA) are Plaintiffs' proposed deposition topics for the City's and BOA's corporate representatives.

2.13   Plaintiffs seek to depose the City's corporate representative about the following topics that are subject to the Privileges:

*2. Any information in the City's possession that the City regards as casting doubt on whether the women living in the Residence have a handicap as that term is defined in the Fair Housing Act.*

This topic seeks information about government officials' subjective mental impressions about alleged "doubts" about the Plaintiffs' clients' disabilities.

*3. The reasons for the adoption of and any amendments to the Plano Zoning Ordinance that concern group homes, including but not limited to group homes that meet the definition of a "Household Care Facility" or "Household Care Institution"*

This request seeks the **subjective reasons** why the City adopted certain ordinance amendments.

*4. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the change in definition of "Household Care Facility" and "Household Care Institution" made pursuant to Ordinance 2004-09-18.*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

*5. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the definition of "Household Care Facility" and "Household Care Institution" in the Plano Zoning Ordinance as adopted in Ordinance 2006-4-24*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

*6. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the change in definition of "Household Care Facility," "Household Care Institution," and "Household" proposed in Zoning Case 2009-09.*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

*7. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with any other change in the definition of "Household Care Facility," "Household Care Institution," or "Household" adopted by the City from 2001 to the present.*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

*…*

*9. Any studies, reports, data compilations or other materials concerning sober living facilities, including but not limited to:*

*a. the effect of sober living facilities on property values,*
*b. the effect of sober living facilities on neighborhood character, or*
*c. the effect of sober living facilities on neighborhood crime rates*

*gathered or considered by the City, the Board of Adjustment, or any member of the City staff in connection with the Request for Accommodation that is the subject of this lawsuit.*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

*10. Any information not requested in item 9 above concerning sober living facilities, including but not limited to:*

*a. the effect of sober living facilities on property values,*
*b. the effect of sober living facilities on neighborhood character, or*
*c. the effect of sober living facilities on neighborhood crime rates*

*gathered or considered by the City, the Board of Adjustment, or any member of the City staff in connection with the Request for Accommodation that is the subject of this lawsuit.*

To the extent this topic seeks to discover information about subjective impressions and/or deliberations about the listed materials, it falls under the Privileges.

...

13. The rationale for every regulation, ordinance, code or other restriction that limits the number of members of a "Household" who can reside at 7312 Stoney Point Drive.

This topic seeks information about the **subjective rationale** for government actions/decisions, which is undoubtedly covered by the Privileges.[2]

...

19. Every reason the City has chosen to fix the number of residents in a Household Care Facility at 10 as opposed to six, eight, or some other number.

This topic seeks information about the **subjective reasons** for government actions/decisions, which is undoubtedly covered by the Privileges.

...

22. The rationale for the City's adoption of its Backyard Cottage ordinance and for the particular limits and requirements for backyard cottages regulated by it.

This topic seeks information about the **subjective rationale** for government actions/decisions, which is undoubtedly covered by the Privileges.

2.12   Because each of the topics above seeks to discover subjective rationales, reasons, considerations, deliberations, and other information covered by the Privileges, the Court should issue an order protecting the corporate representative for the City from having to testify about these topics.

2.14   Plaintiffs seek to depose the BOA's corporate representative about the following topics that are subject to the Privileges:

---

[2] It is also simply impossible for a single corporate representative to answer questions about the subjective intent of an entire government entity's reasons for a particular action or decision.

TOPIC A: The BoA's knowledge and understanding of the Plano Zoning Code, including all information on this topic related to:

1. The basis and purpose of the Plano's Zoning Code;

This topic asks for **subjective reasons** for the zoning code, and is covered by the Privileges.

2. The basis and purpose of the following zoning districts as defined and referred to under Plano's Zoning Code:

a. SF-A
b. PH
c. SF-6
d. SF-7
e. SF-9
f. SF-20

This topic asks for **subjective reasons** for zoning districts, and is covered by the Privileges.

3. The basis, purpose, and applicability of the below definitions under Plano Zoning Code contained in the Zoning Code's definition section:

a. Single-family
b. Rehabilitation Care Facility
c. Rehabilitation
d. Household Care Facility

This topic asks for subjective purposes for zoning regulations, and is covered by the Privileges.

4. How the terms in (3) above are permitted or not in residentially zoned districts single family;

This topic is a continuation of the topic above.
...

TOPIC B: The BoA's knowledge and understanding of the enactment, administration, and enforcement of Plano Ordinance 2004-9-18, including all information on this topic related to:

and

TOPIC C: The BoA's knowledge and understanding of the enactment, administration, and enforcement of Plano Ordinance 2006-4-24, including all information on this topic related to:

and

TOPIC D: The BoA's knowledge and understanding of the enactment, administration, and enforcement of Plano Ordinance 2009-6-9, including all information on this topic related to:

and

TOPIC E: The BoA's knowledge and understanding of the enactment, administration, and enforcement of Plano Ordinance 2015-06, including all information on this topic related to:

1. The basis, purpose, and authority of the Ordinance;

This topic asks for the subjective basis and purpose of the BOA for enacting the ordinance.

...

3. The maximum occupancy rule under the Ordinance, including:
    a. The basis, purpose, and authority for the rule of the Ordinance;
    ...
    c. The criteria for evaluating variances of the rule;
    d. How the criteria for evaluating variances is applied;
    e. Conditions the BoA Council has imposed on variances that have been granted;
    f. Studies conducted by or reviewed by the BoA relating to the occupancy rule; and
    g. Evidence that the occupancy rule is clinically beneficial to residents of boarding home facilities.

This topic asks for the subjective basis and purpose of the BOA for its decisions. It also seeks to uncover deliberations between BOA members as to how certain criteria are applied in specific situations.

4. The basis of definitions under that Ordinance;

This topic asks for the subjective basis and purpose of the BOA for definitions in the ordinance.

...

9. Denial or grant of accommodation requests under the Ordinance since April 23, 2013 from boarding home facilities and any conditions that have been placed on the boarding home facilities when such accommodations were granted;

This topic asks for the **subjective reasons** for BOA decisions.

*TOPIC F: The BoA's knowledge and understanding of Women's Elevated Sober Living, LLC's sober recovery home located at Stoney Point Street, Plano, Texas ("Stoney Point Home"), including all information on this topic related to:*

*1. BoA communications relating to Women's Elevated Sober Living, LLC that have already been produced by the BoA and/or the City of Plano, Texas in this lawsuit;*

*2. Women's Elevated Sober Living, LLC variance permit application submitted to the BoA in 2019 including, but not limited to, the evaluation, process of evaluating, criteria used, and decision on the permit application;*

*3. Women's Elevated Sober Living, LLC's 2018 reasonable accommodation request to the BoA to permit certain number residents at its Stoney Point Home, including, but not limited to, the evaluation, process of evaluating, criteria used, and decision on the accommodation request;*
*4. Evidence submitted to the BoA from anyone concerning Women's Elevated Sober Living, LLC's variance request to the BoA in 2019 concerning the Stoney Point Home request for an accommodation and/or variance;*

*5. Communications from the public or other third-parties to the BoA and from the BoA to the public or other third-parties concerning Women's Elevated Sober Living, LLC's variance request and accommodation request made to the BoA in 2019 concerning the Stoney Point Home;*
*6. Communications from and between Plano to the BoA and from the BoA to Plano concerning Women's Elevated Sober Living, LLC's variance and accommodation request made to the BoA in 2019 concerning the Stoney Point Home; and*

*7. Discussion among the members of the BoA on May 28, 2019 of the Board of Adjustment's meeting to consider the Women's Elevated Sober Living, LLC's request for accommodation, including in particular:*

*a. Whether Women's Elevated Sober Living LLC provided evidence it was seeking an accommodation on behalf of disabled individuals and whether any contrary evidence was presented during the hearing;*

*b. The evidence with respect to the reasonableness or lack of reasonableness of the request presented during the meeting and considered by the BoA;*

*c. The evidence with respect to the necessity or lack of necessity of the request presented during the meeting and considered by the BoA;*

*d. Any other factors considered by the BoA in reaching its decision;*

*e. The Board of Adjustment's consideration of written materials submitted to it with respect to the request, including the source of such materials;*

    *f. The reason for the Board's decision to deny the request for Women's Elevated Sober Living LLC.*

These topics seek information about the subjective intent of the BOA, the reasons for the BOA's decisions, the deliberations between BOA members, and the mental process of the BOA's decisions.

  *TOPIC G: The BoA's knowledge and understanding of the Federal Fair Housing Act Amendments of 1988, 42 U.S.C. § 3601, et seq., and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., including all information on this topic related to:*

  *1. Persons with disabilities in recovery from substance abuse or addiction; and*

  *2. Sober living homes or recovery homes for persons with disabilities from substance abuse.*

These topics request BOA members' subjective understandings of the law, including their mental processes for applying those understandings to the issues in this case. Further, these topics ask lay persons to make legal conclusions.

  2.15 Because each of the topics above seeks to discover subjective rationales, reasons, considerations, deliberations, and other information covered by the Privileges, the Court should issue an order protecting the corporate representative for the BOA from having to testify about these topics.

  **E.** **Defendants have not waived the Privileges.**

  2.16 Plaintiffs argue that Defendants have waived the Privileges by producing documents that might be subject to the Privileges. Defendants contend that these documents are not subject to the Privileges because they merely reveal the factual information concerning the BOA's decision and the City's ordinance. Factual information is discoverable. As such, Defendants have not waived the Privileges. And, practically, Defendants should not be punished

for disclosing information that they did not consider privileged, and then be forced to reveal privileged information at a deposition, which is by its nature more invasive and time-consuming.

## III.
## Conclusion and Prayer

3.1     For the reasons above, the Court should issue an order protecting Pat Morgan, Robert Miller, and Jim Norton from having to testify at deposition, and protecting Defendants' respective corporate representatives from having to testify about privileged topics.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/ Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
**Lucas Henry**
State Bar No. 24101901
1700 Redbud Blvd, Suite 300
McKinney, TX 75070
(Ph) 214-544-4000
(Fx) 214-544-4040
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

I certify that counsel for the parties conferred on June 19, 2020 concerning the relief requested above as required by Local Rule CV-7(h) and that this Motion is opposed.

*/s/Lucas Henry*
Lucas Henry

## **CERTIFICATE OF SERVICE**

    I certify that on June 23, 2020 a true and correct copy of the foregoing was served upon Plaintiffs' counsel.

                                      */s/Lucas Henry*
                                      Lucas Henry