# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CONSTANCE SWANSTON and | § | |
| WOMEN'S ELEVATED SOBER LIVING | § | |
| LLC., and SHANNON JONES | § | Civil Action No.  4:19-CV-00412 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| CITY OF PLANO, TEXAS and CITY OF | | |
| PLANO'S BOARD OF ADJUSTMENT | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants City of Plano (the "City") and City of Plano's Board of Adjustment's (the "BOA") Motion for Protective Order (Dkt. #41).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff Women's Elevated Sober Living LLC ("Elevated") operates a sober living home in Plano, Texas (the "Home").  Plaintiff Constance Swanston is a resident of the Home.  A complaint was issued about the Home being in violation of the City's zoning restrictions.  Elevated applied for a reasonable accommodation in the form of a variance with the BOA.  The BOA denied Elevated's request for a reasonable accommodation; as a result, Elevated filed this suit, alleging violations of the Fair Housing Act (the "FHA") and the Americans with Disabilities Act (the "ADA").

On June 5, 2019, Plaintiffs filed their original complaint against the City (Dkt. #1). On June 12, 2019, Plaintiffs filed their amended complaint, adding Shannon Jones ("Jones") as a plaintiff (Dkt. #2).

On June 23, 2020, Defendants filed a Motion for Protective Order, seeking certain protections for the members of the BOA and Defendants' corporate representatives (Dkt. # 41).

On June 26, 2020, Jones filed a response to Defendants' motion (Dkt. #42). That same day, Swanston and Elevated also filed their response to the motion (Dkt. #43). Defendants did not file a reply.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. The rule provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Under Rule 26(c)(1), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The burden is upon the party seeking the protective order "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## ANALYSIS

Defendants ask the Court to issue a protective order to prevent Plaintiffs from deposing two members of the BOA—Pat Morgan and Robert Miller (the "BOA Members").[1] Defendants

---

[1] Initially, Defendants also sought a motion for protective order protecting BOA member Jim Norton. At the discovery dispute hearing on July 24, 2020, the parties agreed to allow the deposition of Jim Norton on issues that were not

2

also object to several of the proposed deposition topics for the BOA's corporate representative (the "BOA Representative") and the City's corporate representative (the "City Representative") (collectively, the "Representatives") (Dkt. #41 at p. 2).  In their objections, Defendants assert that the deliberative and mental[2] process privileges protect the BOA Members and the Representatives. Plaintiffs assert that these privileges do not apply; even if they did, Plaintiffs claim that the privileges have been overcome.  The Court will discuss each asserted privilege in turn,[3] ultimately determining that while some of the discovery sought is privileged, that privilege has been overcome.

## I.    Deliberative Process Privilege

The deliberative process privilege "protects oral or written communications during a deliberative process." *Feltz v. Bd. of Cty. Comm'rs*, No. 18-CV-298-CVE-JFJ, 2020 WL 2039250, at *9 n.10 (N.D. Okla. Apr. 28, 2020) (citing *Irons v. Sisto*, No. CIV S-05-0912 RRBKJM, 2007 WL 4531560, at *3–4 (E.D. Cal. Dec. 18, 2007)).  Specifically, it "protects predecisional materials 'reflecting deliberative or policy-making processes,' but not materials that are 'purely factual.'" *S.E.C. v. Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013) (quoting *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982)).  "Facts are privileged to the extent they are intertwined within analysis or evaluation." *Id.*; *see EEOC v. Fina Oil & Chem. Co.*, 145 F.R.D. 74, 75 (E.D. Tex. 1992).

---

challenged as privileged provided that he could not be deposed twice.  Accordingly, the Court's Order does not address the deposition of Jim Norton as he may not be deposed again.

[2] While courts have used the terms "judicial process privilege," "judicial deliberative process," and "mental process privilege," they all refer to the same privilege.  *See Cain v. City of New Orleans*, No. 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016) (stating that the judicial privilege is "sometimes known as the judicial deliberative process or mental process privilege").  For simplicity, the Court refers to the privilege as the "mental process privilege."

[3] There are few decisions that discuss these privileges. *See Cain*, 2016 WL 7156071, at *3 (stating that there is absence of "binding Fifth Circuit precedent concerning the judicial deliberative process privilege").

The purpose of the privilege is to protect "the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on the 'frank discussion of legal or policy matters' in writing." *Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014) (citing *Skelton*, 678 F.2d at 38 (5th Cir. 1982) (quoting *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975)).   In order for the deliberative process privilege to apply, the discovery sought must be both deliberative and predecisional.  *DaSilva v. U.S. Citizenship & Immigr. Servs*., No. 13-13, 2013 WL 4780267, at *4 (E.D. La. Sept. 4, 2013).   To be deliberative, the discovery sought would, if disclosed, expose an agency's decision-making process in such a way that would chill candid discussion.  *Id.* Furthermore, to be predecisional, the discovery sought must have been prepared in order to assist the decision-maker in arriving to a decision.  *Id.*

"[T]he deliberative process privilege is qualified and can be overcome 'by a sufficient showing of need.'"  *Harding v. Cty. of Dall.*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) (citations omitted).   Indeed, Plaintiffs may take the requested depositions if their "need for the materials and the need for accurate fact-finding override [Defendants'] interest in non-disclosure." *Doe*, 2014 WL 6390890, at *2 (citing *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).   Courts consider multiple factors when determining whether the deliberative process privilege is overcome:

> (1) the relevance of the evidence[,] (2) the availability of other evidence, (3) the government's role in the litigation, . . . (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions . . . (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

4

*N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (citation omitted); *see also Doe*, 2014 WL 6390890, at *2 (citations omitted) (applying these factors and permitting discovery in a § 1983 case).

## II.     Mental Process Privilege

"Related to the deliberative process privilege—indeed, perhaps inherently part of it—is . . . the mental process privilege." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122; *see also Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) (stating that "courts consistently have determined that the 'mental process privilege is "inextricably intertwined" with the deliberative process privilege'") (citations omitted).  The Supreme Court has addressed the principle behind this privilege, indicating that the "examination of a judge's 'mental processes' regarding a judicial proceeding 'would be destructive of judicial responsibility' and that a judge 'cannot be subjected to such a scrutiny.'" *Feltz*, 2020 WL 2039250, at *9 (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).

In its application, the mental process privilege has been used "to prevent the involuntary testimony of judicial and quasi-judicial officers." *Gary W. v. La., Dep't of Health & Human Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988).  Specifically, it prevents judicial officers' compelled testimony "concerning the mental processes used in formulating official judgments or the reasons that motivated [them] in the performance of [their] official duties." *Feltz*, 2020 WL 2039250, at *9 (citations omitted).  The mental process privilege generally serves three purposes: "(1) ensuring the finality of legal judgments; (2) protecting the integrity and quality of decision-making 'that benefits from the free and honest development of a judge's own thinking . . . in resolving cases before them'; and (3) protecting independence and impartiality and permitting judges to decide cases without fear or favor." *Id.* (citing *Cain*, 2016 WL 7156071, at *3).

There are two limitations on the privilege.  First, the mental process privilege "does not extend to deliberations regarding administrative or executive acts performed by judges." *Id.* (citing *Cain*, 2016 WL 7156071, at *3; *Sykes v. Okla. Police Dep't*, No. CIV-13-1060-M, 2014 WL 1612680, at *2 (W.D. Okla. Apr. 22, 2014)).  Second, the mental process privilege "does not extend to 'matters of fact' that 'do not probe into the mental processes employed in formulating the judgment in question.'" *Id.* (citing *United States v. Roebuck*, 271 F. Supp. 3d 712, 719 (D. V.I. 2003)).  In determining whether a factual matter exists, the Court "must scrutinize whether factual inquiries seek the foundation for a judge's decision-making process on a particular matter." *Id.* (citing *Roebuck*, 271 F. Supp. 3d at 719; *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122 (explaining that factual material may be "so interwoven with deliberative material" that it deserves protection)).

Still, the mental process privilege—like the deliberative process privilege—is one that is qualified. *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122 (citations omitted).  It can be overcome "[i]f a sufficient showing of need is made." *Cain*, 2016 WL 7156071, at *5.  Due to the similar policy concerns that drive the two privileges, the Court finds that "the factors listed above as to whether the deliberative process privilege should be overcome [will] be used as guidance in determining whether the mental process privilege should be overcome." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1123.

In determining whether to issue the requested protective order, the Court will first determine whether a privilege applies to the discovery sought.  If there is discovery that is privileged, the Court will then consider whether that privilege is overcome.

## III.     Depositions of BOA Members

Defendants assert that the BOA Members' testimony is protected by the deliberative and mental process privileges because the BOA Members are quasi-judicial officers and their sought testimony reflects their subjective intent in decision making (Dkt. #41 at pp. 5–6).  The Court agrees.[4]

As described above, courts have applied the mental process privilege to prevent quasi-judicial officers from involuntarily testifying.  *See Gary W.*, 861 F.2d at 1369 (finding the deposition of a special master was improper to the extent the discovery sought information about the special master's process when performing a quasi-judicial function).  Furthermore, boards of adjustment are quasi-judicial bodies.  *City of Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.) (citing *Washington v. City of Dall.*, 159 S.W.2d 579, 581 (Tex. Civ. App.—Dallas 1942, no writ); *City of Dall. v. Halbert*, 246 S.W.2d 686, 691 (Tex. Civ. App.—Dallas 1952, writ ref'd n.r.e.); 8A MCQUILLIN, MUNICIPAL CORPORATIONS § 25:304 (1965 Rev. Vol.)).  Because the BOA Members were serving as quasi-judicial officers when they denied Elevated's request for accommodation, the mental process privilege applies here.  *Gary W.*, 861 F.2d at 1369.  Thus, provided that the qualified privilege is not overcome, the BOA Members cannot be compelled to testify as to their mental processes in reaching their decision to deny the accommodation to Defendants.  *Id.*

## IV.     Deposition of the BOA Representative

Defendants also seek a protective order on various deposition topics provided for the BOA Representative, arguing that those topics seek the BOA Members' subjective understanding of the

---

[4] Unlike for the City and BOA Representatives, Defendants do not specify which topics will be asked to the BOA Members.  Accordingly, the Court's analysis does not apply to non-privileged deposition topics—i.e., those that are purely factual, not predecisional or deliberative, or relating to the BOA's administrative or executive functions.

law (Dkt. #41).  The challenged topics include: Topics A(1)–(4); B–D; E(1), (3)(a), (3)(c)–(g), (4), (9); F(1)–(3), (5), (7); and G (Dkt. #41).

The Court finds that Topics A–E and G are not covered by the deliberative or mental process privileges.  When a party seeks to ask a deponent questions concerning "how an individual public official interprets the laws which govern his decision-making process" rather than the "information on the thoughts and discussions" leading to a decision, that line of questioning is not protected by the deliberative or mental process privileges.  *See Lake Cty. Bd. of Comm'rs*, 233 F.R.D. at 528.

Here, Plaintiffs seek to depose the BOA Representative on the BOA's knowledge and understanding of the Plano Zoning Code, the enactment, administration, and enforcement of Plano Ordinances 2004-9-18, 2006-4-24, 2006-6-9, 2015-06, the FHA, and the ADA (Dkt. #41, Exhibit 3).  These topics concern the BOA's interpretation of the laws that govern its decision-making process.  These lines of questioning—Topics A–E and G[5]—are thus not protected by the deliberative or mental process privileges.

The last topic—Topic F—has certain sections which are being challenged as privileged by Defendants.  Specifically, in those sections, Plaintiffs seek the BOA's understanding of the Home, including:

> 1. BoA communications relating to Women's Elevated Sober Living, LLC that have already been produced by the BoA and/or the City of Plano, Texas in this lawsuit;

---

[5] Defendants, citing no case law, also complain that Topic G—regarding the BOA's understanding of the FHA and ADA—asks for lay persons to make legal conclusions.  But, the "inquiry into the deponents' understanding of the laws governing their work does not improperly seek legal opinions from nonlawyers.  Rather, these interpretations are one way in which a party may establish [Defendants'] intent by circumstantial evidence."  *Id.* (citing *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n*, 790 F. Supp. 1197, 1212–13 (D. Conn. 1992) (finding that "the Commission's interpretation of the Regulations was unreasonable and, therefore, the Commission's stated reasons for its decision were pretextual").  Therefore, Plaintiffs are entitled to make this inquiry.

8

2. Women's Elevated Sober Living, LLC variance permit application submitted to the BoA in 2019 including, but not limited to, the evaluation, process of evaluating, criteria used, and decision on the permit application;

3. Women's Elevated Sober Living, LLC's 2018 reasonable accommodation request to the BoA to permit certain number residents at its Stoney Point Home, including, but not limited to, the evaluation, process of evaluating, criteria used, and decision on the accommodation request;

5. Communications from the public or other third-parties to the BoA and from the BoA to the public or other third-parties concerning Women's Elevated Sober Living, LLC's variance request and accommodation request made to the BoA in 2019 concerning the Stoney Point Home;

7. Discussion among the members of the BoA on May 28, 2019 of the Board of Adjustment's meeting to consider the Women's Elevated Sober Living, LLC's request for accommodation, including in particular:
> a. Whether Women's Elevated Sober Living LLC provided evidence it was seeking an accommodation on behalf of disabled individuals and whether any contrary evidence was presented during the hearing;
> b. The evidence with respect to the reasonableness or lack of reasonableness of the request presented during the meeting and considered by the BoA;
> c. The evidence with respect to the necessity or lack of necessity of the request presented during the meeting and considered by the BoA;
> d. Any other factors considered by the BoA in reaching its decision;
> e. The Board of Adjustment's consideration of written materials submitted to it with respect to the request, including the source of such materials;
> f. The reason for the Board's decision to deny the request for Women's Elevated Sober Living LLC.

(Dkt. #41, Exhibit 3).

Defendant asserts that Topic F seeks "information about the subjective intent of the BOA, the reasons for the BOA's decisions, the deliberations between BOA members, and the mental process of the BOA's decisions" (Dkt. #41 at p. 13).  Thus, Defendants claim that Topic F is covered by the deliberative and mental process privileges.  The Court agrees in part.

Under ¶ 1, Defendants seek the BOA's understanding of communications concerning Elevated that have already been produced by Defendants.  Defendants—who have the burden of establishing the applicability of the privileges here—have not provided any evidence to the Court

describing what communications have been produced by Defendants.  *See, e.g.*, *Cain*, 2016 WL 7156071, at *4 (quoting *In re Certain Complaints Under Investigation by an Investigating Comm. of the Jud. Council of the Eleventh Cir.*, 783 F.2d 1488, 1520 (11th Cir. 1986), *superseded by statute on other grounds as stated in In re McBryde*, 120 F.3d 519, 524 (5th Cir. 1997)) (stating that "[a] party raising a claim of [the deliberative process] privilege has the burden of demonstrating that the matters under inquiry fall within the confines of the privilege").  From the description of ¶ 1 alone, the Court cannot determine that the information sought is privileged; there is no indication whether such information is deliberative, predecisional, or nonfactual or whether it involves the BOA's mental processes—as required by the deliberative and mental process privileges.  Accordingly, as Defendants have failed to meet their burden, the Court cannot say that ¶ 1 seeks privileged information.

The same analysis applies to ¶ 5, in which Plaintiffs seek the BOA's understanding of communications between third parties and the BOA concerning Elevated's variance and accommodation request.  The Court cannot determine whether any communications between the BOA and third parties were deliberative, predecisional, or nonfactual or whether they involve the BOA's mental processes.  Again, because Defendants failed to meet their burden, the Court cannot say that ¶ 5 seeks privileged information.

The Court, however, does find that ¶¶ 2, 3, and 7 are privileged.  As an initial matter, these subtopics do not seek information that is purely factual.  These requests seek information regarding the evaluation, process of evaluation, criteria used, and decision on Elevated's variance application and accommodation request, along with the discussion among the BOA Members regarding Elevated's accommodation request.  Such information includes the deliberations and mental processes of the BOA while it made its decisions on Elevated's requests.  This information is also

deliberative—as its disclosure would chill frank discussion—and predecisional—as it was made to assist the BOA in arriving at a decision.  Accordingly, the Court finds that ¶¶ 2, 3, and 7 are protected by the deliberative and mental process privileges.

## V.      Deposition of the City Representative

As for the City Representative, Defendants challenge as privileged ¶¶ 2–7, 9–10, 13, 19, and 22 (Dkt. #41).  The Court concludes, however, that while some of these topics are privileged, some are not.

Topics that are purely factual cannot be covered by either the deliberative or mental process privileges.  The Court finds that the following topics are purely factual as they merely ask for studies and reports within the City's possession:

> 4. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the change in definition of "Household Care Facility" and "Household Care Institution" made pursuant to Ordinance 2004-09-18.

> 5. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the definition of "Household Care Facility" and "Household Care Institution" in the Plano Zoning Ordinance as adopted in Ordinance 2006-4-24

> 6. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with the change in definition of "Household Care Facility," "Household Care Institution," and "Household" proposed in Zoning Case 2009-09.

> 7. The existence and contents of any studies, reports, data compilations or other materials considered by the City in connection with any other change in the definition of "Household Care Facility," "Household Care Institution," or "Household" adopted by the City from 2001 to the present.

> 9. Any studies, reports, data compilations or other materials concerning sober living facilities, including but not limited to:
>> a. the effect of sober living facilities on property values,
>> b. the effect of sober living facilities on neighborhood character, or
>> c. the effect of sober living facilities on neighborhood crime rates gathered or considered by the City, the Board of Adjustment, or any member of the

City staff in connection with the Request for Accommodation that is the subject of this lawsuit.

10. Any information not requested in item 9 above concerning sober living facilities, including but not limited to:
a. the effect of sober living facilities on property values,
b. the effect of sober living facilities on neighborhood character, or
c. the effect of sober living facilities on neighborhood crime rates gathered or considered by the City, the Board of Adjustment, or any member of the City staff in connection with the Request for Accommodation that is the subject of this lawsuit.

(Dkt. #41, Exhibit 2).

Furthermore, the Court finds that the remaining topics—¶¶ 2–3, 13, 19, and 22—are covered under the deliberative process privilege—provided that the privilege is not overcome.[6] These topics seek information casting doubt on whether the Home's residents are handicapped, the reasons for adopting amendments to the Plano Zoning Ordinance concerning group homes, the rationale behind every regulation limiting the number of people who can live at the Home, every reason the City has for limiting the number of residents of a household care facility, and the City's rationale for adopting its Backyard Cottage ordinance.  These topics reflect the "deliberative or policy-making processes" of the City.  *S.E.C.*, 2013 WL 1091233, at *9 (citations omitted).  While these topics may seek factual information in part, that information is so "intertwined within analysis or evaluation" that it is necessarily privileged.  *Id.*  Accordingly, the Court finds that the following topics are covered under the deliberative process privilege:

2. Any information in the City's possession that the City regards as casting doubt on whether the women living in the Residence have a handicap as that term is defined in the Fair Housing Act.

---

[6] Defendants assert that the topics to be posed to the City Representative are covered by both the deliberative and mental process privileges.  The Court does not find—and Defendants do not assert—that the challenged topics cover the City or the City Representative's deliberations regarding judicial acts. *Cf. Feltz*, 2020 WL 2039250, at *9 (citations omitted) (stating that mental process privilege "does not extend to deliberations regarding administrative or executive acts performed by judges").  Therefore, the mental process privilege does not apply here.

3. The reasons for the adoption of and any amendments to the Plano Zoning Ordinance that concern group homes, including but not limited to group homes that meet the definition of a "Household Care Facility" or "Household Care Institution"

13. The rationale for every regulation, ordinance, code or other restriction that limits the number of members of a "Household" who can reside at 7312 Stoney Point Drive.

19. Every reason the City has chosen to fix the number of residents in a Household Care Facility at 10 as opposed to six, eight, or some other number.

22. The rationale for the City's adoption of its Backyard Cottage ordinance and for the particular limits and requirements for backyard cottages regulated by it.

(Dkt. #41, Exhibit 2).

## VI.    Whether the Deliberative and Mental Process Privileges are Overcome

The Court next determines whether the deliberative and mental process privileges have been overcome by Plaintiffs' need for information.  The Court considers the following factors: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; (4) the extent to which disclosure would hinder frank and independent discussion on decisions; (5) the interest of the litigant and society in accurate judicial fact finding; (6) the seriousness of the litigation and the issues involved; (7) the presence of issues concerning alleged governmental misconduct; and (8) the federal interest in the enforcement of federal law.  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122–23.

### A.    Relevance of the Evidence

The Court finds that the testimony Plaintiffs seek from the BOA Members, the City Representative, and the BOA Representative is highly relevant to Plaintiffs' FHA and ADA claims.  In order to succeed on their claims for disability discrimination under the FHA, Plaintiffs must establish liability under one of three ways: "(1) disparate treatment (or intentional discrimination); (2) disparate impact (or discriminatory effect); and (3) a failure of a municipality

to make a reasonable accommodation." *Avalon Residential Care Homes, Inc. v. City of Dall.*, 130 F. Supp. 2d 833, 839 (N.D. Tex. 2000).  Plaintiffs have asserted claims under all three theories of liability.  Plaintiffs have also asserted a claim for intentional discrimination under the ADA.

Importantly, Plaintiffs seek information regarding the BOA Members' motive and intent; the evaluation, process of evaluation, criteria used, and decision on Elevated's variance application and accommodation request; and the discussion among the BOA Members regarding Elevated's accommodation request.  Plaintiffs also seek the City's rationale behind the ordinances the BOA interpreted in denying Elevated's variance and accommodation, including information casting doubt on the determination of drug and alcohol addition as a disability.  This information is highly relevant to establishing Plaintiffs' claims of discrimination because the City and the BOA's intent is necessary to establish Plaintiffs' FHA and ADA intentional discrimination claims.  As a result, this factor "weigh[s] strongly in favor of disclosure."  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1124.

### B.      Availability of Other Evidence

The Court next considers the availability of other evidence.  Defendants argue that any discriminatory intent could be discerned from the record made at the BOA meeting (Dkt. #41 at p. 6).  While the Court recognizes the availability of an official record, that record may not disclose all the factors that were considered by the decisionmaker.  *Id.* at 1125.  Indeed, "[m]unicipal officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate . . . ."  *Lake Cty. Bd. of Comm'rs*, 233 F.R.D. at 529 (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)); *see also N. Pacifica, LLC*, 274 F. Supp. 2d at 1125 (citation omitted) (stating that evidence of discriminatory intent is not often in the record).  "It is only in private conversation, with individuals assumed to share their bigotry, that open statements of discrimination are made, so it

is rare that these statements can be captured for purposes of proving . . . discrimination . . . ." *Lake Cty. Bd. of Comm'rs*, 233 F.R.D. at 529 (quoting *Smith*, 682 F.2d at 1064).

The official record of the BOA meeting "does not exhaust the universe of information considered by the [BOA]." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1125.  It is possible that the BOA Members had private conversations that are not embodied in the record but are still highly relevant to this case.  Therefore, because such evidence would not be available from alternative sources, this factor weighs in favor of disclosure.  *Doe*, 2014 WL 6390890, at *3.

### C.    Government's Role in the Litigation

The Court next finds that the government—here, the City and the BOA—has a "prominent role as a party in this case."  *Doe*, 2014 WL 6390890, at *3 (citing *Swartwood v. Cnty. of San Diego*, No. 12CV1665–W(BGS), 2013 WL 6670545, at *4 (S.D. Cal. Dec. 18, 2013)).  This factor weighs in favor of disclosure.

### D.    Extent to Which Disclosure Hinders Frank Discussion

The Court is not convinced that disclosure here would have a chilling effect on frank discussion regarding the implementation of the City's zoning laws.  Even if there was such an effect, it would be minimal at most.  *See Doe*, 2014 WL 6390890, at *3 (citing *Williams v. City of Bos.*, 213 F.R.D. 99, 102 (D. Mass. 2003) (finding that disclosure in a § 1983 case would have a minimal chilling effect on internal investigations).  Accordingly, the Court finds that, at most, this factor weighs slightly against disclosure.

### E.    Interest of the Litigant and Society

The Court also considers the interest of Plaintiffs and, ultimately, society in "accurate judicial fact finding."  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1124.  "In every case, the desirability of accurate fact finding weighs in favor of disclosure."  *Id.* (citing *Newport Pac., Inc. v. County of*

*San Diego*, 200 F.R.D. 628, 638 (S.D. Cal. 2001).  Here, the interest in accurate judicial fact finding is heightened because civil rights are at stake.  *See id*. (citing *Newport Pac., Inc.*, 200 F.R.D. at 639 ("agree[ing] with Plaintiffs' assertion that the possibility of discrimination favors disclosure")).  Thus, this factor weighs in favor of disclosure.

### F.      Seriousness of the Litigation

The Court next analyzes the seriousness of the litigation before the Court.  In this case, Plaintiffs asserted that Defendants violated the FHA and ADA, claiming that Defendants discriminated against them on the basis of a disability.  Because this case deals with disability discrimination, the seriousness of this litigation is substantial.  *See Lake Cty. Bd. of Commr's*, 233 F.R.D. at 528 (determining that the deliberative and mental process privileges were overcome on a case involving a discrimination claim under the FHA).  This factor therefore weighs in favor of disclosure.

### G.      Presence of Issues Concerning Alleged Government Conduct

As described, Plaintiffs assert claims of disparate treatment, disparate impact, and failure to make a reasonable accommodation under the FHA.  They also assert that Defendants intentionally discriminated against them in violation of the ADA.  Under these claims, there is an issue concerning governmental misconduct, and this factor weighs strongly in favor of disclosure. *N. Pacifica, LLC*, 274 F. Supp. 2d at 1124.

### H.      Federal Interest in the Enforcement of Federal Law

The Court considers the federal interest in the enforcement of federal law in this case.  In particular, there is a federal interest in the enforcement of civil rights laws, including the FHA and ADA.  *See id.* at 1123 (citing *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) ("In a civil rights action where the deliberative process of State or local officials is itself genuinely in

dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws.")); *Lake Cty. Bd. of Commr's*, 233 F.R.D. at 528 (noting that a civil rights action is one "extraordinary instance" in which such testimony is appropriate under [*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)]" and finding that the deliberative and mental process privileges were overcome on a case involving a discrimination claim under the FHA); *see also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 52 (2d Cir. 2002) (considering the zoning board's deposition testimony in an ADA case).  Because this case involves the FHA and ADA, there is federal interest in the enforcement of federal civil rights laws.  Accordingly, this factor weighs in favor of disclosure.

Considering the eight factors above, all but one of the factors supports disclosure in this case.  Because almost all of the factors support disclosure, the Court finds that the deliberative and mental process privileges asserted by Defendants have been overcome.  As a result, the Court will permit the testimony of the BOA Members, the BOA Representative, and the City Representative.

## CONCLUSION

It is therefore **ORDERED** Defendants' Motion for Protective Order (Dkt. #41) is hereby **DENIED**.

**SIGNED this 14th day of August, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE