IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

CONSTANCE SWANSTON and     §
WOMEN'S ELEVATED SOBER LIVING     §
LLC, and SHANNON JONES     §
    Plaintiffs,     §
    §
    §       CASE NO. 4:19-00412-ALM
v.     §
    §
CITY OF PLANO, TEXAS and the     §
PLANO BOARD OF ADJUSTMENT     §
    Defendants.     §

## DEFENDANTS' CONTESTED ISSUES OF FACT AND LAW

Pursuant to the Court's Scheduling Order [Dkt. 12], Defendants submit the following

contested issues of fact and law.[1]

**A.      Issues of Fact**

1. Whether Plaintiffs have proven that the requested accommodation of permitting 15 unrelated women to reside in the Home is reasonable.

2. Whether Plaintiffs have proven that the requested accommodation of permitting 15 unrelated women to reside in the Home is therapeutically necessary under the FHA or ADA.

3. Whether Plaintiffs have proven that requested accommodation of permitting 15 unrelated women to reside in the Home is financially necessary under the FHA or ADA.

4. Whether Plaintiffs have proven that the requested accommodation of permitting 15 unrelated women to reside in the Home is necessary so that disabled persons compete equally with the non-disabled in the housing market.

5. Whether Plaintiffs have proven that Shannon Jones is disabled or handicapped under the ADA or FHA.

6. Whether Plaintiffs have proven that the residents of the Home are disabled or handicapped under the ADA or FHA.

---

[1] If any issue of fact should be treated as an issue of law, Defendants request that the Court treat it as such; and if any issue of law should be treated as an issue of fact, Defendants request that the Court treat it as such.

7. Whether Plaintiffs have proven that Plaintiff Swanston is disabled or handicapped under the ADA or FHA.

8. Whether Plaintiffs have proven that Plaintiff Swanston is a service provider under the FHA or ADA.

9. Whether, when former resident T.H. lived in the Home, an average of 13 to 15 residents lived in the Home, with the least number of residents at any time being 10 or 11. Whether, even though the Home had fewer than 15 residents at times, T.H. was able to maintain her sobriety the entire time she lived in the Home.

10. Whether former resident T.H. testified that the Home "still works" with 10 or 11 residents.

11. Whether former resident K.H. testified that, when she lived there, the Home "maintained around 10 to 12 people. It kind of seems to be the average," and at one point the Home had only five residents. Whether, even though the Home averaged fewer than 15 residents, K.H. maintained her sobriety throughout the time she lived at the Home.

12. Whether Plaintiff Jones maintained her sobriety when fewer than 15 residents lived in the Home.

13. Whether former residents of the Home maintained their sobriety when fewer than 15 residents lived in the Home.

14. Whether, prior to living in the Home, Plaintiff Jones lived in a six-bedroom sober living home with only seven residents, and was able to maintain her sobriety.

15. Whether Plaintiff Jones usually does not have a roommate at the Home.

16. Whether former residents of the Home would not have been able to afford to live in the Home prior to becoming disabled.[2]

17. Whether Plaintiffs modified the Home to have 7 bedrooms when it originally had 5, and a living room was converted into bedroom(s).

18. Whether Elevated made undocumented, interest-free loans of at least $54,000.00 to another business venture by Plaintiff Swanston, 4600 Live Oak Modern Farmhouse, a condominium development project unrelated to Elevated. Whether the loan has not been paid back.

19. Whether the owners of Elevated paid for personal expenses, such as trips, out of Elevated's account.

20. Whether Elevated allows some residents to live in the Home without paying rent, or at a reduced rate.

---

[2] Defendants do not concede that Plaintiffs or the residents of the Home are disabled or handicapped.

21. Whether the Home is a "mansion" style home. It sits on a golf course and has a pool.

22. Whether Elevated charges rent at the lower-end of the sober-living home market rate in the Dallas Fort Worth area.

23. Whether the requested accommodation is not financially necessary because, if Women's Elevated Sober Living, LLC were better run financially, it would not need 15 residents in the Home.

24. Whether "Plaintiffs did not prove that [Elevated] could not be sustained by a smaller number of residents paying higher rent or that a smaller house with lower overhead would not be financially viable." *See Smithers v. City of Corpus Christi*, 2008 U.S. Dist. LEXIS 22170 (S.D. Tex. 2008).

25. Whether Elevated has never developed a business plan.

26. Whether, before opening the Home, Elevated conducted due diligence regarding operating the Home as a sober living facility.

27. Whether Elevated investigated the applicable City of Plano zoning regulations prior to opening the Home, and whether Elevated was aware of the zoning ordinance at-issue in this case prior to opening the Home.

28. Whether Elevated would be financially viable with fewer than 15 residents in the Home.

29. Whether Elevated would be profitable with fewer than 15 residents in the Home.

30. Whether there are vacancies in sober living homes for women in Dallas County, Collin County, and Denton County.

31. Whether the City's limitation on the number of unrelated residents who can live in a Household Care Facility permits more unrelated disabled persons (eight plus two caregivers, for a total of ten) than unrelated non-disabled persons (four) to reside in a single-family dwelling.

32. Whether Plaintiff's requested accommodation, if granted, would alter the City's zoning scheme.

33. Whether Plaintiffs have economic or non-economic damages.

34. Whether Household Care Facilities are allowed in all of the City's residential districts, including SF-7 districts.

35. Whether the residents of the Home are related by blood, marriage, adoption, or recognized union or guardianship.

36. Whether the City's restriction on the number of persons who can reside in the Home is rationally related to the non-discriminatory purposes of promoting and protecting the public health, safety, morals, and general welfare of the community, and promoting the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons and neighborhoods.

37. Whether many of the residents of the Home own cars. Whether, if all residents are home on a given evening, which is common, about 10 cars will be parked at the Home.

38. Whether Dr. Kevin Gilliland is qualified to provide his opinions concerning the therapeutic necessity of having up to 15 residents in the Home.

39. Whether Dr. Kevin Gilliland's opinions concerning the therapeutic necessity of having up to 15 residents in the Home are reliable.

40. Whether Constance Swanston is qualified to provide an opinion concerning the therapeutic necessity of having up to 15 residents in the Home.

41. Whether Constance Swanston's opinions as to the therapeutic necessity of having up to 15 residents in the Home are reliable.

42. Whether Constance Swanston is a "qualified individual" under the ADA.

43. Whether Texas law provides for the creation of a city Board of Adjustment to hear requests from the public for variances and exceptions to municipal rules.

44. Whether Women's Elevated Sober Living suffered lost economic opportunity as a result of any of Defendants' actions.

45. Whether Plaintiffs have proven that they have sustained or are immediately in danger of sustaining some direct injury as a result of Defendants' conduct.

46. Whether the police have visited the Home during the time the Home has been owned by Swanston.

47. Whether Plaintiffs did not present to a district court, county court, or county court at law a verified petition for writ of certiorari stating that the decision of the Board of Adjustment is illegal in whole or in part and specifying the grounds of the illegality, and no court granted a writ of certiorari directed to the Board to review the Board's decision.

48. Whether Elevated's monthly payment for use of the Home is based on an undocumented verbal agreement between family members.

49. Whether Plano's zoning ordinance contains the following provisions:

**1.200 Authority**

**.1** The City Council of the City of Plano hereby adopts, and may from time to time amend, this zoning ordinance. The ordinance and any ordinance amendment or revision shall be made in accordance with a Comprehensive Plan, and to lessen congestion in the streets, secure safety from fire, panic, and other dangers, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements, or to promote the health and the general welfare.

…

**1.500 Purposes**

This ordinance as herein established has been made in accordance with a Comprehensive Plan for the purpose of promoting and protecting the public health, safety, morals, and general welfare of the community, and in furtherance of the following related and more specified objectives:

**.1** Guide and regulate the appropriate use or development of all lands, in a manner which will promote the public health, safety, morals, and general welfare ....
**.4** Promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons and neighborhoods.

**8.200 Terms Defined**

**Dwelling (single-family)**
A building having accommodations for and occupied by not more than one household.

**Dwelling Unit**
A building or portion of a building which is arranged, occupied, or intended to be occupied as living quarters of a family and including facilities for food preparation, sleeping, and sanitation.

**Household**
A domestic unit that resides in and shares in common a single dwelling unit and consists of one or more individuals related by blood, marriage, adoption or recognized legal union or guardianship, and not more than 4 adult unrelated individuals, plus any minor children, or persons residing in a household care facility.

**Household Care Facility**
A dwelling unit that provides residence to not more than 8 persons, regardless of legal relationship, who are elderly; disabled; orphaned, abandoned or neglected children; victims of domestic violence; or rendered temporarily homeless due to fire, natural disaster, or financial setbacks, living together with no more than 2 caregivers as a single household.

Where applicable, a household care facility shall have appropriate licensing and/or registration by the State of Texas.

50. Whether the stated purpose of the SF-7 zoning district, in which the Home is located, is "to provide for areas of urban single-family development on moderate size lots, protected from excessive noise, illumination, odors, visual clutter, and other objectionable influences to family living."

51. Whether Defendants failed to make a reasonable accommodation under the FHA and/or ADA to the City's zoning ordinance regarding the number of unrelated residents permitted to reside in a Household Care Facility.

52. Whether Defendants intentionally discriminated against Plaintiffs.

53. Whether Plaintiffs have suffered disparate treatment as a result of the City's zoning ordinance and/or the Board of Adjustment's denial of Plaintiffs' request for an accommodation.

54. Whether Plaintiffs have suffered a disparate impact as a result of the City's zoning ordinance and/or the Board of Adjustment's denial of Plaintiffs' request for an accommodation.

55. Whether Plaintiffs have suffered from any discriminatory effect as a result of the City's zoning ordinance and/or the Board of Adjustment's denial of Plaintiffs' request for an accommodation.

## B.    Issues of Law

1. Whether Defendants have violated the ADA or FHA.

2. Whether the "necessary" requirement under the FHA "implies more than something merely helpful or conducive. It suggests instead something 'indispensable,' 'essential,' something that 'cannot be done without.'" *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917 (10th Cir. 2012).

3. Whether "'Necessary' means 'required.' It is a high standard." "'Necessary  is a word of limitation." "As an adjective, it means indispensable, requisite, essential, needful; that cannot be done without, or absolutely required." "In short the [Fair Housing] Act's necessity element requires that an accommodation be essential, not just preferable." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100 (3rd Cir. 2018).

4. Whether "the duty of reasonable accommodation" under the FHA is confined "to rules, policies, etc. that hurt handicapped people by reason of their handicap, rather than hurt them solely by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *See Hemisphere Bldg. Co. v. Village of Richton Park*, 171 F.3d 437 (7th Cir. 1999); *Salute v. Stratford Greens Garden Apts.*, 136

F.3d 293 (2nd Cir. 1998) ("The FHA does not elevate the rights of the handicapped poor over the rights of the non-handicapped poor.")

5. Whether an accommodation is not "necessary" under the FHA or ADA where the plaintiffs fail to prove that the sober-living home "could not be sustained by a smaller number of residents paying higher rent or that a smaller house with lower overhead would not be financially viable." *Smithers v. City of Corpus Christi*, 2008 U.S. Dist. LEXIS 22170 (S.D. Tex. 2008).

6. Whether the City's limitation on the number of unrelated residents who can live in a Household Care Facility is facially discriminatory.

7. Whether the City's zoning ordinance is a legitimate exercise of the City's police power and zoning power. *See City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982) ("Zoning regulation is a recognized tool of community planning, allowing a municipality, in the exercise of its legislative discretion, to restrict the use of private property."); *Stansberry v. Holmes*, 613 F.2d 1285, 1288-89 (5th Cir. 1980) ("Zoning provides one of the firmest and most basic of the rights of local control. Since 1928, the Supreme Court has never held that a zoning measure exceeded the police power."); *Maher v. New Orleans*, 516 F.2d 1051, 1059-60, n. 36 (5th Cir. 1975) ("The Supreme Court has made it clear that, while the police power is not unlimited, its boundaries are both ample and protean"; "family values" is "a legitimate state purpose").

8. Whether city zoning "is a legislative function, not a judicial one," and there is "no harm in … the [City] Council drawing information from whatever sources they deem instructive in helping them make their decisions." *Eudaly v. Colleyville*, 642 S.W.2d 75, 77 (Tex. App. -Fort Worth 1982, no writ). "[T]he City Council, like any other legislative body, may act on its own knowledge of the community and its own appraisal of the public welfare. A court has no authority to interfere unless it finds that the order is clearly unreasonable and arbitrary. The court must consider all the circumstances, not merely the evidence before the Council, and determine as a substantive matter whether reasonable minds may differ as to whether the particular zoning regulation has a substantial relationship to the public health, safety, morals or general welfare. If the evidence before the court reveals an issuable fact in this respect the restriction must stand as a valid exercise of the city's police power." *Charlestown Homeowners Asso. v. La Coke*, 507 S.W.2d 876, 879 (Tex. Civ. App.- Dallas 1974, writ refd n.r.e.).

9. Whether the City's limitation on the number of unrelated residents who can live in a Household Care Facility is discriminatory as-applied to Plaintiffs.

10. Whether Plaintiffs are in admitted violation of the City's limitation on the number of unrelated residents who can live in a Household Care Facility.

11. Whether, "[a]lthough the FHA prohibits discrimination against the handicapped in housing . . . an individual's status as an alcoholic or drug addict does not mean that the person is per

se handicapped under the FHA." *See Kearins v. Vill. Creek of Eldorado Home Owner's Ass'n*, 2019 U.S. Dist. LEXIS 68696, *9 (E.D. Tex. 2019).

12. Whether the BOA discriminated against Plaintiffs by denying their request for an accommodation.

13. Whether Constance Swanston has individual claims for relief under the ADA or FHA.

14. Whether A party aggrieved by a decision of a board of adjustment must, not later than 10 days after the date the decision is filed in the board's office, present to a district court, county court, or county court at law, a verified petition for writ of certiorari stating that the decision of the board of adjustment is illegal in whole or in part and specifying the grounds of the illegality. Tex. Loc. Gov't Code § 211.011

15. Whether Plaintiffs failed to exhaust the statutory scheme for challenging the decision of the Board of Adjustment under Chapter 211 of the Texas Local Government Code. This Court therefore lacks subject-matter jurisdiction to decide this case. *See Sumner v. Board of Adjustment,* 2016 Tex. App. Lexis 5173, * 15-16 (Tex. App.- Houston [14th Dist.] 2016, pet. denied).

16. Whether Plaintiffs' as-applied challenge to the City's ordinance limiting the number of residents who can live in a household care facility is barred as an impermissible collateral attack on the Board of Adjustment's decision.

17. Whether Plaintiffs' as-applied challenge is barred by res judicata.

18. Whether Plaintiffs' as-applied challenge is barred by collateral estoppel.

19. Whether Plaintiffs' as-applied challenge should be dismissed pursuant to the *Burford* abstention doctrine.

20. Whether Plaintiffs are entitled to an order requiring Defendants to modify Defendants' procedures for considering requests for accommodations.

21. Whether Plaintiffs are entitled to an order requiring Defendants to undergo ADA and FHA training.

22. Whether Plaintiffs are entitled to an order requiring Defendants to take affirmative steps to ensure compliance with the FHA and/or ADA.

23. Whether Plaintiffs are entitled to a permanent injunction prohibiting Defendants from retaliating against Plaintiffs.

24. Whether Plaintiffs are entitled to economic damages.

25. Whether Plaintiffs are entitled to non-economic damages.

26. Whether Plaintiffs are entitled to punitive damages. Whether Punitive damages are available against Defendants as a matter of law.

27. Whether Plaintiffs are entitled to a permanent injunction enjoining the City from enforcing any restriction on the use of the Home as a sober living home with up to 15 residents.

28. Whether Plaintiffs are entitled to an award of attorneys' fees.

29. Whether Plaintiffs are entitled to an award of expert witness fees.

30. Whether Plaintiffs are entitled to an award of costs of court.

31. Whether Defendants are entitled to an award of costs of court.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/ Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
**Lucas Henry**
State Bar No. 24101901
1700 Redbud Blvd., Ste. 300
McKinney, Texas 75069
(214) 544-4000 Telephone
(214) 544-4040 Facsimile
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANTS**