IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | | |
|---|---|---|
| CONSTANCE SWANSTON and | § | |
| WOMEN'S ELEVATED SOBER LIVING | § | |
| LLC. and SHANNON JONES | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 4:19-CV-00412-ALM |
| | § | |
| CITY OF PLANO, TEXAS | § | |
| CITY OF PLANO'S BOARD OF | § | |
| ADJUSTMENT | § | |
| | § | |
| Defendant | § | |

**SWANSTON AND WOMENS ELEVATED'S**
**MOTION IN LIMINE**

Constance Swanston and Women's Elevated Sober Living, LLC ("Movants") move in limine for the exclusion at trial of the evidence described below for the reasons shown:

**MATTERS SPECIFIC TO THIS CASE**

**1. Any testimony or evidence of the opinions of Dr. Kevin Gilliland.**

This testimony should be excluded for the reasons set out in Movants' Motion to Strike [Dkt. 28].

**2. Any testimony from any witness to the effect that the residents of Women's Elevated Sober Living (hereafter, "residents") do not have a handicap.**

Defendants have claimed a privilege with respect to all information in their possession concerning the handicap status of the residents of Women's Elevated Sober Living ("residents") [Dkt. 41 at page 7] and have refused to produce a representative to testify concerning these matters. "[W]here the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged." *Columbia Pictures TV, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001)

In addition, Defendants based their denial of the accommodation request giving rise to this lawsuit on the provisions in the Zoning Ordinance, including the definition of "disability" in that Ordinance. The Zoning Ordinance states that "the term 'disabled' includes persons recovering from addiction." (Ordinance at Section 8.200, definition of "Disabled Individual."). Defendants should not be permitted to claim the residents do not have a disability or handicap based on any definition more restrictive than the Ordinance on whose terms their decisions were based.

3.   **Any testimony from any witness to the effect that the relevant provisions of the Zoning Ordinance were not intended to discriminate against those with disabilities or were based on a rational exercise of the City's zoning powers or a legitimate concern with the public health, safety, morals and general welfare of the community.**

Movants' Interrogatory No. 9 and its response are as follows:

INTERROGATORY 9: What is the legitimate government purpose for restricting the number of residents in a Household Care Facility to 10?

ANSWER: Plano's regulations regarding the number of residents in a Household Care Facility are part of the City's overall Zoning Ordinance. The purposes for Zoning Ordinance and the regulations contained therein are stated in Section 1.500 of the Zoning Ordinance and include  promoting and protecting the public health, safety, morals, and general welfare of the community.

Because the City did not provide any more specific information in response to Interrogatory No. 9 or in discovery generally it should not be permitted to offer testimony beyond what is stated in answer to Interrogatory No. 9. Fed. Rule. Civ. Proc. 37(c)

4.   **Any testimony from any witness to the effect that the adoption of and amendments to the Zoning Ordinance were based on studies, reports, data compilations or any other kind of evidence concerning the public health, safety, morals and general welfare of the community.**

Defendants claimed in discovery that no studies, reports, data compilations or other evidence on these matters existed. They should be limited to materials produced in discovery. Fed. Rule. Civ. Proc. 37(c)

5.  **Any evidence in the form of reports, studies, data compilations or other materials not produced in discovery or required disclosures offered to support a claim that the provisions in the Zoning Ordinance are consistent with or required by the public health, safety, morals and general welfare of the community.**

Defendants claimed in discovery that no studies, reports, data compilations or other

evidence on these matters existed. They should be limited to materials produced in discovery. Fed.

Rule. Civ. Proc. 37(c)

6.  **Any evidence in any form, testimonial or otherwise, to the effect that sober living facilities have an adverse impact on property values, neighborhood character or crime rates.**

Defendants claimed in discovery that no studies, reports, data compilations or other

evidence on these matters existed. They should be limited to materials produced in discovery. Fed.

Rule. Civ. Proc. 37(c)

7.  **Any evidence offered to support a claim that the limit on the number of residents permitted in a Household Care Facility as defined in the Zoning Ordinance is based on the rational exercise of the City's zoning powers or that the limit is consistent with or required by the public health, safety, morals and general welfare of the community.**

Defendants claimed in discovery that no studies, reports, data compilations or other

evidence on these matters existed. They should be limited to materials produced in discovery. Fed.

Rule. Civ. Proc. 37(c)

8.  **Any testimony to the effect that members of the City staff or any other person associated with the City presented the City Council with evidence suggesting that the relevant provisions of the Zoning Ordinance and its amendments are based on the rational exercise of the City's zoning power unless that evidence was produced by the Defendants.**

Defendants claimed in discovery that no studies, reports, data compilations or other

evidence on these matters existed. They should be limited to materials produced in discovery. Fed.

Rule. Civ. Proc. 37(c)

9.  **Any testimony to the effect that members of the City or Board of Adjustment staff or any other person associated with the City presented the Board of Adjustment with evidence supporting its decision with respect to Plaintiffs' accommodation request unless that evidence was produced by the Defendants.**

Defendants asserted a blanket privilege with respect to communications between the City and Board of Adjustment staff and the Board of Adjustment concerning evidence that would support the Board's decision on Plaintiffs' accommodation request. Having asserted this privilege they should not be permitted to offer evidence of the kind withheld. See, *Columbia TV Pictures, Inc.,* supra.

10.  **Any evidence to the effect that the accommodation request at issue in this lawsuit was not reasonable or necessary.**

   a)  **The Defendants' evidence should be limited to the statements and other evidence presented at the May 28, 2019 Board of Adjustment hearing.**

Movants' Interrogatory No. 3 and the City's Answer were:

INTERROGATORY 3: In paragraph 11 of your Answer you deny that the accommodation requested by Elevated was "reasonable." Why was it not reasonable?

ANSWER: Elevated's request for 15 residents, as opposed to a lesser number such as 10 or 12, is neither necessary nor reasonable therapeutically or economically based on the statements and evidence from the May 28, 2019 Board of Adjustment hearing. This is expected to be confirmed by discovery from Plaintiffs in this lawsuit.

Plaintiff Shannon Jones' Interrogatory No. 4 and the City's Answer are:

INTERROGATORY NO. 4: If You contend that the requested accommodation was not necessary as indicated in Paragraph 12 of Your Answer, state all the facts upon which You base this contention, how the law applies to the facts, and the legal or theoretical basis for this  contention.

RESPONSE: Elevated's request for 15 residents, as opposed to a lesser number such as 10 or 12, is not necessary therapeutically or economically based on the statements and evidence from the May 28, 2019 Board of Adjustment hearing. This is expected to be confirmed by discovery obtained from Plaintiffs in this lawsuit.

These Answers have never been supplemented. The City should therefore be limited with respect to evidence of reasonableness and necessity to the evidence referred to in its Answers; that is,

statements and evidence from the May 28, 2019 Board of Adjustment hearing. Fed. Rule Civ. Proc. 37(c).

**b) The statements and evidence presented during the May 28, 2019 Board of Adjustment hearing should be excluded because they are inadmissible hearsay.**

With respect to statements by individuals who spoke at the hearing such statements are hearsay that is inadmissible under Rule 802 of the Federal Rules of Evidence. With respect to statements by members of the Board of Adjustment, such statements should be excluded both as hearsay and based on the Board of Adjustment's blanket assertion of privilege with respect to evidence from those members. See, *Columbia TV Pictures, Inc.*, supra. With respect to non-testimonial evidence presented by the City or Board of Adjustment staff such evidence should be excluded as inadmissible hearsay and based on the Board of Adjustment's blanket assertion of privilege with respect to the role of such evidence in its deliberations requires its exclusion. See, *Columbia TV Pictures, Inc.*, supra.

**11. Any testimony or other evidence to the effect that the residents are not "related by blood" as that phrase is used in the definition of "household" found in the Zoning Ordinance.**

Movants Interrogatory No. 8 and its answer are:

INTERROGATORY 8: How many degrees of consanguinity are included in the phrase "related by blood" as that term is used in the definition of "household" found in the City of Plano Zoning Ordinance?

ANSWER: Section 1.1100 of the City's Zoning Ordinance explains the process for interpretation of the Zoning Ordinance. Section 1.1100 provides "Questions of interpretation of this ordinance should be referred to the Director of Planning, who shall the authority to determine the meaning and interpretation of any provision of this ordinance. Any person aggrieved, or any officer, department, or board of the City of Plano affected by an interpretation of the Director of Planning, may appeal the interpretation to the Planning & Zoning Commission, whose decision in the matter shall be final."

Neither the City's Director of Planning nor the Planning & Zoning Commission have had previous occasion to interpret the phrase "related by blood" as used in the Ordinance, and, as a result, the City cannot currently answer how many degrees of consanguinity are included in this phrase.

It is an elementary fact that all human beings are related, however distantly, with the closeness of that relationship measured by degrees of consanguinity. In order to know whether any group of individuals are "related by blood" as that phrase is used in the Zoning Ordinance it is necessary to know how many degrees of consanguinity are included in that phrase. Having refused to state how many degrees of consanguinity are included in the phrase "related by blood" it would be fundamentally unfair for the City to claim the residents are not "related by blood" because without knowing what the phrase means the Movants are unable to know what evidence of relatedness would be relevant.

12. **Any testimony or evidence to the effect that the accommodation requested by Women's Elevated would "fundamentally alter the city's land use and zoning patterns" beyond the fact that Women's Elevated is a for-profit entity. The Court should exclude, in particular, any testimony or evidence that having more than eight residents would have such an effect.**

    Movant's Interrogatory No. 11 and its Answer are:

        INTERROGATORY 11: Do you claim that the accommodation requested by Elevated would "fundamentally alter the city's land use and zoning patterns?" If so, explain why.

        ANSWER: First, it is the City's Board of Adjustment (which is an independent governing body from the City Council), not the City itself, that determines whether a requested accommodation is necessary and/or reasonable. That decision, in turn, is subject to judicial review, not city council or other city review (see Tex. Local Gov't Code Chapt. 211). Thus, the City's "claim" regarding Elevated's requested accommodation is irrelevant. Subject to this objection, if, as represented repeatedly by Elevated's representative at the May 2019 Board of Adjustment hearing, the requested accommodation is to make a for-profit limited liability company profitable, then the accommodation is for commercial purposes and it does fundamentally alter the City's residential vs. commercial zoning pattern.

The City has never supplemented the Answer above and should therefore not be permitted to offer any evidence that something other than the for-profit status of Women's Elevated would fundamentally alter the City's land use and zoning patterns. Fed. Rule Civ. Proc. 37(c).

13. **Any testimony or other evidence to the effect that the accommodation requested by Movants would have a greater impact on its surroundings than other uses permitted in the same zoning district. The Court should exclude, in particular, any testimony or evidence that having more than eight residents would have such an impact.**

Movants' Interrogatory 12 and its answer are:

INTERROGATORY 12: Do you claim that the accommodation requested by Elevated for the house at 7312 Stoney Point Drive would have a greater impact on its surroundings than other uses permitted in the same zoning district? If so, explain why.

ANSWER: See objection to Interrogatory No. 11 above. Subject to this objection, the testimony and concerns expressed by neighbors at the May 2019 Board of Adjustment hearing regarding parking, traffic and safety issues supports a finding that the requested accommodation would have a greater impact.

The City has never supplemented its Answer and should therefore be limited to the matters in its Answer. Fed. Rule Civ. Proc. 37(c). The "testimony and concerns" expressed by neighbors at the May 2019 Board of Adjustment hearing are all inadmissible hearsay. Fed.Rule Evid. 802.

14. **Any evidence concerning population density as a justification for the Zoning Ordinance based on the article "Property Crimes and Violence in the United States" by Keith Harris.**

The article is inadmissible hearsay and in discovery the City never identified this document as one on which the City relied in making its zoning decisions.

15. **Any evidence, statement or argument by Defendants or their attorney that the existence of a sober living facility in a residential development has any adverse effect on the value of property or quality of life for other homeowners and residents.**

Competent evidence that sober living facilities in general have an impact on property values or quality of life can only come from an expert witness because these are not matters within the knowledge of ordinary lay people. No expert on these matters was disclosed.

16. **Any evidence, statement or argument by Defendants or their attorney that the residents of a sober living facility are more likely to engage in dangerous or criminal behavior while residing in the sober living facility.**

Competent evidence that the residents of sober living facilities are more likely to engage in dangerous or criminal behavior while residing in such facilities because can only come from an

expert witness because these are not matters within the knowledge of ordinary lay people. No

expert on these matters was disclosed.

17. **Any evidence, statement or argument concerning the failure of any individual resident to appear and testify at trial or to appear to be deposed, including any argument for an inference that individual residents and the residents as a group are not handicapped for purposes of the Fair Housing Act.**

This issue was addressed by the Court during an informal discovery conference and

Defendants never filed a motion or sought any further ruling on their claim that the identities of

the residents should be disclosed.

18. **The business records affidavit produced as Plano 07843 to 07853 because the documents attached contain hearsay and do not meet the standards for admission as a business record.**

19. **Any first use by the City of any document produced as Plano 07843 through 15665 because these documents were produced long after the discovery cutoff at a time when it was no longer possible to depose any witness concerning them despite the fact that they were evidently in existence when Plaintiffs' original requests for production were served. Fed. Rule Civ. Proc. 37(c). This request does not exclude their use by Plaintiffs.**

20. **Any evidence, statement, or argument that proof of handicap under the Fair Housing Act requires a medical examination or medical diagnosis as any such evidence, statement or argument is contrary to the law.**

21. **Any evidence, statement or argument that Plaintiffs are required to prove on a resident by resident basis that the residents of Elevated Sober Living are handicapped under the Fair Housing Act as any such evidence, statement or argument is contrary to the law.**

22. **Any evidence, statement or argument that suggests Plaintiff Women's Elevated Sober Living LLC is not entitled to protection under the Fair Housing Act because it is a for profit entity because such statements and arguments are contrary to the law.**

**MATTERS GENERALLY EXCLUDABLE IN ALL CASES**

23. **Any evidence, statement, or argument supporting an issue not contained in the final pretrial order. *Life Care Ctrs. Of Am., Inc., v. Charles Town Assocs., L.P.,* 79 F.3d 496, 507-08 (6th Cir. 1996).**

24. **Any evidence that Defendants did not produce in discovery or pretrial disclosures.**

Defendants should not be permitted to present any witness, documentary evidence or testimony concerning matters that were the subject Plaintiffs' discovery requests or the Rule 26 obligation disclosure unless Defendant timely provided the requested information or documents.

25. **Any opinion testimony of any kind by any witness on any subject on which such witness has not been previously or timely identified as a testifying expert, or the probative value of whose testimony is outweighed by the dangers of confusion, prejudice, or undue delay. This specifically includes but is not limited to areas of testimony not previously identified in either a party's expert designation, such expert's report, or in any other discovery or deposition of such expert.**

26. **Testimony from any witness who was not properly and timely identified as a person with knowledge of relevant facts in Defendant's Rule 26 disclosures.**

27. **Any personal or *ad hominem* attacks against the parties or their attorneys.**

28. **Any attempt to inquire into information protected by the attorney/client privilege.**

29. **Any testimony or argument suggesting that Plaintiffs asserted claims of privilege during discovery. Claims of privilege are not admissible as evidence. *See* Fed. R. Evid. 501.**

30. **Any attempt to elicit testimony from Plaintiffs about communication with their attorneys. Such communications are privileged. *See* Fed. R. Evid. 501.**

31. **Any evidence, statement, or argument of the probable testimony of a witness who is absent, unavailable, not called to testify in this case, or not allowed to testify in this case.**

32. **Any questions, statements or references concerning or listing any other suit or cause of action by or against a Party, whether still pending or not.**

33. **Any reference to the fact that Plaintiffs have not called a witness to testify made to suggest that: (1) the witness has information that should be available to the Court; (2) the Plaintiffs would have called such witness if the witness's testimony would have helped the Plaintiffs, or (3) the witness's testimony would have been unfavorable to the Plaintiffs or favorable to Defendants.**

34. **Any attempt to ask the Plaintiffs' attorney to produce documents, to stipulate to any fact, or to make any agreement in the presence of the trier of fact.**

DATED: November 5, 2020

Respectfully submitted,

Richard M. Hunt
Texas State Bar No. 10288700

rhunt@hunthuey.com
Jeanne M. Huey
Texas State Bar No.
jhuey@hunthuey.com

HUNT HUEY PLLC
7333 Lee Parkway, Suite 600
Dallas, Texas 75216
Telephone:  (214) 641-9182
Facsimile:  (214) 279-6124

ATTORNEYS FOR SWANSTON AND ELEVATED

## CERTIFICATE OF CONFERENCE

I certify that counsel for the parties have conferred concerning the relief requested above as required by Local Rule CV-7(h) and that this Motion is opposed. The conference took place by email on August 5, 2020 with the undersigned and Lucas Henry for the City of Plano. No agreement could be reached because Defendants do not believe the requested relief is appropriate. The discussion has ended in an impasse, leaving an open issue for the Court to resolve.

Richard M. Hunt

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was served on all parties through their respective counsel of record in accordance with Rule 5 of the Federal Rules of Civil Procedure on November 5, 2020.

Richard M. Hunt