# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| CONSTANCE SWANSON, WOMEN'S ELEVATED SOBER LIVING LLC, and SHANNON JONES, §§§§§§§§§§§ | |
| *Plaintiffs*, | Civil Action No. 4:19-cv-412 |
| v. | Judge Mazzant |
| CITY OF PLANO, TEXAS, | |
| *Defendant*. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Plano's Motion for Summary Judgment on Plaintiff Swanson's Claims (Dkt. #49). Having considered the Motion and the relevant pleadings, the Court finds that it should be denied.

### BACKGROUND

In November 2018, Women's Elevated Sober Living LLC ("Elevated"), a Texas limited liability company that provides support services for recovering drug and alcohol addicts, opened a sober living home ("Home") located at 7312 Stoney Point Dr., Plano, Texas. Elevated operates the Home under an arrangement with Plaintiff Constance Swanston ("Swanston"), who leases the property to Elevated, serves as a member of Elevated, and works to operate the Home. Since its opening, the Home has housed as many as fifteen to nineteen unrelated residents. Under a municipal zoning ordinance ("Ordinance"), Defendant City of Plano limits the number of unrelated disabled persons who may live in a single-family dwelling located in a residential neighborhood to eight (plus two caregivers). After receiving complaints from various citizens about Elevated,

Defendant informed Elevated in March 2019 that operating the Home with fifteen residents violated zoning restrictions for the neighborhood in which the Home is located.

In response, Swanston, on Elevated's behalf, prepared an application for a reasonable accommodation in the form of a variance to allow up to fifteen unrelated disabled persons to live in the Home. After the application was submitted to Defendant's Board of Adjustments ("Board"), a hearing was held on May 28, 2019, during which more than fifty local homeowners expressed serious concern regarding the Home's location. Following the hearing, the Board denied the requested variance.

On June 5, 2019, Swanston and Elevated filed their initial complaint against Defendant, alleging causes of action under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") (Dkt. #1). One week later, Plaintiffs filed an amended complaint as of right, adding a resident of the Home as an additional plaintiff (Dkt. #2). On July 31, 2020, Defendant filed its Motion for Summary Judgment on Plaintiff Swanston's Claims (Dkt. #49), currently before the Court. On August 22, 2020, Plaintiffs filed their response to the Motion (Dkt. #69). On August 31, 2020, Defendant filed its reply (Dkt. #73). And on September 8, 2020, Plaintiffs filed their sur-reply (Dkt. #74).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies

which facts are material. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant satisfies this burden as to a claim or defense for which summary judgment is sought, evidence must be offered that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may discharge the burden by demonstrating the absence of evidence supporting the nonmovant's case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried this initial burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden—reciting "barebones, conclusory, or otherwise-unsupported assertions" is simply insufficient. *Hassen v. Ruston Louisiana Hosp. Co., L.L.C.*, 932 F.3d 353, 355–56 (5th Cir. 2019); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994). And courts are not required "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Rather, to have a request for summary judgment dismissed, a nonmovant must show with "'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## ANALYSIS

Defendant maintains that Swanston has no individual claims for relief under either the FHA or the ADA as a matter of law (Dkt. #49 at p. 5).[1] The essence of the Motion is that Swanston, in her individual capacity, does not have standing to assert either of the claims Jones and Elevated allege (*see* Dkt. #49 at pp. 5–8).[2]

For the Court to consider the merits of Swanston's claims, Article III requires her to "show an injury-in-fact that is fairly traceable to the challenged action of the defendant and is likely to be redressed by the plaintiff's requested relief." *Tex. Voters All. v. Dallas Cnty.*, No. 4:20-CV-00775, 2020 WL 6146248, at *3 (E.D. Tex. Oct. 20, 2020) (citing *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019)). To demonstrate constitutional standing, Swanston "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

---

[1] Defendant also argues that punitive damages are not available as a matter of law under the FHA and the ADA (Dkt. #49 at pp. 8–9), which Defendant raises in another of its summary-judgment motions (*see* Dkt. #50 at pp. 9–10). Since Defendant raises this issue elsewhere, the Court does not address the availability of punitive damages here.

[2] Because "[s]tanding is a component of subject matter jurisdiction," *HSBC Bank USA, N.A., as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) (citing *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005)), the Court can consider standing at this stage, *see* FED. R. CIV. P. 12(h)(3).

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 558 (1992)). In addition to these requirements, plaintiffs must generally "not run afoul of prudential standing rules." *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018); *see Warth v. Seldin*, 422 U.S. 490, 499–501 (1975). Congress may override prudential-standing considerations in its enactments, but "[i]n no event . . . may Congress abrogate the Art. III minima." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).

Having laid out the basics of the standing doctrine in brief, the Court addresses each claim in turn.

## I. Fair Housing Act

Any "aggrieved person" has a private cause of action under the FHA. 42 U.S.C. § 3613(a)(1)(A). "An 'aggrieved person' includes any person who '(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur.'" *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (quoting 42 U.S.C. § 3602(i)). The Supreme Court has held that, in enacting the FHA, Congress set aside prudential-standing considerations so that statutory standing was "as broad[] as is permitted by Article III of the Constitution," *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) (internal quotation marks omitted) (quoting *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442, 446 (3d Cir. 1971)), meaning that "the sole requirement for standing" under the FHA is "the Art. III minima of injury in fact." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). In addition, the recognized presumption "that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked'" applies in the FHA context. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017)

5

(quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). So in addition to the Article III minima, Swanston "must also meet the 'zone-of-interest' test." *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020).

Swanston satisfies both tests. Swanston "personally spend[s] 20 hours a week or more working with the residents directly and working on the business"[3] (Dkt. #69, Exhibit 4 at p. 1). In March 2019, Swanston herself "prepared and filed a Request for Accommodation asking that the City waive the eight-person limit on sober living homes in single family residential neighborhoods" (Dkt. #69, Exhibit 4 at p. 3). Federal courts have held that this expenditure of time, cost, and effort confers FHA standing on an individual such as Swanston. *See, e.g.*, *Chavez v. Aber*, 122 F. Supp. 3d 581, 592 (W.D. Tex. 2015) (finding FHA standing for "out-of-pocket expenses . . . resulting from Defendants' refusal to provide a reasonable accommodation"); *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (finding FHA standing for providing services and housing "protected individuals with disabilities"); *New Horizons Rehab., Inc. v. Indiana*, 400 F. Supp. 3d 751, 761–62 (S.D. Ind. 2019) (finding FHA standing for a service and housing provider to handicapped persons "because it claim[ed] to have been injured by a discriminatory housing decision"). Further, as a provider of housing and services to these residents the FHA designates as disabled, Swanston has standing to sue for injunctive relief to prevent Defendant's Ordinance from taking effect.[4] Moreover, these injuries-in-fact

---

[3] Defendant takes issue with certain parts of Swanston's declaration as "incompetent evidence" (Dkt. #73 at pp. 1–3). The Court references only those statements that satisfy the requirements of Rule 56 of the Federal Rule of Civil Procedure. *See D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018).

[4] In its reply, Defendant argues that Swanston has no injury-in-fact because Defendant "has not sought to enforce the Ordinance" (Dkt. #73 at p. 5). This assertion is problematic—Defendant attempts to deprive Swanston of standing by not enforcing the Ordinance, in effect mooting her claims. But "general[ly], 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, even in cases in which injunctive relief is sought.'" *Speech First, Inc. v. Fenves*, No. 19-50529, 2020 WL 6305819, at *6 (5th Cir. Oct. 28, 2020) (quoting *Meza v. Livingston*, 607 F.3d 392, 399–400 (5th Cir. 2010)). Under the doctrine of voluntary cessation, a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,

clearly place Swanston in the zone of interest contemplated by the FHA's statutory scheme. *See, e.g.*, *Bank of Am.*, 137 S. Ct. at 1304. Defendant has not counteracted this "evidence supporting [Swanston's] case," *Byers*, 209 F.3d at 424, and therefore fails to carry its summary-judgment burden as to Swanston's FHA claim.

## II. Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[5] 42 U.S.C. § 12132. Yet these individuals are not the only ones entitled to Title II's "remedies, procedures, and rights"—"any person alleging discrimination on the basis of disability" may bring a Title II enforcement action. *Id.* § 12133. As described above in the FHA context, while "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997), it can "modify or even abrogate prudential standing requirements, thus extending standing to the full extent permitted by Article III," *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). Congress did just that with the ADA. *See, e.g.*, *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *3 n.6 (N.D. Tex. Oct. 13, 2010)

---

528 U.S. 167, 190 (2000). Here, Defendant improperly inverts the burden of proof, stating that "there is no evidence that [Defendant] will enforce the Ordinance if it does not prevail in this lawsuit" (Dkt. #73 at p. 5). Defendant has not satisfied its burden under the voluntary-cessation doctrine, especially considering Defendant's continued defense of the Ordinance's legality. *Cf. Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("And here, since the union continues to defend the legality of the Political Fight–Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.").

[5] While the Fifth Circuit has not addressed this issue specifically, several courts of appeals have held that municipal zoning falls within Title II's "activities of a public entity." *See Summers v. City of Fitchburg*, 940 F.3d 133, 138 (1st Cir. 2019); *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 172 (2d Cir. 2013); *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 515 F.3d 356, 361 (4th Cir. 2008); *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006). The Court follows suit.

("In defining statutory standing as broadly as permitted by the Constitution, Congress eliminated any prudential standing barriers to maintaining an [ADA] action." (citing *McCoy v. Tex. Dep't of Crim. Just.*, No. C.A.C 05 370, 2006 WL 2331055, at *6 (S.D. Tex. Aug. 9, 2006))).

One implementing regulation giving effect to Title II proscribes public entities from excluding or otherwise denying "equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have *a relationship or association*."[6] 28 C.F.R. § 35.130(g) (emphasis added). Together with § 12132 and § 12133 of Title II, this regulation contemplates protection for those associated with the provision of services to the disabled when a public entity discriminates against the disabled under Title II. *See MX Group, Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002) ("Because Plaintiff has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities, Plaintiff has standing to bring this suit on its own behalf.").

As detailed above, Swanston has expended time, cost, and effort on account of the Ordinance and Defendant's denial of zoning accommodation—this injury-in-fact is sufficient as pleaded to confer standing on Swanston to advance her ADA claim. *See Kelly-Fleming v. City of Selma, Tex.*, No. SA-10-CV-675-XR, 2012 WL 1900556, at *2 (W.D. Tex. May 24, 2012). Moreover, Swanston falls within the zone of interest for the ADA and its corresponding regulatory scheme considering its broad reach and liberal construction. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(1), 122 Stat. 3553, 3554; 28 C.F.R. § 35.101(b); *see also Williams v.*

---

[6] As a "local government," Defendant qualifies as a public entity under Title II. 42 U.S.C. § 12131(1)(A). As well, the individuals Swanston helps rehabilitate and associates with through her work are qualified individuals with a disability under Title II. *Id.* § 12131(2); *see, e.g.*, *Tsombanidis v. City of W. Haven, Conn.*, 129 F. Supp. 2d 136, 147–48 (D. Conn. 2001) ("Defendants do not dispute that persons who are non-abusing, recovering alcohols and drug addicts are covered by the . . . ADA.").

*Holder*, No. 3:13-CV-2179-O, 2014 WL 4722627, at *7 (N.D. Tex. Sept. 23, 2014) (applying the zone-of-interest requirement to the ADA), *aff'd*, 621 F. App'x 768 (5th Cir. 2015). As with Swanston's FHA claim, Defendant does not carry its summary-judgment burden as to Swanston's ADA claim.

## CONCLUSION

It is therefore **ORDERED** that Defendant City of Plano's Motion for Summary Judgment on Plaintiff Swanson's Claims (Dkt. #49) is **DENIED**.

**SIGNED this 19th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE