# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| CONSTANCE SWANSON, WOMEN'S ELEVATED SOBER LIVING LLC, and SHANNON JONES, § § § § Plaintiffs, § § v. § § CITY OF PLANO, TEXAS, § § Defendant. | § § § Civil Action No. 4:19-cv-412 § Judge Mazzant |

CONSTANCE SWANSON, WOMEN'S
ELEVATED SOBER LIVING LLC, and
SHANNON JONES,

    *Plaintiffs*,

v.

CITY OF PLANO, TEXAS,

    *Defendant*.

§ Civil Action No. 4:19-cv-412
§ Judge Mazzant

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Plano's Motion for Summary Judgment on Plaintiffs' Facial Challenge to Defendant's Ordinance (Dkt. #52). Having considered the Motion and the relevant pleadings, the Court finds that it should be granted in part and denied in part.

### BACKGROUND

This case centers on changes to Defendant's zoning laws. In 2009, Defendant enacted Ordinance No. 2009-6-9 ("Ordinance"), which altered certain aspects of Defendant's Zoning Code. The Ordinance's amended definition of "household" permits two groups of people to make up a "domestic unit": (1) "one or more individuals related by blood, marriage, adoption or recognized legal union or guardianship, and not more than four adult unrelated individuals, plus any minor children," and (2) "persons residing in a household care facility" (Dkt. #68, Exhibit 2 at p. 2). Households are permitted to live in single-family zoning districts as of right. The Ordinance also modified the definition of "household care facility" to limit the provision of "residence and care to not more than eight persons, regardless of legal relationship" (Dkt. #68, Exhibit 2 at p. 2). The only limit imposed by Defendant's Zoning Code on the number of people

constituting a household of "one or more individuals related by blood, marriage, adoption or recognized legal union or guardianship, and not more than four adult unrelated individuals, plus any minor children," is that of the maximum occupancy permitted by Defendant's safety ordinances.

In November 2018, Women's Elevated Sober Living LLC ("Elevated"), a Texas limited liability company that provides support services for recovering drug and alcohol addicts, opened a sober living home ("Home") located at 7312 Stoney Point Dr., Plano, Texas. The Home is located in the SF-7 single-family residential district of Defendant's zoning scheme. Elevated operates the Home under an arrangement with Plaintiff Constance Swanston ("Swanston"), who leases the property to Elevated, serves as a member of Elevated, and works to operate the Home. Since its opening, the Home has housed as many as fifteen to nineteen unrelated residents at a single time.

After receiving complaints from various citizens about the Home, Defendant informed Elevated in March 2019 that operating the Home with fifteen residents violated zoning restrictions for the neighborhood in which the Home is located. In response, Elevated applied for a reasonable accommodation in the form of a variance to allow up to fifteen unrelated disabled persons to live in the Home. After the application was submitted to Defendant's Board of Adjustments ("Board"), a hearing was held on May 28, 2019, during which more than fifty local homeowners expressed serious concern regarding the Home's location. Following the hearing, the Board denied the requested variance.

On June 5, 2019, Swanston and Elevated filed their initial complaint against Defendant, alleging causes of action under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") (Dkt. #1). One week later, Plaintiffs filed an amended complaint as of right, adding

Shannon Jones ("Jones"), a resident of the Home, as an additional plaintiff (Dkt. #2). On July 31, 2020, Defendant filed its Motion for Summary Judgment on Plaintiffs' Facial Challenge to Defendant's Ordinance (Dkt. #52), currently before the Court. On August 22, 2020, Plaintiffs filed their response to the Motion (Dkt. #68). On August 31, 2020, Defendant filed its reply (Dkt. #72). And on September 8, 2020, Plaintiffs filed their sur-reply (Dkt. #74).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant satisfies this burden as to a claim or defense for which summary judgment is sought, evidence must be offered that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780

3

F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may discharge the burden by demonstrating the absence of evidence supporting the nonmovant's case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried this initial burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden—reciting "barebones, conclusory, or otherwise-unsupported assertions" is simply insufficient. *Hassen v. Ruston Louisiana Hosp. Co., L.L.C.*, 932 F.3d 353, 355–56 (5th Cir. 2019); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). And courts are not required "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Rather, to have a request for summary judgment dismissed, a nonmovant must show with "'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility

determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## ANALYSIS

The FHA "prohibit[s] governmental entities from discriminating against individuals with disabilities." *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 457 (5th Cir. 2018). Congress enacted the FHA "to eradicate discriminatory practices within a sector of our Nation's economy," *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Comms. Project, Inc.*, 576 U.S. 519, 539 (2015), and to clearly pronounce "a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream," *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 201 (5th Cir. 2000) (internal quotation marks omitted) (quoting H.R. Rep. No. 100-711, at 18 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2179). The provisions of the FHA are "broad and inclusive," and, as a whole, the statutory scheme must be given a "generous construction." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972).

Section 3604(f)(1) of the FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter[;] (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter."[1] 42 U.S.C. § 3604(f)(1). In addition, Section 3604(f)(2) prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

---

[1] Although the FHA uses the term "handicap," disability-studies scholars prefer the term "disability" because it is "less stigmatizing to disabled persons." *Buckley v. Consol. Edison Co. of N.Y., Inc.*, 908 F. Supp. 217, 218 n.1 (S.D.N.Y. 1995); *see Helen L. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir. 1995). Because these terms are contextually interchangeable, *see Bragdon v. Abbott*, 524 U.S. 624, 631 (1998), the Court uses "disability" where possible. *Chavez v. Aber*, 122 F. Supp. 3d 581, 594 n.5 (W.D. Tex. 2015).

5

facilities in connection with such dwelling" on account of "a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." *Id.* § 3604(f)(2). "[R]efus[ing] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" constitutes discrimination for purposes of the FHA. *Id.* § 3604(f)(3)(B). Three different theories of liability are available under the FHA for Plaintiffs to establish a discrimination claim: "(1) disparate treatment; (2) disparate impact; and (3) failure to make a reasonable accommodation." *Kearins v. Vill. Creek of Eldorado Home Owners' Ass'n, Inc.*, No. 4:17-CV-00769, 2019 WL 2266635, at *3 (E.D. Tex. Mar. 5, 2019), *report and recommendation adopted*, No. 4:17-CV-00769, 2019 WL 1760521 (E.D. Tex. Apr. 22, 2019); *see Robinson v. City of Friendswood*, 890 F. Supp. 616, 622 (S.D. Tex. 1995).

As a threshold matter, the Court must discern which of these theories Defendant advances. In the Motion, Defendant only "seeks a summary judgment on Plaintiffs' facial challenge" to the Ordinance (Dkt. #52 at p. 2). In Defendant's own words, the "facial challenge" is Plaintiffs' challenge of the Ordinance on the grounds that "the [Defendant]'s limitation on the number of unrelated residents in a Household Care Facility is facially discriminatory" (Dkt. #52 at p. 1). While not exactly clear, this language appears to indicate that the Motion seeks summary judgment on Plaintiffs' disparate-treatment claim (Dkt. #29 at p. 19), and the Court proceeds accordingly.

Disparate treatment is synonymous with intentional discrimination—which Plaintiffs allege Defendant committed in the drafting and enactment of the Ordinance. The "decision or action" of a defendant "constitutes disparate treatment . . . when a person's disability was a 'motivating factor' behind the challenged action or decision." *Cmty. Hous. Tr. v. Dep't of*

*Consumer & Regul. Affs.*, 257 F. Supp. 2d 208, 225 (D.D.C. 2003); *see Dr. Gertrude A. Barber Ctr., Inc. v. Peters Tp.*, 273 F. Supp. 2d 643, 656 (W.D. Pa. 2003) ("A case of disparate treatment under the FHA may be established 'by demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others.'" (quoting *Arc of N.J., Inc. v. New Jersey*, 950 F. Supp. 637, 643 (D.N.J. 1996), *superseded by statute on other grounds as recognized in Blake Gardens, LLC v. New Jersey*, 417 F. Supp. 3d 493 (D.N.J. 2019))). Intentional discrimination may be proved with either direct or circumstantial evidence, both of which Plaintiffs allege to offer.

"Direct evidence is evidence which, if believed, proves [a] fact without inference or presumption." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)); *accord Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012) (Gorsuch, J.). When examining a municipal ordinance for direct proof of intentional discrimination proscribed by the FHA, the analytical journey for courts begins and ends with the ordinance's text. *See Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262, 1274 (D. Idaho 2019). If an ordinance, on its face, demonstrates "an intent to discriminate" against those with disabilities, no "additional evidence of discriminatory animus" is needed. *Child.'s All. v. City of Bellevue*, 950 F. Supp. 1491, 1495 (W.D. Wash. 1997).[2] If Plaintiffs offer sufficient direct evidence of

---

[2] This analytical step is generally considered the first in a two-part inquiry "to determine whether an ordinance is facially discriminatory in violation of the . . . FHA." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, No. 19-60007-CIV, 2020 WL 4736211, at *9 (S.D. Fla. Aug. 14, 2020). If this step is satisfied, the government must then justify why the facially discriminatory ordinance does not violate the FHA. *Id.* Federal courts evaluate direct evidence of intentional discrimination under the FHA differently at the second step. *Compare* (Dkt. #52 at pp. 15–17), *with* (Dkt. #68 at pp. 8–9). To borrow terminology from equal protection jurisprudence, courts either apply "ordinary rational basis" scrutiny or "rational basis" scrutiny "with bite." *See* Kenji Yoshino, *The New Equal Protection*, 124 HARV. L. REV. 747, 759 (2011). The Eighth Circuit applies standard rational basis review to FHA disparate-treatment claims, requiring a defendant to show only that the ordinance is "reasonably related" to "legitimate goals." *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 252 (8th Cir. 1996). All other circuit courts having addressed this question apply heightened rational basis review—rational basis with bite—to FHA disparate-treatment claims,

intentional discrimination, they should prevail—"just as in any other civil case" where a plaintiff satisfies their burden. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996).

In the absence of direct evidence, disparate treatment may be demonstrated by circumstantial evidence. *United States v. City of Beaumont*, No. 1:15-CV-201, 2015 WL 13730887, at *2 (E.D. Tex. Nov. 3, 2015), *report and recommendation adopted*, No. 1:15-CV-201, 2016 WL 159228 (E.D. Tex. Jan. 14, 2016); *see 273 Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*, 330 F. Supp. 3d 778, 788 (E.D.N.Y. 2018) (cautioning trial courts against granting summary judgment "when intent is at issue" because facial discrimination is "rare"). Given the "the strong similarities between the language, design, and purposes of Title VII and the Fair Housing Act," *EEOC v. Miss. Coll.*, 626 F.2d 477, 482 (5th Cir. 1980), courts in the Fifth Circuit apply the familiar *McDonnell Douglas* burden-shifting standard of Title VII to evaluate circumstantial evidence of intentional discrimination in FHA cases. *See, e.g.*, *Terry v. Inocencio*, No. 3:11-CV-0660-K-BK, 2014 WL 4686570, at *5 (N.D. Tex. Sept. 2, 2014), *report and recommendation adopted*, No. 3:11-CV-0660-K-BK, 2014 WL 4704629 (N.D. Tex. Sept. 22, 2014), *aff'd and remanded*, 633 F. App'x 281 (5th Cir. 2016); *Cox v. Phase III, Invs.*, No. CIV.A. H-12-3500, 2013 WL 3110218, at *8 (S.D. Tex. June 14, 2013); *Artisan/Am. Corp. v. City of Alvin*, No. CIV.A. 4:07-CV-2899, 2008 WL 8894683, at *4 n.5 (S.D. Tex. Nov. 19, 2008), *aff'd sub nom.*

---

requiring a defendant to demonstrate there was no intention "to further an improper government objective" in enacting the ordinance, *Am. Exp. Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 692 (6th Cir. 2011). *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007) (requiring an ordinance facially discriminating against disabled persons to "benefit[] the protected class" or "respond[] to legitimate safety concerns raised by the individuals affected"); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir. 1995) (requiring an ordinance facially discriminating against disabled persons to be justified by "benign discrimination" or "public safety"); *Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 47 (6th Cir. 1992) (requiring an ordinance to be "warranted by the unique and specific needs and abilities of" disabled persons). While the Fifth Circuit has not spoken to this split in authority, the Court sees no need to dive into these unsettled judicial waters—it is enough to find that a municipal ordinance "impelled by animus is a poisoned and poisonous one." *See* Dale Carpenter, Windsor *Products: Equal Protection from Animus*, 2013 SUP. CT. REV. 183, 184.

*Artisan/Am. Corp. v. City of Alvin, Tex.*, 588 F.3d 291 (5th Cir. 2009); *see also Crain v. City of Selma*, 952 F.3d 634, 641 (5th Cir. 2020).

Under the *McDonnell Douglas* framework, "the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination." *Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 729 (S.D. Tex. 2000). "Once the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to articulate—but not prove—a legitimate nondiscriminatory reason for its action." *Id.* "A defendant meets this burden by producing admissible evidence of a reason that would be 'legally sufficient to justify a judgment for the defendant.'" *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, No. CIV.A. 4:02-CV-478Y, 2005 WL 548104, at *6 (N.D. Tex. Mar. 9, 2005) (quoting *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir. 1983)). It is not required that a defendant demonstrate the absence of intentional discrimination, but the defendant must produce some evidence to that effect. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993).

If a defendant satisfies this burden of production, then "the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination" by demonstrating "that the reason offered by the defendant is a pretext for discrimination." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *St. Mary's*, 509 U.S. at 511–12). A "plaintiff can make a showing of pretext 'by persuading the court that a discriminatory reason more likely motivated the defendant or by showing that the defendant's proffered explanation is unworthy of credence.'" *Arbor Bend Villas Hous.*, 2005 WL 548104, at *7 (cleaned up) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)). Critically, "the question" at the summary-judgment stage "is not whether the plaintiff

9

proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1450 (5th Cir. 1992); *see Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11-CV-1239-D, 2011 WL 4359940, at *9 (N.D. Tex. Sept. 19, 2011) ("'The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement,' and therefore 'should not be transposed into a rigid pleading standard.'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002))). At all times, the burden to prove intentional discrimination remains with the plaintiff. *Norris v. Hous. Auth. of City of Galveston*, 980 F. Supp. 885, 901 (S.D. Tex. 1997) (citing *St. Mary's*, 509 U.S. at 507).

Because "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination," *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)), the Court looks first to the evidence Plaintiffs offer as direct evidence of Defendant's alleged intentional discrimination. If the Court determines direct evidence of intentional discrimination to be absent, only then will circumstantial evidence under *McDonnell Douglas* be considered.

**I. Disparate Treatment – Direct Evidence**

In relevant part, the Ordinance reads:

**Household**
A domestic unit that resides in and shares in common a single dwelling unit and consists of one or more individuals related by blood, marriage, adoption or recognized legal union or guardianship, and not more than 4 adult unrelated individuals, plus any minor children, or persons residing in a household care facility.

**Household Care Facility**
A dwelling unit that provides residence to not more than 8 persons, regardless of legal relationship, who are elderly; disabled; orphaned, abandoned, or neglected children; victims of domestic violence; or rendered temporarily homeless due to

>fire, natural disaster, or financial setbacks, living together with no more than 2 caregivers as a single household.[3]

(Dkt. #52, Exhibit 2 at p. 14). Plaintiffs argue that this definition disfavors the living arrangement for residents of "group sober living" homes and "facially discriminat[es]" against these persons with disabilities[4] (Dkt. #52 at p. 10). Upon closer examination, such is not the case.

The definition of "household" in the Zoning Code is certainly not a model of linguistic clarity, but its meaning is discernible. The first part of the definition states what a household is—"[a] domestic unit that resides in and shares in common a single dwelling unit" (Dkt. #52, Exhibit 2 at p. 14). Given its plain meaning, this phrase signifies that a household is a group of people who live together in the same "dwelling unit," which is "[a] building or portion of a building which is arranged, occupied, or intended to be occupied as living quarters of a family and including facilities for food preparation, sleeping, and sanitation" (Dkt. #52, Exhibit 2 at p. 9).

The second part of the definition states who may reside within a household—in other words, which persons may comprise the domestic unit of a household. The two types of domestic units occupying a single dwelling unit may consist of either (1) "one or more individuals related by blood, marriage, adoption or recognized legal union or guardianship, and not more than 4 adult unrelated individuals, plus any minor children"; or (2) "persons residing in a household care facility" (Dkt. #52, Exhibit 2 at p. 14). In the first type of domestic unit, as many people as Defendant's safety ordinances permit may reside in a dwelling unit as long as no more than four of the people in the domestic unit are not "related by blood, marriage, adoption or recognized legal

---

[3] At various points, Plaintiffs take issue with other aspects of Defendant's zoning laws, ranging from the "Backyard Zoning Ordinance" (Dkt. #68 at p. 13) to the entirety of the Zoning Code itself (Dkt. #29 at p. 19). Because Plaintiffs primarily challenge Ordinance No. 2009-6-9 (Dkt. #68, Exhibit 2), the Court analyzes its language here.
[4] Under the FHA, a "handicap" includes "a physical or mental impairment which substantially limits one or more of [a] person's major life activities." 42 U.S.C. § 3602(h)(1). "The term 'physical or mental impairment,' . . . includes drug addiction (other than addition [sic] caused by current, illegal use of a controlled substance) and alcoholism." *Palm Partners, LLC v. City of Oakland Park*, 102 F. Supp. 3d 1334, 1341 (S.D. Fla. 2015) (citing 24 C.F.R. § 100.201(a)(2)).

union or guardianship." In the second type of domestic unit, the maximum number of residents in a single dwelling unit is eight, "regardless of legal relationship," plus up to two others as "caregivers" (Dkt. #52, Exhibit 2 at p. 14). An individual qualifies as a "person[] residing in a household care facility" if they are "elderly; *disabled*; orphaned, abandoned, or neglected children; victims of domestic violence; or rendered temporarily homeless due to fire, natural disaster, or financial setbacks" (Dkt. #52, Exhibit 2 at p. 14) (emphasis added).

Plaintiffs argue that the Ordinance discriminates against those with disabilities by recognizing these two types of domestic units (Dkt. #68 at p. 10). Specifically, Plaintiffs posit that this regulation favors "family and friends" over those in "group sober living" by permitting as many "family and friends" in a household "as the [Defendant's] safety code" allows while limiting the number of residents in a "household care facility," excluding caretakers, to eight (Dkt. #68 at p. 10). This argument is unpersuasive.

To begin, Plaintiffs inaccurately compare the "similarly situated" for purposes of disparate-treatment analysis. For example, Plaintiffs advance their position by stating that "[t]he disabled residents of a Home Care Facility are not similarly situated to some other collection of unrelated non-disabled adults because they do not have the choice to live with their families or friends and become part of a friends and family 'domestic unit'" (Dkt. #68 at p. 11). The problem with this assertion is that Plaintiffs simultaneously shift more than one variable when comparing those similarly situated. The two characteristics involved in the definition of household under the Ordinance are disability and relation.[5] This statement by Plaintiffs is representative of the overarching argument they offer: unrelated, disabled persons are made worse off by the Ordinance

---

[5] To reiterate, federal law provides the applicable definition of "disability," *see* 42 U.S.C. § 3602(h)(1); 24 C.F.R. § 100.201(a)(2), and for purposes of a household under the Ordinance, relation means "related by blood, marriage, adoption or recognized legal union or guardianship . . . plus any minor children," (Dkt. #52, Exhibit 2 at p. 14).

than related, non-disabled persons. Comparisons simply do not work this way. For purposes of FHA disparate-treatment analysis, the only relevant comparator trait is disability—all other variables must remain constant.[6]

Looking to the text of the Ordinance and comparing its treatment of unrelated persons with disabilities to unrelated persons without disabilities, the Court sees a clear difference. The maximum number of unrelated people *without* disabilities that may share a domestic unit is four. By contrast, the maximum number of unrelated people *with* disabilities that may share a domestic unit is eight, not including caretakers. Just on its face, the Ordinance treats unrelated disabled persons better than unrelated non-disabled persons (Dkt. #72 at p. 2).

Plaintiffs nevertheless maintain that this language is discriminatory under the FHA because "[d]iscrimination is measured by the dissimilar treatment" of similarly situated "individuals or groups" (Dkt. #68 at p. 11), and the Ordinance treats those with disabilities differently than those without. The issue with this argument, however, is that Plaintiffs use the word "discriminate" in a different sense than the FHA does. In the most technical sense, to discriminate means "[t]o make or constitute a difference in or between; to distinguish, differentiate." *Discriminate*, OXFORD ENGLISH DICTIONARY (2d ed. 1989).[7] Choosing one thing over another is discrimination—under this vast definition, an individual discriminates when an action or decision involves any semblance

---

[6] Plaintiffs respond that framing the comparison in this manner "fails to account for the fact that those with disabilities are not similarly situated to those who are not disabled" because "recovering addicts . . .require sober living to remain sober" (Dkt. #68 at pp. 11–12). The only legal authority Plaintiffs offer to support this proposition comes from a case out of the U.S. District Court for the Southern District of Indiana (Dkt. #68 at p. 11). While the quoted passage initially appears to support Plaintiffs' stance, the quotation is inapposite, as the language pertains to the failure-to-accommodate claim in that case, not the disparate-treatment claim. *See New Horizons Rehab., Inc. v. Indiana*, 400 F. Supp. 3d 751, 762–66 (S.D. Ind. 2019). Moreover, Defendant disputes Plaintiffs' position as to the necessity of sober living for addiction recovery (*see* Dkt. #30 at pp. 1–2, 12–13). This determination must be reserved for the finders of fact.

[7] The Court interprets statutory language "consistent[ly] with its 'ordinary meaning at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (ellipsis omitted) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). These protections for persons with disabilities came about with the enactment of the Fair Housing Amendments Act in 1988. *United States v. City of Jackson, Miss.*, 359 F.3d 727, 736 (5th Cir. 2004).

of discretion. While Plaintiffs' usage of "discrimination" is lexically correct, it is contextually inappropriate.

Within the FHA framework, discrimination occurs *against* an individual, and to "discriminate against" means "to make an adverse distinction with regard to" or "to distinguish unfavourably from others." *Discriminate*, OXFORD ENGLISH DICTIONARY (2d ed. 1989). Phrased differently, disparate treatment under the FHA occurs when those with disabilities are made *worse off* compared to those without disabilities. *See Inclusive Comms. Project, Inc.*, 576 U.S. at 558 (Alito, J., dissenting) ("Treating someone 'less favorably than others because of a protected trait' is 'the most easily understood type of discrimination.'" (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009))). The Supreme Court recently reaffirmed this principle in the context of Title VII, finding that "[t]o 'discriminate against' a person . . . would seem to mean treating that individual worse than others who are similarly situated." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1740 (2020). In comparable settings, courts also find that discrimination necessarily involves less favorable treatment towards a protected class. *See, e.g.*, *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 193 (5th Cir. 1988) (age); *Washington v. Occidental Chem. Corp.*, 24 F. Supp. 2d 713, 726 (S.D. Tex. 1998) (disability); *Roman Catholic Diocese of Brooklyn v. Cuomo*, No. 20A87, 2020 WL 6948354, at *8 (U.S. Nov. 25, 2020) (Kavanaugh, J, concurring) (per curiam) (religion).

Though the Ordinance discriminates in the sense that it "treats people with disabilities differently," it does not discriminate under the FHA because the Ordinance "treats individuals with disabilities better than those without disabilities." *See Sailboat Bend Sober Living*, 2020 WL 4736211, at *11 (emphases omitted). This result aligns with the policies and aims of the FHA. *See* 42 U.S.C. § 3601 ("It is the policy of the United States to provide . . . for fair housing throughout the United States."); *see also Sailboat Bend Sober Living*, 2020 WL 4736211, at *11–

12 (collecting cases in which federal courts rejected challenges brought by individuals with disabilities questioning the validity of "laws that extend favorable treatment to the disabled"). Eliminating housing discrimination deliberately designed to ostracize persons with disabilities "promotes 'the goal of independent living' and is part of Congress's larger 'commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream.'" *Bangerter*, 46 F.3d at 1504 (quoting H.R. Rep. No. 100-711, at 18 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2179). Ultimately, it simply appears that Plaintiffs find the occupancy limits within the SF-7 single-family residence zone facially disagreeable. "But every line drawn . . . leaves some out that might well have been included," *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974), and the police power of municipalities to institute land-use regulations enables Defendant to draw such lines, *see id.* at 9.

After thoroughly examining the text of the Ordinance in light of the FHA and relevant caselaw, the Court cannot agree with Plaintiffs' position that the Ordinance facially contravenes the FHA. Therefore, the Court grants Defendant's motion for summary judgment as to the direct-evidence theory of Plaintiffs' FHA claim for disparate treatment.

## II. Disparate Treatment – Circumstantial Evidence

With direct evidence of disparate treatment lacking, the Court turns to the circumstantial evidence Plaintiffs offer in support of their disparate-treatment claim and examines this evidence under the *McDonnell Douglas* framework. Under this standard, Plaintiffs bear the initial burden to show a *prima facie* case of intentional discrimination. As detailed above, Plaintiffs indicate that there are differing occupancy limits depending on the people who make up a domestic unit (Dkt. #68 at p. 10). This distinction sufficiently demonstrates Plaintiffs' *prima facie* case of disparate treatment predicated on disability. *See Green v. El Paso Cnty., Colo.*, No. 18-CV-1122-WJM-

KMT, 2020 WL 4429387, at *12 (D. Colo. July 31, 2020) (finding an ordinance "impos[ing] different occupancy levels for handicapped persons . . . sufficient to make out [a] *prima facie* claim for intentional discrimination under the FHA").

Now the burden of production shifts to Defendant to advance a legitimate, nondiscriminatory reason explaining the difference in occupancy levels depending on the type of domestic unit in a household. Defendant articulates clear justifications for the occupancy limits: "promoting the general welfare, promoting 'family values,' and controlling density in a residential neighborhood" (Dkt. #52 at p. 11). Although the "police power" afforded to municipalities for zoning purposes "is not unlimited, its boundaries are both ample and protean." *Maher v. City of New Orleans*, 516 F.2d 1051, 1059 (5th Cir. 1975). The Fifth Circuit has previously found these explanations for land-use regulations to constitute legitimate and valid exercises of municipal police power. *See Davidson v. City of Clinton, Miss.*, 826 F.2d 1430, 1434 (5th Cir. 1987) (general welfare); *Harper v. Lindsay*, 616 F.2d 849, 855 (5th Cir. 1980) (family values); *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989) (residential integrity). Defendant has therefore satisfied its burden to proffer a legitimate, nondiscriminatory reason for enacting the Ordinance.[8] *See Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (requiring that land-use regulations not be "clearly arbitrary and unreasonable" and bear "relation to the public health, safety, morals, or general welfare").

The burden of production now shifts back to Plaintiffs to show that the reasons Defendant offered for enacting the Ordinance were a pretext for discrimination. After carefully reviewing

---

[8] This step of the *McDonnell Douglas* analysis does not involve a credibility assessment. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). Even if Defendant was "incorrect in its assessment of the facts it relie[d] on to justify" the enactment of the Ordinance, Defendant satisfies its burden of production at this stage as long as Defendant had no "discriminatory animus against [Plaintiffs] in making its decision." *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

the record and the arguments presented, the Court is persuaded that Plaintiffs have met their burden to demonstrate that a genuine issue of material fact exists.  As such, the Court denies Defendant's motion for summary judgment as to the circumstantial-evidence theory of Plaintiffs' FHA claim for disparate treatment.

## CONCLUSION

It is therefore **ORDERED** that Defendant City of Plano's Motion for Summary Judgment on Plaintiffs' Facial Challenge to Defendant's Ordinance (Dkt. #52) is **GRANTED** as to the direct-evidence theory of Plaintiffs' FHA claim for disparate treatment and is **DENIED** as to the circumstantial-evidence theory of Plaintiffs' FHA claim for disparate treatment.

**SIGNED this 3rd day of December, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE