IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CONSTANCE SWANSTNON and | § | |
| WOMEN'S ELEVATED SOBER LIVING | § | |
| LLC., and SHANNON JONES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-00412-ALM |
| | § | |
| CITY OF PLANO, TEXAS, and | § | |
| CITY OF PLANO'S BOARD OF | § | |
| ADJUSTMENT, | § | |
| | § | |
| Defendants. | § | |
| | § | |

---

## PLAINTIFF SHANNON JONES'S POST-TRIAL BRIEF

---

CHRISTOPHER P. McGREAL
TX State Bar No. 24051774
DISABILITY RIGHTS TEXAS
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247
Phone: (214) 845-4056
Fax: (214) 630-3472
cmcgreal@drtx.org

RACHEL COHEN-MILLER
Texas State Bar No. 24064301
DISABILITY RIGHTS TEXAS
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
Phone: (214) 845-4069
Fax: (214) 630-3472
rmiller@drtx.org

---

*Attorneys for Plaintiff Shannon Jones*

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.      STATEMENT OF FACTS .......................................................................................... 1

II.     ARGUMENT ................................................................................................................ 3

   A.   Issue In This Case .................................................................................................. 3

   B.   Relief Requested By Ms. Jones ............................................................................. 4

   C.   Elements of a Refusal to Make a Reasonable Accommodation Under the Federal Fair
        Housing Act ............................................................................................................ 5

   D.   Ms. Jones Established That Defendants Discriminated Against Her and Her Co-
        Plaintiffs When They Denied Elevated Women's Sober Living Accommodation
        Request and Thus Violated 42 U.S.C. 3604(f)(3)(B) ........................................... 7

        1.   Ms. Jones and her fellow residents are persons with disabilities under both the Fair
             Housing Act and Title II of the ADA ........................................................... 7

           a)   Ms. Jones ............................................................................................... 7

           b)   Women's Elevated Sober Living is a Sober Living Home that Houses Persons Who
                Qualify Under 42 U.S.C. § 3602(h) ........................................................ 9

        2.   There is no dispute that an accommodation request was both requested of
             Defendants; that such accommodation request was denied; and that the Stoney Point
             Residence is a dwelling ................................................................................ 10

        3.   The requested accommodation is reasonable in this case ........................................ 11

           a)   Standards for reasonableness ...................................................................... 11

           b)   The requested accommodation was and is reasonable ............................... 12

        4.   Plaintiffs' Requested Accommodation Is Necessary. ................................................ 15

           a)   Standards for Necessity ................................................................................ 15

           b)   The issue of necessity in this case and closure of Stoney Point Residence ............. 18

           c)   Dr. Majer's expert opinion supports the need for necessity of 15 women ............... 18

           d)   Present and past resident testimony supports the need for 15 women ..................... 20

           e)   There is a causal link between the necessity of 15 women and an equal opportunity
                to use and enjoy their dwelling ................................................................... 21

      f)     Stoney Point Residence is Ms. Jones's housing of her choice that is necessary for her particular recovery ............................................................................... 23

      g)    Defendant's alleged expert should be given no weight............................................ 24

III.    CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Al Gashiyah v. Wis. Parole Comm'n,*
　　2007 U.S. App. LEXIS 18034 (7th Cir. July 26, 2007)....................................................... 8

*Avalon Residential Care Homes, Inc. v. City of Dallas,*
　　130 F. Supp. 2d 833 (N.D. Tex. 2000) ............................................................... 14

*Chavez v. Aber,*
　　122 F. Supp. 3d 581 (W.D. Tex. 2015)........................................................... 6, 25

*Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City,*
　　685 F.3d 917 (10th Cir. 2012) ...................................................................... 22, 23

*City of Edmonds v. Oxford House, Inc.,*
　　514 U.S. 725 (1995)............................................................................................ 5

*Dr. Gertrude A. Barber Center, Inc. v. Peters Township,*
　　273 F. Supp. 2d 643 (W.D. Pa. 2003)..................................................... 6, 7, 18, 23

*Edwards v. Salter Properties and Salter Construction, Inc.,*
　　739 Fed. App'x 357 (8th Cir. 2018) ................................................................. 16

*Geibler v. M & B Associates, Inc.,*
　　343 F.3d 1143 (9th Cir. 2003) ........................................................................ 16

*Groome Resources, Ltd. v. Parish of Jefferson, LA.,*
　　234 F.3d 192 (5th Cir. 2000) ..................................................................... 4, 14

*Harmony Haus Westlake, LLC, v. Parkstone Property Homeowners' Association, Inc.,*
　　440 F.Supp.3d 654 (W.D. Tex. 2020)......................................................... passim

*Harmony Haus Westlake, LLC, v. Parkstone Property Owners Ass'n, Inc.,*
　　2020 WL 1241724 (W.D. Tex. Feb. 18, 2020)............................................... 6, 16

*Howard v. HMK Holding, LLC.,*
　　-- F.3d. --, No. 18-55923, 2021 WL 686277 (9th Cir. February 23, 2021) ............... 17, 21

*Jeffrey O. v. City of Boca Raton,*
　　511 F. Supp. 2d 1339 (S.D. Fla. 2007) ............................................................. 8

*Kearins v. Village Creek of Eldorado Home Owners' Association, Inc.,*
　　2019 WL 2266635 (E.D. Tex. March 5, 2019)..................................................... 9

*Kuhn by and through Kuhn v. McNary Estates Homeowners Association, Inc.,*
　　228 F.Supp. 3d 1142 (D. Ore. 2017)................................................................ 24

*Loren v. Sasser,*
    309 F.3d 1296 (11th Cir. 2002) ..................................................................... 17

*Oxford House, Inc. v. Browning,*
    266 F. Supp. 3d 896 (M.D. La. 2017) ...................................................... *passim*

*Oxford House, Inc. v. City of Baton Rouge, La.,*
    932 F. Supp. 2d 683 (M.D. La. 2013) ................................................... 7, 8, 17

*Oxford House, Inc. v. City of Raleigh,*
    No. 5:98–CV–113–BO, 1999 WL 1940013 (E.D.N.C. Jan. 1999) ................................ 17

*Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua,*
    304 F. Supp. 2d 1245 (D. Haw. 2003),
    *aff'd sub nom. Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua,*
    453 F.3d 1175 (9th Cir. 2006) ..................................................................... 6, 25

*ReMed Recovery Care Centers v. Twp. of Willistown, Chester Cty., Pa.,*
    36 F. Supp. 2d 676 (E.D. Pa. 1999) ........................................................ 7, 18, 23

*Schwartz v. City of Treasure Island,*
    544 F.3d 1201 (11th Cir. 2008) ........................................................... 11, 15, 24

*St. Paul Sober Living, LLC v. Bd. of Cty. Comm'rs, Garfield Cty., Colo.,*
    No. 11-CV-00303-RBJ-MEH, 2013 WL 5303484 (D. Colo. Sept. 17, 2013) ....... 7, 18, 23

*U.S. v. City of Irmo, S.C.,*
    No. 3:18-cv-03106, 2020 WL 2322714 (D.S.C. May 11, 2020) ..................................... 17

*United States v. Audubon,*
    797 F. Supp. 353 (D.N.J. 1991) ..................................................................... 10

*United States v. City of Jackson,*
    318 F. Supp. 2d 395 (S.D. Miss. 2002) ............................................................. 11

*United States v. Vill. of Palatine,*
    37 F.3d 1230 (7th Cir. 1994) ........................................................................... 5

*Valencia v. City of Springfield,*
    883 F.3d 959 (7th Cir. 2018) ............................................................... 13, 14, 15

*Wis. Cmty. Servs. v. City of Milwaukee,*
    465 F.3d 737 (7th Cir. 2006) ........................................................................... 16

**Statutes**

42 U.S.C. § 2131(a) .......................................................................................... 1

42 U.S.C. § 3602(b) ........................................................................................ 11

42 U.S.C. § 3602(f) .................................................................................................... 4

42 U.S.C. § 3602(h) ............................................................................................... 7, 9

42 U.S.C. § 3602(i) ..................................................................................................... 4

42 U.S.C. § 3604(f)(3) ............................................................................................... 4

42 U.S.C. § 3604(f)(3)(B) ................................................................................ *passim*

42 U.S.C. § 3613(a) ................................................................................................... 4

42 U.S.C. § 3613(c)(1) ............................................................................................... 5

42 U.S.C. § 12102(2)(A) ............................................................................................ 8

42 U.S.C. § 12132 ...................................................................................................... 1

## Regulations

28 C.F.R. § 35.104 ..................................................................................................... 1

Upon completion of a bench trial in this case on February 9, 2021, post-trial briefing was ordered by the Court. Plaintiff Shannon Jones now submits her Post-Trial Brief and would respectfully show the Court as follows:[1]

## I.     STATEMENT OF FACTS

Women's Elevated Sober Living, L.L.C. ("Elevated" or "Women's Elevated Sober Living") is a Texas Limited Liability Company. Jt. Pre-Trial Order (ECF No. 75), Exhibit A, ¶ 3. Elevated operates a sober living home ("the Stoney Point Home") at 7312 Stoney Point, Plano, Texas 75025 ("Stoney Point Residence"). ECF No. 75, Exhibit A, ¶ 6. The residents of the Stoney Point Home are addicts in recovery. *Id*. ¶ 26.

The City of Plano is a "public entity" within the meaning of the ADA, 42 U.S.C. § 2131(a), 28 C.F.R. § 35.104. ECF. No. 75, Exhibit A, ¶ 9. The City of Plano is subject to Title II and V of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § Part 35. *Id*. ¶ 10. The City of Plano's Board of Adjustment is a "public entity" within the meaning of the ADA, 42 U.S.C. § 2131(a), 28 C.F.R. § 35.104. *Id*. ¶ 11. The City of Plano's Board of Adjustment is subject to Title II and V of the ADA, 42 U.S.C. § 12132. *Id*. ¶ 12.

Elevated opened the Stoney Point Residence in November of 2018. ECF No. 75, Exhibit A, ¶ 13. The Stoney Point Residence is 5,890 square feet. *Id*. ¶ 14. The Stoney Point Residence is in an SF-7 zoning district in the City of Plano. *Id*. ¶ 14. The Stoney Point Residence has several living rooms, a spacious kitchen, and a dining room. *Id*. ¶ 15. The Stoney Point Residence is in a single-family residentially zoned area of the City of Plano, Texas. *Id*. ¶ 16. The police have not visited the Stoney Point Home during the time the Stoney Point Residence. *Id*. ¶ 18.

---

[1] Undersigned counsels for Ms. Jones are unaware of any page limit for the post-trial briefing, but will adhere to the briefing page limit for dispositive motions under the Court's Local Rule CV-7(a)(1) for the purpose of this briefing.

Shannon Jones ("Jones" or "Ms. Jones") is an individual residing at the Stoney Point Residence. ECF No. 75, Exhibit A, ¶ 21-22. Ms. Jones is a house manager at the Stoney Point Home. *Id*. ¶ 23. Ms. Jones has lived at the Stoney Point Home since April of 2019. *Id*. ¶ 24. Ms. Jones is in recovery from substance abuse. *Id*. ¶ 25. She has been sober from substances for over ten years and alcohol for nearly three years. *See* Bench Trial Testimony of Ms. Jones, February 8, 2012. When not sober, Ms. Jones's ability to work, self-care, maintain relationships, sleep, and socialize are substantially and negatively impacted. *Id*. Ms. Jones's substance disorder caused her to lose relationships with her family members. *Id*. Ms. Jones cannot live independently and needs to reside in a sober living home with a group of other individuals in recovery from substance who want to remain sober. *Id*. Living alone will lead to a relapse for Ms. Jones. *Id*.

Elevated applied to the Plano Board of Adjustment for an accommodation under the Fair Housing Act and Title II of the Americans with Disabilities Act. ECF No. 75, Exhibit A, ¶ 29. Elevated's requested accommodation would permit up to fifteen (15) unrelated women to live in the Stoney Point Residence. *Id*. ¶ 30. Without 15 women residing at the Stoney Point Residence, Elevated will have to shut down the home, and the residents will need to find housing elsewhere. *See* Bench Trial Testimony of Constance Swanston, February 8, 2021. In May 2019, the City of Plano held a public meeting concerning Elevated's accommodation request. *Id*. ¶ 31. At the end of the meeting, the City of Plano Board of Adjustment denied Elevated's accommodation request of a zoning variance. *Id*. ¶ 32.

The City of Plano and the Board of Adjustment heard the public comments at this meeting when deciding the accommodation request. ECF No. 75, Exhibit A, ¶ 33. Ms. Jones was present for the hearing and found many of the statements deeply hurtful and hateful. This lawsuit followed. See Bench Trial Testimony of Ms. Jones, February 8, 2021.

The City of Plano and the Board of Adjustment never moved for a temporary restraining order to stop the Stoney Point Home from operating after denying Elevated's request for accommodation. ECF No. 75, Exhibit A, ¶ 27. The City of Plano and the Board of Adjustment never moved for a preliminary injunction to stop the Stoney Point Home from operating. *Id*., Exhibit A, ¶ 28.

Ms. Jones joined a lawsuit against Defendants. Ms. Jones only pursues the claim of the denial of an accommodation under 42 U.S.C. § 3604(f)(3)(B) as an impacted aggrieved party of that accommodation being denied.

## II.     ARGUMENT

### A.  Issue In This Case

The issue in this case is whether up to fifteen (15) or eight (8) residents in recovery from substance abuse is reasonable and necessary at the Stoney Point Residence in order for said residents in recovery to have an equal opportunity to use and enjoy their dwelling, in accordance with 42 U.S.C. § 3604(f)(3)(B). Those are the only two numbers the Court can and must consider. The City's ordinance at issue in this case specifies only 8 persons with a disability can reside in the residential zoned area where the Stoney Point Residence exists. Any mention of caregivers in the City of Plano's ordinance is not included with the persons with disabilities, and therefore the additional two individuals are excluded from the number calculation of persons with disabilities permitted to reside, given the plain meaning of the ordinance. Elevated advanced through an accommodation that up to 15 persons in recovery is reasonable and necessary for the Stoney Point Residence in order for the residents in recovery from substance abuse to have an equal opportunity to use and enjoy their dwelling. Therefore, the Court can only issue an injunctive order for the Stoney Point Residence to house either up to 15 or 8 persons. If

the number is 15, the house will remain open. If 8 are permitted, the house will shut down, and

Ms. Jones will lose her housing.

### B.  Relief Requested By Ms. Jones

Ms. Jones seeks only injunctive relief and a claim of attorney's fees on the claim that

Defendants' denied a reasonable accommodation request under the federal Fair Housing Act, 42

U.S.C. § 3604(f)(3) for up to fifteen (15) unrelated persons who are women in recovery of

substance abuse to reside at the Stoney Point Residence.

Ms. Jones has standing to bring a claim for Defendants' failure to accommodate under

the FHAA and ADA. Under 42 U.S.C. § 3613(a) of the FHAA, only aggrieved persons may

bring a civil action. Under 42 U.S.C. § 3602(i) of the FHAA, an aggrieved person means "any

person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes

that such person will be injured by a discriminatory housing practice that is about to occur." A

housing discriminatory practice under the FHAA "means an act that in unlawful under section

3604, 3605, 3606, or 3617 of [the FHAA]." 42 U.S.C. § 3602(f). Ms. Jones alleges a violation

of 42 U.S.C. § 3604(f)(3)(B). There is no dispute that Defendants denied the accommodation

request at issue in this case. ECF No. 75, Exhibit A, ¶ 32; s*ee Groome Resources, Ltd. v. Parish

of Jefferson, LA.*, 234 F.3d 192, 199 (5th Cir. 2000) ("Under the Fair Housing Act a violation

occurs when the disabled resident is first denied a reasonable accommodation, irrespective of

the remedies granted in subsequent proceedings.") (citation and internal quotations omitted).

Ms. Jones was encompassed within the accommodation requested by Elevated as a

resident at the home in May 2019, when the accommodation was made by Elevated. Further,

even if Ms. Jones had made an accommodation on her own, it would have been futile, as it

would have mirrored Elevated's denied accommodation, which was denied by Defendants. *See

*United States v. Vill. of Palatine*, 37 F.3d 1230, 1234 (7th Cir. 1994) (where requesting an accommodation would be futile, courts have not required that persons with disabilities do so). Further, Ms. Constance Swanston testified that the Stoney Point Residence would shutdown if fifteen (15) are not permitted to remain. Defendants continued to pursue a lower number of residents for the home of eight (8) individuals with disabilities instead of 15 at the bench trial and in post-trial briefing. Ms. Jones will lose her housing should Defendants prevail and enforce a limit of 8 persons with disabilities at the Stoney Point Residence. Therefore, Ms. Jones's housing/dwelling will become unavailable to her should Defendants enforce 8 unrelated persons with disabilities at the Stoney Point Residence. Mrs. Jones is able to seek permanent injunctive relief for Defendants to grant this accommodation request under the FHA under 42 U.S.C. § 3613(c)(1) of the FHAA to prevent Defendants from causing the housing that helps ameliorate the effects of her disability from becoming unavailable to her.

### C.  Elements of a Refusal to Make a Reasonable Accommodation Under the Federal Fair Housing Act

"[T]he [FHA's] stated policy [is] to provide, within constitutional limitations, for fair housing throughout the United States." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (citing 42 U.S.C. § 3601). The FHA contains "'broad and inclusive'" compass, and therefore accords a "'generous construction'" to the Act's complaint-filing provision." *City of Edmonds*, 514 U.S. at 731 (citing and quoting *Trafficante v. Metropolitan Life, Ins. Co.*, 409 U.S. 205, 209 (1972)).

Under the federal Fair Housing Act, unlawful discrimination is "a refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Thus, to demonstrate she was discriminated against by Defendants for

denying the reasonable accommodation requested by Elevated Sober Living, Ms. Jones must

show that (1) there are disabled persons at issue, (2) Plaintiffs requested a reasonable

accommodation, which Defendant refused, (3) the requested accommodation relates to a

dwelling, (4) the requested accommodation is reasonable, (5) the requested accommodation is

necessary, and (6) the requested accommodation was denied. *See, e.g.*, *Oxford House, Inc. v.*

*Browning*, 266 F. Supp. 3d 896, 910 (M.D. La. 2017).

Evaluating accommodation requests are "highly fact-specific, requiring case-by-case

determination." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d

1245. 1254 (D. Haw. 2003), *aff'd sub nom. Dubois v. Ass'n of Apartment Owners of 2987*

*Kalakaua*, 453 F.3d 1175 (9th Cir. 2006) (citation omitted). "The question of whether an

accommodation is reasonable [and necessary] is a question of fact 'determined by a close

examination of the particular circumstances." *Chavez v. Aber*, 122 F. Supp. 3d 581, 596 (W.D.

Tex. 2015) (citing  *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F.Supp.2d 800, 810

(N.D.Ill.2011) (quoting *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir.1996)).

Further, group homes, including sober living homes, have a long history of being able to

request and have granted reasonable accommodations of local land use regulations from both

public and private zoning scheme. *See Dr. Gertrude A. Barber Center, Inc. v. Peters Township*,

273 F. Supp. 2d 643, 651 (W.D. Pa. 2003) ("In case after case, courts have concluded that the

FHA has been violated where municipalities have attempted to prevent or restrict persons with

disabilities from living in the single-family zoned homes of their choice, even when the number

of residents exceeds the number of unrelated people permitted to live together under the

applicable zoning ordinances."); *see also Harmony Haus Westlake, LLC v. Parkstone Prop.*

*Owners Ass'n, Inc.*, 440 F. Supp. 3d 654, 664 (W.D. Tex. 2020); *Oxford House, Inc. v. City of*

*Baton Rouge, La.*, 932 F. Supp. 2d 683, 686 (M.D. La. 2013); *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 652-53 (W.D. Pa. 2003); *ReMed Recovery Care Centers v. Twp. of Willistown, Chester Cty., Pa.*, 36 F. Supp. 2d 676, 687 (E.D. Pa. 1999); *St. Paul Sober Living, LLC v. Bd. of Cty. Comm'rs, Garfield Cty., Colo.*, No. 11-CV-00303-RBJ-MEH, 2013 WL 5303484, at \*1 (D. Colo. Sept. 17, 2013).

Finally, reasonable accommodation claims under the FHAA and ADA are analyzed in the same way. *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 907 (M.D. La. 2017).

### D. Ms. Jones Established That Defendants Discriminated Against Her and Her Co-Plaintiffs When They Denied Elevated Women's Sober Living Accommodation Request and Thus Violated 42 U.S.C. 3604(f)(3)(B)

#### 1. *Ms. Jones and her fellow residents are persons with disabilities under both the Fair Housing Act and Title II of the ADA*

Ms. Jones and her fellow housemates are persons with disabilities as covered by the FHA and ADA and therefore there are persons with disabilities at issue in this case. *Browning*, 266 F. Supp. 3d at 910 (setting forth elements of an accommodation claim).

a) *Ms. Jones*

Ms. Jones is a qualified person with a handicap/disability[2] under 42 U.S.C. § 3602(h). The Fair Housing Act defines a "handicap" as "(1) a physical or mental impairment which substantially limits one or more of [the] person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). "Major life activities" include, among other things, "caring for oneself, . . . eating, sleeping,

---

[2] As recognized by the Joint Statement by U.S. Department of Justice and U.S. Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act, May 17, 2004, "[t]he Act uses the term "handicap" instead of the term "disability." For the purposes of this brief, Ms. Jones will refer to disability as it is the more sensibly appropriate term to identify individuals with disabilities versus the outdated term "handicap." *Available at* https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

. . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). *See also Browning*, 266 F. Supp. 3d at 910. Major life activities also include maintaining stable social relationships and adequate finances. *See, e.g.*, *Al Gashiyah v. Wis. Parole Comm'n*, 2007 U.S. App. LEXIS 18034, *8 (7th Cir. July 26, 2007) (stable social relationships); *Browning*, 266 F. Supp. 3d at 911 (adequate finances).

Defendants already stipulated that Ms. Jones is a person in recovery from substance abuse. ECF No. 75, Exhibit A, ¶ 25; *see, e.g.*, *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1346-7 (S.D. Fla. 2007) ("The position that recovering individuals can be considered disabled is supported both in case law and legislative history.") (citing numerous cases); *Oxford House, Inc.*, 932 F. Supp. 2d at 689 (residents of sober living residence disabled because of difficulty living in other arrangements due to threat of relapse). The inquiry of whether Ms. Jones is a person with a disability for purposes of the Fair Housing Act and Title II of the ADA does not stop there. The following major life activities for Ms. Jones are impacted by her substance abuse: work, socialize and maintain relationships, self-care, and sleep. *See* Ms. Jones's Bench Trial Testimony, February 8, 2021. Ms. Jones is substantially limited with her major life activities because she cannot live on her own as if she did live on her own, her major life activities would once again become negatively impacted. *Id.*; *see also Harmony Haus Westlake, LLC, v. Parkstone Property Homeowners' Association, Inc.*, 440 F.Supp.3d 654, 663 (W.D. Tex. 2020) (recognizing inability to live alone constituted a substantial limitation on major life activities of residents to self-care, work, eat, maintain relationships, and thus were persons with disabilities under 42 U.S.C. § 3602(h)) (citations omitted). Ms. Jones has also not actively used an illegal substance since 2011, and thus the exclusionary exception for active illegal substance

abusers is inapplicable to her. *See* Ms. Jones's Bench Trial Testimony of February 8, 2021; *see also Harmony Haus Westlake, LLC,* 440 F.Supp.3d at 663 (citing 42 U.S.C. § 3602(h)).

  b) *Women's Elevated Sober Living is a Sober Living Home that Houses Persons Who Qualify Under 42 U.S.C. § 3602(h)*

Ms. Jones's sober living home provider, Women's Elevated Sober Living, houses persons with disabilities who qualify under 42 U.S.C. § 3602(h) at its Stoney Point Residence. The current residents are themselves disabled and require the requested reasonable accommodation. Dr. Majer, Ms. Constance Swanston, and Ms. Jones all testified towards the status of the residents as being in recovery from substance abuse, their major life activities limited by such abuse, and those major life activities substantially limited due to the fact that the residents cannot live alone. Further, past residents also provided testimony at the bench trial of their limitations on their major life activities and inability to live alone, just as Ms. Jones. *See, e.g.*, *Browning*, 266 F. Supp. 3d at 910 (explaining that the plaintiffs could meet this element by showing that "the residents of Oxford House West Hale are 'handicapped' or 'disabled,' as the statutes define those terms").

Further, At the Stoney Point Residence, Women's Elevated Sober Living serves a class of persons who would reside there if the reasonable accommodation were granted. For example, Elevated Sober Living's application and admission criteria for present and future residents was admitted into the record. *See* Pltfs. Admitted Exhibit 26. *See, e.g.*, *Kearins v. Village Creek of Eldorado Home Owners' Association, Inc.*, 2019 WL 2266635, *4 (E.D. Tex. March 5, 2019) (holding that, where the issue involves "the handicapped status of the residents a facility aims to serve . . . the criteria for admission to the facility at issue is an important factor.") (citing cases).

Moreover, Plaintiffs as a whole need only demonstrate that a representative sample of the residents are disabled to invoke the protections of the Fair Housing Act. *See, e.g.*, *Browning*,

266 F. Supp. 3d at 901, 911 (noting that, "[i]n order to reside in an Oxford House, an individual must be in recovery from alcoholism or drug addiction" and holding that "[b]ecause of the nature of the necessary criteria that an applicant must meet in order to reside at Oxford House West Hale, all of the residents are recovering from alcoholism or drug addiction, and the experiences of Daniel and Catanese during the times of their addictions therefore are representative of the residential experiences generally"); *United States v. Audubon*, 797 F. Supp. 353, 358-9 (D.N.J. 1991) (finding that the residents of a sober living residence were disabled on the basis of the testimony of two former residents and an expert who discussed the inevitable possibility of relapse). Further, Plaintiffs need not demonstrate even inferentially that all of the residents of the Stoney Point Residence are themselves disabled. The Fair Housing Act remains applicable even if a subset of those residents are disabled and require the requested reasonable accommodation. Nothing in the statute diminishes its protections for residents with disabilities in the event that some hypothetical resident, current or future, turned out not to have a disability. In any event, the Court can infer the disabilities of the residents of the Stoney Point Residence, generally from the fact that they are all recovering from substance use disorder and from the experiences of four of those residents, including one who is currently the house manager of the home.

### 2. *There is no dispute that an accommodation request was both requested of Defendants; that such accommodation request was denied; and that the Stoney Point Residence is a dwelling*

The parties stipulated that Women's Elevated Sober Living requested an accommodation. *See* ECF No. 75, Ex. A, ¶ 28-30. *See Browning*, 266 F. Supp. 3d at 910 (an accommodation must be requested). The parties also stipulated that Women' Elevated Sober Living's requested accommodation was actually denied by Defendants. *See* ECF No. 75, Ex. A, ¶ 31-32. *See Browning*, 266 F. Supp. 3d at 910 (an accommodation must be denied). Defendants also do not

make challenge that the Stoney Point Residence is a dwelling as defined under 42 U.S.C.

§ 3602(b). *See Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1213-6 (11th Cir. 2008)

(holding that sober living homes are dwellings). Therefore, these elements of an accommodation

request under 42 U.S.C. § 3604(f)(3)(B) are established without any dispute. *Browning*, 266 F.

Supp. 3d at 910 (setting forth elements of an accommodation claim).

### 3.   *The requested accommodation is reasonable in this case*

#### a)   *Standards for reasonableness*

An accommodation is reasonable under the Fair Housing Act "unless it imposes an undue

financial and administrative burden on the defendant or requires a fundamental alteration in the

nature of the program at issue . . . ." *United States v. City of Jackson*, 318 F. Supp. 2d 395, 412

(S.D. Miss. 2002). *See also, e.g.*, *Browning*, 266 F. Supp. 3d at 912 ("An accommodation is

reasonable if it does not cause any undue hardship or fiscal or administrative burdens on the

governmental entity or does not undermine the basic purpose that the challenged regulation seeks

to achieve.") (citations and internal quotation marks and brackets omitted). A court in evaluating

a defendant's claims of undue hardship or fundamental alteration must consider whether "the

plaintiff's requested accommodation would eliminate an 'essential aspect' of the defendant's

policy or program or simply inconvenience it, keeping in mind the basic purpose of the policy or

program at issue, and weighing the benefits to the plaintiff against the burdens on the defendant."

*Schaw v. Habitat for Humanity of Citrus County, Inc.,* 938 F.3d 1259, 1267 (11th Cir. 2019).

"The question of whether an accommodation is reasonable is a question of fact determined by a

close examination of the particular circumstances." *Harmony Haus Westlake, LLC v. Parkstone

Prop. Owners Ass'n, Inc.*, 440 F. Supp. 3d 654, 667 (W.D. Tex. 2020) (citing *Chavez v. Aber*,

122 F. Supp. 3d 581, 596 (W.D. Tex. 2015)).

b)  *The requested accommodation was and is reasonable*

Plaintiffs' requested accommodation is reasonable as it would not cause any financial or administrative burden to Defendants, nor has it to date or will it in the future. *Browning*, 266 F. Supp. 3d at 910 (setting forth elements of an accommodation claim). The requested accommodation also does not fundamentally alter Defendants' zoning scheme or undermine its basic purpose. *Id*.

As an initial matter, Defendants have been aware of the Stoney Point Residence being used as a sober living home with 15 individuals since at least May 2019, yet at no time have Defendants sought a temporary restraining order or preliminary injunction to enforce their zoning code after the Board of Adjustment's decision denied the accommodation request and stated the zoning ordinance of only 8 persons with disabilities could reside in the Stoney Point Residence. If the Stoney Point Residence constituted an undue financial or administrative burden or fundamentally altered Defendants' zoning programs or basic purpose, why did Defendants not seek an injunction for irreparable harm to stop the operation of the home, especially given where Defendants do not seek damages in monetary damages as part of a counter-claim against Plaintiffs. This lack of inaction by Defendants for nearly two years to seek injunctive relief to protect its zoning structure demonstrates not only a lack of commitment in maintaining and enforcing any alleged purpose Defendants advanced in this matter concerning their zoning scheme, but also undercuts any purported purpose the zoning scheme for Defendants.

Plaintiffs' requested accommodation permits Plaintiffs to use the Stoney Point Residence as a residential home in a manner entirely consistent with single-family residential use, and thus does not undermine a basic purpose of Defendants' zoning scheme. Ms. Jones and her fellow residents live as the functional equivalent of a family. *See* Ms. Jones's Bench Trial Testimony of

February 8, 2021. The only difference being that they are unrelated. While unrelated, Ms. Jones and her housemates share the common bond and relations of being in recovery, wanting to remain sober, while being unable to live independently. *See* Ms. Jones's Bench Trial Testimony of February 8, 2021. They care for and rely on each other for emotional and recovery support, just as a biological family would. *Id*. Thus, the residents of the Stoney Point Home share bonds similar to those shared by family members. *Id*. The arrangement is consistent with a single-family neighborhood. *Id.*; *see, e.g.*, *Browning*, 266 F. Supp. 3d at 913-16.

Additionally, from outside aesthetic appearances, no one could tell that fifteen unrelated women reside in at the Stoney Point Residence. *See* Ms. Jones's Bench Trial Testimony of February 8, 2021. Defendants did not become aware of the sober living home occupancy issue until a complaint was made by someone who did not even live in the neighborhood. Women's Elevated Sober Living operated for six (6) months, from November 2018 to April 2019, before Defendants even knew the sober living home arrangement existed. Further, the sober living home is large, with 7 bedrooms and 5890 square footage, more than adequate to house fifteen women. The home contains an enlarged driveway for all of the residents to park their cars, if they have one. Conversely, other neighbors cause street congestion with their own parking and guests.

There is also no evidence of Defendants using resources in time, staff, and money in trying to deal with any alleged street or parking congestion on the street and neighborhood where the Stoney Point Residence exists. *See Valencia v. City of Springfield*, 883 F.3d 959, 970 (7th Cir. 2018) ("The financial and administrative burden on the City is negligible. According to the evidence before the Court, neither police nor emergency services have been called to the Noble home in the three years since it opened. To the contrary, at the City Council hearing on

plaintiffs' CPU request, an alderman acknowledged that there have been "no issues" with the home. Further, the district court found that, because IAG made no requests for City services (such as street signs or traffic signals), "[i]t would cost the City no money to allow A.D. and the other residents to remain in the Noble home."). The record contains no evidence of Defendants' emergency services, such as ambulances, needing to respond to an issue at the sober living home. *Id*. There is also no evidence of Defendants making requests for City services, such as additional street signs or traffic signals, or to public works for excessive trash maintenance specifically linked to the Stoney Point Residence. *Id*.

Further, Ms. Jones and her fellow residents are responsible, keep the house in good order, and ensure that there are no outward aesthetic issues such as trash, etc. *See* Ms. Jones's Bench Trial Testimony of February 8, 2021. It would cost the City no money to allow Ms. Jones and the other residents to remain in the sober living home. There are many egresses for the house in case of an emergency. There is also very little to almost no tangible evidence of significant impact or studies on home values for the neighborhood decreasing because of the Stoney Point Residence's existence since November 2018. *See Valencia*, 883 F.3d at 970.

Moreover, the fact that Women's Elevated Sober Living operates a for-profit enterprise does not change its use into a non-residential use. Courts, in particular the Fifth Circuit Court of Appeals for the United States, have long recognized that the Fair Housing Act protects for-profit group home residential arrangements for the disabled. *See, e.g.*, *Groome Resources*, 234 F.3d at 202; *Avalon Residential Care Homes, Inc. v. City of Dallas*, 130 F. Supp. 2d 833, 841 (N.D. Tex. 2000) (holding that both for-profit and not-for-profit residential arrangements qualified for group home protections).

### 4. *Plaintiffs' Requested Accommodation Is Necessary.*

a) *Standards for Necessity*

To show that their requested accommodation is necessary, Plaintiffs must demonstrate that it "provides [a] direct amelioration of a disability's effect." *Browning*, 266 F. Supp. 3d at 916 (citations and internal quotation marks omitted); *see also, e.g.*, *Valencia*, 883 F.3d at 968 ("Whether the requested accommodation is necessary requires a showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.") (citations and internal quotation marks omitted).  In the sober living home context, accommodation is necessary if it contributes to the recovery of the residents from substance use disorder. *See, e.g.*, *Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1226-7 (11th Cir. 2008) (determining that the issue of necessity involved whether or not a stay in the halfway houses under consideration contributed to the recovery of the residents from Substance Use Disorder); *see also, e.g.*, *Browning*, 266 F. Supp. 3d at 916 (holding that the accommodation of allowing an Oxford House to operate was necessary because "empirical evidence establishes the effectiveness of the Oxford House model at preventing an individual's relapse into alcohol and drug use" and because, therefore, "residency in an Oxford House directly ameliorates the effects of alcoholism and drug addiction").

Under 42 U.S.C. § 3604(f)(3)(B), both necessity and equal opportunity are intrinsically linked together. *Harmony Haus Westlake, LLC, v. Parkstone Property Owners Ass'n, Inc.*, 440 F.Supp. 3d 654, 665 (W.D. Tex. 2020). Plaintiffs, such as in this case, "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Harmony Haus*, 440 F.Supp. 3d at 665 (citation omitted). Moreover, "'the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively

enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" *Id.* (citing and quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)).

"Amelioration" can mean providing therapeutic value, *Harmony Haus*, 440 F.Supp. 3d at 665 (citation omitted). Amelioration and necessity can also mean that the accommodation helps mitigate the collateral effects of the individual's disabilities without physically or medically improving the actual underlining disability. *Geibler v. M & B Associates, Inc.*, 343 F.3d 1143, 1149 (9th Cir. 2003) (where the court held that modifying a landlord's policy of no-cosigner as an accommodation because the individual did not have three-times the income to qualify for renting the apartment and needed a co-signer or guarantor; the requested accommodation did not medically enhance plaintiff's underlining HIV diagnosis, but ameliorated the collateral impacts of plaintiff's disability related to his inability to work due to his disability); *Edwards v. Salter Properties and Salter Construction, Inc.*, 739 Fed. App'x 357, 357-358 (8th Cir. 2018) ("We conclude that allowing a co-signer or prepaying the full lease term were not substitutes for accommodating plaintiffs, who had sufficient income to rent the apartment, because those options did not level the playing field but instead posed an additional burden on the disabled applicant [. . . .] Although defendants argue that plaintiffs did not need accommodation because they could have submitted tax returns to show adequate earnings, the record below shows that Edwards was not required to file federal tax returns in 2014 due in part to the large portion of her income that came from SSDI.") (citing *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012) (noting that accommodations are necessary under the FHAA if they are required to create "a level playing field in housing for the disabled"); *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc) (stating that the FHAA

"requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market")).

The "equal opportunity element directly relates to whether the accommodation is necessary, requiring equal treatment between the disabled and the non-disabled." *U.S. v. City of Irmo, S.C.*, No. 3:18-cv-03106, 2020 WL 2322714, *6 (D.S.C. May 11, 2020) (citing *Bryant Woods Inn v. Howard City, Md.,* 124 F.3d 597, 605 (4th Cir. 1997); *and Oxford House, Inc. v. City of Raleigh,* No. 5:98–CV–113–BO, 1999 WL 1940013, at *4 (E.D.N.C. Jan. 1999) ("As the Fourth Circuit has stated, federal fair housing laws require equal opportunities in housing, not a superior advantage.")). "[T]he inquiry is a causal one that "examines whether the requested accommodation ... would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Howard v. HMK Holding, LLC.*, -- F.3d. --, No. 18-55923, 2021 WL 686277, *4 (9th Cir. February 23, 2021) (citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015 (citation omitted)). "The plaintiff's disability must cause the need for an accommodation in the "rules, policies, practices, or services." *Howard*, 2021 WL 686277, *4. "In other words, absent an accommodation, the plaintiff's disability must cause the plaintiffs to lose an equal opportunity to use and enjoy a dwelling." *Id*.

As with reasonableness, whether an accommodation is necessary to provide an equal opportunity is a highly fact specific inquiry. *Loren v. Sasser,* 309 F.3d 1296, 1302 (11th Cir. 2002) ("Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination.") (citation and internal quotations omitted); *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 703 (M.D. La. 2013) (The highly fact-specific determination of this case shows that the City should have granted the reasonable accommodation request, regardless of what the City has done in the past."). As accommodation

requests are to be evaluated on a case-by-case basis, what may work best for one sober living home environment and its particular residents in recovery may not for another group of residents. Each case is extremely fact intensive. *See Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, 440 F. Supp. 3d 654, 664 (W.D. Tex. 2020) (12 persons in recovery substance abuse was necessary); *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 652-53 (W.D. Pa. 2003) (4 residents was necessary); *ReMed Recovery Care Centers v. Twp. of Willistown, Chester Cty., Pa.*, 36 F. Supp. 2d 676, 687 (E.D. Pa. 1999) (5 to 8 residents was necessary); *St. Paul Sober Living, LLC v. Bd. of Cty. Comm'rs, Garfield Cty., Colo.*, No. 11-CV-00303-RBJ-MEH, 2013 WL 5303484, at *1 (D. Colo. Sept. 17, 2013) (10 residents was necessary).

> b)  *The issue of necessity in this case and closure of Stoney Point Residence*

As mentioned above, the issue in this case is whether fifteen (15) or eight (8) residents in recovery from substance abuse is reasonable and necessary at the Stoney Point Residence in order for those residents in recovery. Those are the only two numbers the Court can and must consider. If the home is not permitted 15 women in recovery, it will close down. *See* Bench Trial Testimony of Constance Swanston February 8, 2021. Plaintiffs established necessity and a causal link for that necessity for an equal opportunity to use and enjoy their dwelling in this matter for 15 women to reside in recovery at the Stoney Point Residence.

> c)  *Dr. Majer's expert opinion supports the need for necessity of 15 women*

Dr. Majer's expert opinion establishes the necessity of the requested accommodation and demonstrates the therapeutic value and amelioration that Women's Elevated promotes and achieves that amelioration at the Stoney Point Residence. Dr. Majer has 30 years' experience working with persons recovering from substance use disorders in the capacity of a clinician and

researcher and is highly familiar with the recovery home model of treatment. Additionally, Dr. Majer personally visited the Stoney Point Residence to view the home and more importantly interview the residents about their experiences.

Dr. Majer's opinion is that the minimum number of recovering alcoholics and addicts who should live in the Stoney Point Residence to have effective therapeutic results and value is fifteen (15) persons. Dr. Majer investigated the benefits of having a larger group of recovering addicts living together during his decades of experience. Larger groups work better in his learned opinion. Having more women at the Stoney Point Residence makes it more likely new residents will find someone with whom they have common experiences. Having less women makes it more likely that residents will be isolated or left without support. Having more women make it less likely that departures will leave the house without enough women to meet the needs of the residents for accountability.

This does not mean there has to be 15 residents every single day or every single week for the sober living experience to be beneficial. Temporary drops in number of residents is not the same thing as lowering the number of residents on a permanent basis. Further, the lack of a roommate for a short period of time necessarily interfere with someone's recovery. Ms. Jones, the house manager, has always had her own bedroom, and in this circumstance, it is appropriate given based on progress on recovery and need for privacy in the case of a house manager who has records of all the residents.

The Oxford House style sober living is not for everyone or the one model that meets the needs of all recovery addicts and alcoholics. Given the Stoney Point Residence, a person in recovery cannot receive all the benefits of sober living with just 8 residents in a house like the

one on Stoney Point. The size of the house is too large for 8 people to create the needed therapeutic milieu. Further, there is not one size fits all for sober living.

Dr. Majer studied Dr. Gilliland's various reports and affidavits in the case. Dr. Majer disagreed with Dr. Gilliland assertion that that sober living is not necessary for those recovering from a substance use disorder. Further, Dr. Majer stressed that the size of house must be taken into account when evaluating the minimum number of residents, something Dr. Gilliland did not do.

       d) *Present and past resident testimony supports the need for 15 women*

Present and former resident testimony produced at the bench trial further buttress Dr. Majer's opinion and Plaintiffs' burden that the requested accommodation is necessary for the residents of the Stoney Point Residence. Ms. Jones receives therapeutic value and amelioration of her substance abuse disorder from residing at Elevated Sober Living home. *See* Ms. Jones's Bench Trial Testimony of February 8, 2021. There is increased accountability with the number of residents. *Id*. The large number of 15 residents minimizes opportunities for isolation. *Id*. With the number of 15 people in the home, there is always someone present for one resident to listen to another resident if that resident is experiencing a trying time that would normally, while living alone, likely lead to a relapse. While Ms. Jones has her own bedroom, both Dr. Majer and even Defendants' alleged expert agreed that this was adequate given Ms. Jones is the house manager and has to keep confidential information. *Id*. Ms. Jones keeps her door open for other residents to come and talk and considers herself the "Mom" of the house as the house manager. *Id*. Additionally, Ms. Jones and her fellow residents support each other by resident meetings and eat together like a family. *Id*. Elevated implemented house rules that help keep the residents accountable to not only Elevated, but also each other. These include curfews, mandatory

substance and alcohol testing. The group supportive environment provided by Elevated is unique for Ms. Jones compared to other recovery homes she resided, such as Oxford House, makes the Stoney Point Residence an environment she not only wants, but needs to remain. *Id*. Elevated's selects residents that are dedicated to their sobriety, which works best for Ms. Jones to remain sober and in recovery.

Further, the residents at the Stoney Point Residence formed and continue to form a supportive environment. Formalized activities, such as weekly house meetings, meetings with house manager, assigned chores, attending Alcoholics Anonymous ("AA") meetings, within Women's Elevated Sober Living's model and home, provides residents a stable and structured living environment that is instrumental in developing personal responsibility. Accountability by house manager to residents and between the residents themselves further improves amelioration of the residents' disabilities. This is through routine urine drug screens and alcohol breathalyzer samples, adhering to the curfew schedule, following up on assigned house chores, and attending AA meetings.

e) *There is a causal link between the necessity of 15 women and an equal opportunity to use and enjoy their dwelling*

"The plaintiff's disability must cause the need for an accommodation in the "rules, policies, practices, or services." *Howard*, 2021 WL 686277, *4. "In other words, absent an accommodation, the plaintiff's disability must cause the plaintiffs to lose an equal opportunity to use and enjoy a dwelling." *Id*. Ms. Jones, as well as her fellow housemates, are persons with disabilities, whose disabilities cause the need for a group environment at the Stoney Point Residence as they cannot live alone due to their substance use disorders. This links the necessity with the need for an equal opportunity to use and enjoy a dwelling in a residentially zoned area.

Further, Defendants' alleged expert and its own reliance on *Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City*, 685 F.3d 917 (10th Cir. 2012) ("*Cinnamon Hills*") is misguided and instead assists Plaintiffs' case in establishing an equal opportunity to use and enjoy the Stoney Point Residence that is also necessary.

As the *Cinnamon Hills* Court recognizes:

> And this makes clear that the object of the statute's necessity requirement is a level playing field in housing for the disabled. Put simply, the statute requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without.

*Cinnamon Hills*, 685 F,3d at 923 (citing *Bryant Woods Inn, Inc.*, 124 F.3d at 605; *Schwarz*, 544 F.3d at 1227).

Further, the *Cinnamon Hills* Court expounds:

> Of course, in some sense *all* reasonable accommodations treat the disabled not just equally but preferentially. Think of the blind woman who obtains an exemption from a "no pets" policy for her seeing eye dog, or the paraplegic granted special permission to live on a first floor apartment because he cannot climb the stairs. But without an accommodation, those individuals cannot take advantage of the opportunity (available to those without disabilities) to live in those housing facilities. And they cannot *because* of conditions created by their disabilities. These examples show that under the FHA it is sometimes necessary to dispense with formal equality of treatment in order to advance a more substantial equality of opportunity. And that is precisely the point of the reasonable accommodation mandate: to require changes in otherwise neutral policies that preclude the disabled from obtaining the *same ... opportunities* that those without disabilities automatically enjoy.

> But while the FHA requires accommodations necessary to ensure the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities. The law requires accommodations overcoming barriers, imposed by the disability, that prevent the disabled from obtaining a housing opportunity others can access. But when there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense. So, for example, a city need not allow the construction of a group home for the disabled in a commercial area where nobody, disabled or otherwise, is allowed to live.

*Cinnamon Hills*, 685 F.3d at 923 (citations and internal quotations omitted).

Plaintiffs' accommodations meet these very standards followed in *Cinnamon Hills*. Plaintiffs do not seek an accommodation where "there is no comparable housing opportunity for non-disable people," such as creating a group home in in a commercially zoned area. *See Cinnamon Hills*, 685 F.3d at 923 (citations omitted). Elevated's accommodation request at its core is no different than the request of a blind person who needs an accommodation for their guide dog. For example, if a person with a visual impairment resides in an apartment with a "no pets" policy, the analogy from the *Cinnamon Hills* Court, the person with that visual impairment may not need an accommodation of the no pets policy if they needed and used a cane instead, whereas another individual with a visual impairment may require a guide dog and cannot use a cane, and thus would need an accommodation of the no pets policy. Defendant's expert suggested that not all recovering addicts need sober living, but that is not different than saying not all blind individuals need a guide dog. It is what the individual seeking an accommodation needs that matters, not what some other different individual needs. These residents in this house need 15 residents for their recovery; what other individuals in other houses may need is not relevant. *See Harmony Haus Westlake, LLC.*, 440 F. Supp. 3d at 664 (12 persons in recovery substance abuse was necessary); *Dr. Gertrude A. Barber Ctr., Inc.,* 273 F. Supp. 2d at 652-53 (4 residents was necessary); *ReMed Recovery Care Centers*, 36 F. Supp. 2d at 687 (5 to 8 residents was necessary); *St. Paul Sober Living, LLC*, No. 11-CV-00303-RBJ-MEH, 2013 WL 5303484, at *1 (D. Colo. Sept. 17, 2013) (10 residents was necessary).

> f)  *Stoney Point Residence is Ms. Jones's housing of her choice that is necessary for her particular recovery*

The recovery home operated by Elevated is Ms. Jones's housing of her choice that she testified that is necessary for her in order to remain sober. Defendants would rather have Ms. Jones leave the housing of her choice and start anew in another sober living environment, which

is what will happen as Elevated would need to close the Stoney Point Residence for sober living

if the accommodation is not granted. This is no different from Defendants informing Ms. Jones

she should move to another city:

> *Necessity.* But Treasure Island would be required to make that reasonable accommodation *only* if it "may be necessary to afford [Gulf Coast clients an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The district court concluded that Gulf Coast could not satisfy this element because it could operate high-turnover halfway houses in Treasure Island's RFM–30, RFH–50, and CG zones. We reject this rationale because reasonable accommodation analysis asks whether a [disabled] person must be accommodated *in the dwelling of [her] choice*, rather than at another location in the municipality.

*Schwarz*, 544 F.3d at 1225 (alteration and emphasis added to original).

Further, as the U.S. Department of Justice and U.S. Department of Housing and Urban

Development recognize in their Joint Statement on Accommodations Requests Under the Fair

Housing Act ("HUD/DOJ Joint Statement),[3] "providers should be aware that persons with

disabilities typically have the most accurate knowledge about the functional limitations posed by

their disability, and an individual is not obligated to accept an alternative accommodation

suggested by the provider if she believes it will not meet her needs and her preferred

accommodation is reasonable." *Kuhn by and through Kuhn v. McNary Estates Homeowners

Association, Inc.*, 228 F.Supp. 3d 1142, 1149 (D. Ore. 2017) (citing HUD/DOJ Joint Statement

quoted above).

g)  *Defendant's alleged expert should be given no weight*

Unlike Dr. Majer, Defendants' alleged expert, who was retained for the sole purpose of

evaluating the necessity of Plaintiffs' accommodation, admitted that he never visited the Stoney

Point Residence nor interviewed any of the residents. *See* Bench Trial Testimony of Dr.

---

[3] https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

Gilliland. Leaving aside the issue of admissibility,[4] the weight given to Defendants' alleged expert should be diminished. Accommodations must be judged on a case-by-case analysis, and so it is critical for any proffered expert to see the home in-person and interview the residents personally, rather than relying on Defendants counsel to gather information via deposition and cross-examination. *See Chavez*, 122 F. Supp. 3d at 596 ("The question of whether an accommodation is reasonable [and necessary] is a question of fact 'determined by a close examination of the particular circumstances.") (citations omitted); *Prindable*, 304 F. Supp. 2d at 1254 (Evaluating accommodation requests are "highly fact-specific, requiring case-by-case determination.") (citation omitted).

### III.   CONCLUSION

In light of the foregoing, Ms. Jones respectfully request that this Court enjoin Defendants from refusing to grant Elevated's request for a reasonable and necessary accommodation of allowing fifteen residents to live in the Stoney Point Residence and also award Ms. Jones reasonable and necessary attorney fees and costs.

DATED:         February 26, 2021

Respectfully submitted,

*/s/ Christopher P. McGreal*
CHRISTOPHER P. McGREAL
TX State Bar No. 24051774
DISABILITY RIGHTS TEXAS
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247
Phone: (214) 845-4056
Fax: (214) 630-3472
cmcgreal@drtx.org

---

[4] Ms. Jones defers to her co-Plaintiffs arguments both previously made by motion, at bench trial, and in any subsequent briefing regarding the admissibility and qualifications of Defendant's alleged expert.

RACHEL COHEN-MILLER
Texas State Bar No. 24064301
DISABILITY RIGHTS TEXAS
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247-4932
Phone: (214) 845-4069
Fax: (214) 630-3472
rmiller@drtx.org

*Attorneys for Plaintiff*
*Shannon Jones*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of February, 2021, a true and correct copy of the

foregoing document, in electronic form, was sent to the person listed below in accordance with the

Local Rules for the U.S. District Court for the Eastern District of Texas via the CM/ECF System:

Charles J. Crawford
Lucas Henry
1700 Redbud Blvd., Ste. 300
McKinney, Texas 75069
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

  */s/ Christopher McGreal*
Christopher McGreal