# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CONSTANCE SWANSTON, WOMEN'S ELEVATED SOBER LIVING LLC, and SHANNON JONES, | § § § § | |
| *Plaintiffs*, | § § | |
| | § | Civil Action No.  4:19-cv-412 |
| v. | § | Judge Mazzant |
| | § | |
| CITY OF PLANO, TEXAS, | § § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court conducted a bench trial in the above-styled matter on February 8–9, 2021. Following the bench trial, the Court issued its Memorandum Opinion and Findings of Fact and Conclusions of Law as to Defendant, City of Plano, Texas' (the "City") liability. The Court found the City liable for failing to accommodate Plaintiffs Constance Swanston, Women's Elevated Sober Living LLC, and Shannon Jones under the Fair Housing Act ("FHA") and Americans With Disabilities Act ("ADA"). The Court entered a permanent injunction prohibiting Defendant from (1) restricting the occupancy of the sober living home located at 7312 Stoney Point Drive in Plano, Texas, to less than fifteen residents as long as the property operates as an FHA- and ADA-compliant sober living home; (2) enforcing any other restriction on the use of the property as a sober living home that violates the FHA or ADA; and (3) retaliating against Plaintiffs for having pursued housing-discrimination complaints under the FHA and ADA.

The Court deferred awarding damages until both parties had the opportunity to brief the legal issues. The Court ordered the parties to submit briefing on the following:

- Are Constance Swanston ("Ms. Swanston") or Women's Elevated Sober Living LLC ("WESL") entitled to compensatory damages as a result of the City's failure to reasonably accommodate under the FHA or ADA?

    o If so, in what amount?

- If the Court awards Ms. Swanston or WESL compensatory damages for the City's failure to reasonably accommodate under the FHA, are Ms. Swanston or WESL entitled to punitive damages as a result of The City's failure to reasonably accommodate under the FHA?

    o If so, in what amount?

The parties submitted briefing in September and October 2021 (Dkts. #124–27). In their reply brief, Plaintiffs requested leave to reopen this case. The Court was unsure as to whether the Plaintiffs wanted to put on additional evidence or discuss the legal issues at a hearing. Accordingly, the Court held a hearing on July 1, 2022 to clarify the issues. Plaintiffs indicated at the hearing that they did not seek to put on additional evidence. Instead, both parties argued the legal aspects of the dispute before the Court. The Court will now assess damages based on the parties' briefing and oral arguments but will first provide a factual background of this case.

## BACKGROUND

Plaintiffs are two individuals and an entity: Ms. Swanston, Shannon Jones ("Ms. Jones"), WESL. WESL operates a sober living home at 7312 Stoney Point Drive (the "Home") in Plano, Texas. Ms. Swanston is the owner of the Home and the primary operator of WESL, and Ms. Jones is a caretaker and resident of the Home. This suit stems from WESL's existence and operations.

Ms. Swanston and her husband, James Kearins, are individuals in recovery from substance use disorders ("SUDs"). Together, they share a personal mission of helping others stay sober and

live functioning lives. One of the primary ways they seek to fulfill this mission is by opening and operating sober living homes. The Home that Plaintiffs operate is 5,890 square feet in size and is located in one of The City's SF-7 zoning districts. With the intention of opening a sober living home in the area, Ms. Swanston purchased the Home from her mother for $467,000. Ms. Swanston borrowed the entire purchase price from her mother under an agreement to repay the sale price over fifteen years at a 5% interest rate. At the same time, she borrowed $20,000 in cash for start-up expenses. The monthly payment from Ms. Swanston to her mother is $4,800, which WESL pays to Ms. Swanston for rent when funds are available.

In November 2018, WESL opened the doors of the Home as a sober living home. Within the Home, WESL offers numerous benefits to its residents other than the general therapeutic atmosphere suitable for individuals in recovery. There are required weekly meetings of Alcoholics Anonymous and Narcotics Anonymous that supplement residents' regular meetings outside the Home. Residents of the Home sign an oath to abide by WESL's resident rules while staying at the Home, which includes remaining entirely sober and consenting to daily drug and alcohol testing. Residents share most things, from chores and free time to physical space, such as bedrooms, bathrooms, the living room, and the kitchen. WESL provides additional services to the Home's residents, such as facilitating transportation, assisting with work and employment opportunities (e.g., resume drafting, interview skill-building), and providing both off-site counseling and access to drug- and alcohol-education groups.

In early 2019, citizens of the City began inquiring as to WESL's operations at the Home. The concerned individuals generally took issue with three things: (1) the operation of a commercial enterprise in a single-family residential zoning district, (2) the number of residents living at the Home, and (3) the presence of "alcoholics" living together in the neighborhood. In March 2019,

3

complainant Kendel Reed ("Reed") contacted the City requesting official action as to WESL and the Home. On March 4, 2019, the City's Director of Neighborhood Services, Lori Schwarz, informed Reed that the City planned to open an investigation into the Home.

The City proceeded to reach out to WESL and, after some back-and-forth communication, informed WESL that the number of residents being housed in the Home exceeded eight (8)—the maximum number of residents allowed in an SF-7 zone by Plano Ordinance No. 2009-6-9 (the "Ordinance"). The Home is considered a "Household Care Facility" under the City's zoning code, which is defined in relevant part as: "A dwelling unit that provides residence and care to not more than eight persons, regardless of legal relationship, who are . . . disabled . . . , living together with no more than two caregivers as a single household."

Soon thereafter, on April 16, 2019, WESL filed a reasonable-accommodation request with the City's Board of Adjustment (the "Board"). On the application, WESL stated the following as the reason for the requested variance: "Use of property as Women's Sober Living with an occupancy of 15 individuals—residents will be disabled addicts in recovery." WESL also attached a declaration to the application briefly summarizing WESL's mission and the disabilities from which residents of the Home suffer, as well as WESL's intake procedure and operations within the Home.

The Board took up WESL's requested accommodation at a public hearing (the "Hearing") held on May 28, 2019. At the meeting, the City's code-compliance officer recommended approval of WESL's request, and the City's property-standards manager stated that, absent the Ordinance, the size of the Home could sleep thirty-four individuals. Additionally, Ms. Swanston and her attorney presented on the request and took questions from the Board. Then came the public comments. Nearly one hundred members of the public attended the Hearing, and police were

4

needed for crowd control. Thirty-three crowd members spoke up to offer their opinions to the Board—all but one urged the Board to deny the request. The speakers generally expressed concern about: the SUDs of WESL's residents; potential uptick in crime due to WESL residents and visitors; traffic and parking arrangements; emergency-vehicle access; trash collection; visual aesthetics; and WESL's alleged violations of municipal law. While not exhaustively listed, some of the more notable comments include the following:

- "These people have not been welcome any place they have gone . . . How many [sober living homes] do we want here? How many are you guys going to . . . allow to move in here?";

- Describing Ms. Swanston and WESL as "real estate developers . . . cloaked under a bunch of do-gooderness";

- "I take my dog for a walk every day. I don't go that way anymore. I take the long way around because there are undesirables there";

- "I think it's a great mistake to . . . give these people . . . any more variances of any kind. They have not proven themselves to be a good neighbor";

- Stating that WESL residents "flick cigarettes" and "yell things" at passersby;

- "[S]ometimes crime can be an issue . . . , so I'm very concerned about both residents and visitors and whether or not I'll still be safe";

- "There's . . . a reason why there's 25 [sober living homes] in Richardson, because the property values are cheaper in there [sic] and it's a lot easier to operate";

- "[W]e don't want a group home in our neighborhood . . . . [W]e don't want a 15-bed sober house in our neighborhood";

- "Before you vote, I just want you to honestly ask yourself, would you want this next to your house?"

After hearing from Ms. Swanston's attorney once more, the Board closed the Hearing and discussed the matter privately. Following brief deliberation, the Board rejected WESL's requested accommodation by a vote of eight to zero. Roughly one week later, Ms. Swanston and WESL filed the complaint that opened this action.

## CONCLUSIONS OF LAW

### I.     Compensatory Damages

The Court previously determined that the FHA and ADA permit awards of compensatory damages when a discriminatory practice has occurred (Dkt. #120 (citing 42 U.S.C. § 3613(c)(1); *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 n.5 (5th Cir. 2017)). As Defendant correctly contends, under the ADA, "[e]ven when plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they may only recover compensatory damages upon a showing of intentional discrimination." *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 318 (5th Cir. 2020) (internal citations omitted). In its Memorandum Opinion and Order on the merits of this case, the Court found that Defendant did not intentionally discriminate against Plaintiffs (Dkt. #120). Under Fifth Circuit precedent regarding the ADA, therefore, compensatory damages are foreclosed.

However, "there are important differences among" the ADA and the FHA. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Courts in this circuit have awarded compensatory damages for discrimination under the FHA with no consideration as to whether such discrimination was intentional. *See, e.g.*, *United States v. Wagner*, 930 F. Supp. 1148, 1152 (N.D. Tex. 1996) (court awarded $7,500 for emotional distress); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 (5th Cir. 1982) (finding district court had erred in not awarding damages for plaintiffs'

6

emotional distress). The availability of compensatory damages under the FHA also comports with the plain text of the statute's damages provisions. The relevant provision provides that "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages." 42 U.S.C. § 3613(c)(1). The passive voice employed in this clause, coupled with the passive nature of the verb "occurred," strongly suggests that the discriminatory housing practice need not have been intentionally or deliberately committed for the court to award compensatory damages. Accordingly, the Court determines it may award compensatory damages under the FHA even if the City's conduct was not intentional or deliberate.

### A.  Mental Anguish

Ms. Swanston contends she is entitled to compensatory damages for mental anguish  "for the treatment she suffered at the hands of the City regardless of her own stoicism in enduring it" (Dkt. #126 at p. 2). Specifically, she argues the City "is liable for emotional distress and humiliation caused by the statements of its citizens during the" Hearing (Dkt. #124 at p. 2). Further, she asserts she "is entitled to substantial compensation for two hours of direct abuse and two years of needless litigation" (Dkt. #124 at p. 6). She claims an award of $300,000 is reasonable for the harm Ms. Swanston experienced.

The City asserts that "in sitting through the legally required [H]earing," Ms. Swanston "faced the same kind of harm that any member of the public experiences when appearing before a public body in a manner that evokes public interest and disagreement" (Dkt. #125 at p. 4). The City further argues that Ms. Swanston presented no evidence at trial of any tangible harm she suffered emotionally. Lastly, the City maintains there is no causal nexus between its conduct and Ms. Swanton's emotional harm, if she suffered any. For these reasons, the City concludes Ms. Swanston is not entitled to damages for her mental anguish.

"[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation[,] . . . personal humiliation, and mental anguish and suffering." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). "[I]t is well established that emotional distress damages may be inferred from the circumstances as well as proved by the testimony." *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). Further, "an award for emotional distress must be preceded by a finding of a sufficient causal connection between the defendant's illegal actions and the plaintiff's injury." *Id.* "Judgments regarding noneconomic damages are notoriously variable." *Forsyth v. City of Dall.*, 91 F.3d 769, 774 (5th Cir. 1996), *cert. denied*, 522 U.S. 816 (1997).

The Court first notes that direct evidence of Ms. Swanston's mental anguish is severely lacking in the record. Ms. Swanston testified that insulting comments made at the Board of Adjustment Hearing were "personally upsetting" to her, "as somebody in recovery" (Dkt. #125 at p. 6). She did not divulge any greater detail than that. Further, neither her husband, nor anyone else corroborated this testimony.

But even with an abundance of evidence regarding her mental anguish, Ms. Swanston could not recover mental anguish damages for harm resulting from the statements made by citizens at the Hearing. She could only recover damages for harm caused by the City in relation to its failure to accommodate Plaintiffs' request for a variance from the occupational zoning limits. Assuming, arguendo, the Court found a sufficient nexus between the City's conduct and the harm Ms. Swanston suffered as a result of the insulting comments, the comments were not related to the City's liability—that is, the comments were not related to the City's failure to accommodate. To be sure, the failure to accommodate did not occur until the Board rejected Plaintiffs' requested

accommodation after hearing the public comments. Although the Court recognizes Ms. Swanston almost certainly experienced distress at the Hearing, she may not recover mental anguish damages for harm that occurred prior to the unlawful conduct.

The Court is left with no evidence to infer that Ms. Swanston suffered harm in the form of mental anguish after the City failed to accommodate Plaintiffs. The Court recognizes that, following the City's failure to accommodate, Ms. Swanston likely agonized over the fate of her business and of the women living in the Home. But there can be no award for mental anguish that accompanies the stressful nature of a lawsuit. The Eastern District of Virginia has explained this eloquently:

> The wisdom of precluding mental anguish damages in this case is confirmed by considering the consequences of a contrary ruling. To permit recovery for mental anguish in this case would necessarily extend recovery for mental anguish to all . . . cases [of this type]. . . . The simple truth is that mental anguish attends all litigation. Any lawyer who has practiced for any substantial time in virtually any area of law will immediately confirm that parties in all of these areas make substantial emotional investments in their causes and suffer mental anguish . . . This is manifestly so in areas of civil litigation involving claims of employment discrimination, wrongful discharge, civil rights violations, handicapped rights violations, labor disputes, worker's compensation and indeed even patent, copyright and corporate disputes.

*Timms v. Rosenblum*, 713 F. Supp. 948, 955 (E.D. Va. 1989), *aff'd*, 900 F.2d 256 (4th Cir. 1990). At bottom, to award mental anguish damages for the stress Ms. Swanston likely experienced while awaiting the resolution of this lawsuit would be a "leap" with broad "ramifications." *Id.* The Court cannot go down such a path.

Because there is no factual evidence or legal support to justify mental anguish damages, the Court finds that no award for mental anguish is appropriate in this case.

**B.  Lost Profits**

Next, Plaintiffs indicate they are entitled to damages for the lost profits they suffered as a

result of the City's discrimination. Specifically, Plaintiffs assert they had viable plans to open a new sober living home each year after opening WESL. Plaintiffs' counsel indicates that Plaintiffs would have received approximately $50,000 a year in profit from each home. With $50,000 multiplied by "the number of new houses and the number of years each new house would have operated through 2024," Plaintiffs conclude they have "proved economic damages in the form of past and future lost profits totaling $1,050,000" (Dkt. #124 at p. 11). Plaintiffs also indicate that $750,000 of this total amount "represents future profits as of the date of this Brief, an amount that is subject to discounting to present value" (Dkt. #124 at p. 11).

Defendants argue that Plaintiffs "offered no evidence at all to support its claim for lost profit damages and, as a result, any damage award would be speculative, uncertain, contingent, and hypothetical" (Dkt. #125 at p. 8). Notably, Defendants further assert that:

> Ms. Swanston herself never provided the $1,050,000 number nor did any such arithmetic at trial—she offered no method for calculating lost profits, and no total value of profits lost. Rather, the $1,050,000 lost profits number is simply a number invented post-trial by counsel, and is not supported by competent lost profits evidence.

(Dkt. #125 at p. 8).

There are few federal cases that discuss lost profits damage awards under the FHA. Of the cases that do, some directly allow recovery for lost profits and others implicitly indicate that lost profit damages are available under the FHA. *See, e.g.*, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (allowing recovery for lost profits in FHA case); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 54 (2d Cir. 2015) (awarding no lost profits but indicating they are available in FHA cases); *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 632 (S.D.N.Y. 2011) (same); *United States v. City of Boca Raton*, No. 06-80879CIV, 2008 WL 686689, at *8 (S.D. Fla. Mar. 13, 2008) ("[I]t appears to be well-established in FHA

cases that courts only award compensatory economic damages for losses that flow from the violation of the FHA"); *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997) (finding nonprofit corporation entitled to damages for delayed capital contributions caused by city's efforts to prevent corporation from providing rental housing to recovering addicts in violation of the FHA). Thus, the Court will assume that lost profits damages are available under the FHA.

That said, the Court cannot award lost profits in this case. "[F]ederal law requires that lost profits be proved to a reasonable certainty." *Darren B. Swain, Inc. v. AT&T Corp.*, No. CIV.A.3:94-CV-1088-D, 1997 WL 222914, at *3 (N.D. Tex. Apr. 28, 1997) (citing *Delta Steamship Lines. Inc. v. Avondale Shipyards Inc.*, 747 F.2d 995, 1000 (5th Cir. 1984)). In the present case, Plaintiffs testified only that they planned to open one new sober living home each year after opening the Home in the City. As the City notes, no witness testified as to calculations, expected profits, expected costs, or anything of the sort. Even in cases where a plaintiff provides testimony to assist the court with calculating the lost profit damages, such calculations must still "meet the standard of proof of reasonable certainty." *Toga Soc., Inc. v. Lee*, No. CIV.A. 03-2981, 2005 WL 1578726, at *5 (E.D. La. June 29, 2005).

While it may "not take elaborate analysis or a formal business plan to open a single sober living home each year," (Dkt. #126 at p. 4), the Court requires proof to a reasonable certainty of the profits that Plaintiffs would have made. Plaintiffs here only testified to their hopes of opening additional sober living facilities in the future. Mere hopes do not satisfy the high standard that federal law requires.

Because there is no factual evidence to support lost profits damages, the Court finds that no award for lost profits is appropriate in this case.

### C. Nominal Damages

An award for nominal damages is available under the FHA. *See, e.g.*, *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 300 (5th Cir. 2000); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 237 (6th Cir. 2003) (holding in FHA case that "plaintiffs' retaliation claims should have been submitted to the jury, which could have awarded nominal damages, at a minimum, upon a finding in their favor"). While Plaintiffs have not shown they are entitled to damages for mental anguish or lost profits, Plaintiffs succeeded on their claim against the City for failure to reasonably accommodate under the FHA. For this reason, Plaintiffs are entitled to nominal damages—even though the extent of their injuries were not proven at trial. *See LeBlanc*, 211 F.3d at 303 ("as a matter of federal common law it is not necessary to prove nominal damages"); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) ("nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury").

Accordingly, the Court will award Plaintiffs nominal damages for their injury in the amount of one (1) dollar.

### D. Punitive Damages

Lastly, Plaintiffs assert the Court should impose punitive damages on the City for its malice or reckless indifference in regard to Plaintiffs' rights under the FHA. Plaintiffs claim the City acted with malice and reckless indifference when it ignored multiple city officials who advised that the accommodation be granted and warned that the denial was illegal. Defendants plainly state that punitive damages cannot be imposed against municipalities unless expressly authorized by statute.[1]

---

[1] In its August 27, 2021 Memorandum Opinion and Order (Dkt. #120), the Court initially indicated it would not reach the question of punitive damages if it did not award compensatory damages. Even though the Court will not award

The Fair Housing Act provides that "if [a] court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages." 42 U.S.C. § 3613(c). "The general rule is that punitive damages may be imposed only if the defendant has acted willfully and with gross disregard for the plaintiff's rights." *Gore*, 563 F.2d at 164. And, typically, "no punitive damages are allowed unless expressly authorized by statute." *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 129  (2003) (internal quotation marks omitted). Accordingly, "to overcome municipal immunity from punitive damages, Congress must clearly express its intention." *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015).

Federal courts are split as to whether the FHA authorizes punitive damages against municipalities. *Compare Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1158 (C.D. Cal. 2001) ("Congress must expressly authorize awards of punitive damages against municipalities. The FHA's general provision regarding the availability of punitive damages is simply not sufficient"), *with Rehab. Support Serv., Inc. v. City of Albany*, 2015 WL 4067066 (N.D.N.Y. 2015) (denying defendant city's motion to dismiss plaintiff's claim for punitive damages, finding that punitive damages are specifically authorized under the FHA).

The City cites two Fifth Circuit cases in support of its position that the FHA does not allow for punitive damages against municipalities. Neither case is instructive in this context. In *Gil Ramirez*, the Fifth Circuit held that a school district could not be liable under RICO because RICO damages are automatically trebled by statute. 786 F.3d 412–13. Because the Supreme Court has characterized RICO treble damages as "remedial," the school district could only be liable if the RICO statute expressly provided municipal liability. *Id.* at 413. The Fifth Circuit found it did not.

---

compensatory damages for mental anguish or lost profits, the Court will still analyze punitive damages in this case because it has awarded nominal damages.

Then, in *Malvino v. Delluniversita*, 840 F.3d 223, 229 (5th Cir. 2016), the Fifth Circuit repeated that the *Gil Ramirez* decision "concluded that municipal entities are immune from damages that are at all punitive." The City reads this more broadly than was intended—that is, the City ignores the necessary context of RICO damages and the entire statutory analysis in *Gil Ramirez*. RICO's treble damages are unique in that they "serve[] both compensatory and punitive purposes." *Id.* at 230. The takeaway from the one line that the City cites from *Malvino* is that it is impossible to separate the compensatory and punitive aspects of RICO treble damages because "Congress wrote no single-damage alternative." *Gil Ramirez*, 786 F.3d at 413. Further, there is no explicit indication from Congress that municipalities could recover under RICO. For this reason, in combination with the indivisible nature of "treble damages," the Fifth Circuit held a municipality could not be liable under RICO whatsoever.

Such is not the case under the FHA, which divides damages into "actual" and "punitive." 42 U.S.C. § 3613(c). The Fifth Circuit has never discussed whether the FHA's express inclusion of punitive damages allows for imposition of such damages against a municipality.

The Court finds that it need not decide today whether the FHA allows for punitive damages against a municipality because punitive damages are not appropriate in this case. There is no evidence that the City acted either "willfully [or] with gross disregard for the plaintiff's rights." *Gore*, 563 F.2d at 164.

Plaintiffs argue that the City acted with malice or reckless indifference when it endorsed the language from vocal citizens at the Hearing and then proceeded to deny accommodations to Plaintiffs despite a City official claiming the denial was "illegal" (Dkt. #124 at p. 13). The City asserts that no City councilmember endorsed statements at the Hearing nor did any City officials

"ever harass[], threaten[], abuse[] or otherwise mistreat[] any of the [H]ome's residents" (Dkt. #125 at p. 17).

The Court agrees with the City. While citizens at the Hearing directed harsh and distasteful language to Plaintiffs and WESL, the City cannot be held responsible for what those citizens said at the public Hearing. Further, there is no evidence that any City councilmember directed any such language at Plaintiffs. To be sure, Plaintiffs can only point to language directly from City councilmembers that is, at worst, neutral. In response to two different citizens at the Hearing, a City councilmember replied "Thank you, sir" and "Sir, your time is up" (Dkt. #126 at pp. 9–10). While Plaintiffs attempt to show this language is rooted in malice and reckless indifference, it simply is not.

In hindsight, the City may realize it did not handle the Hearing or the decision to deny Plaintiffs' accommodation with care. But if the Court assesses punitive damages against the City for making a particular decision despite one official's disagreement on the matter, it would render the willfulness and reckless indifference standard essentially meaningless.

For these reasons, the Court will not assess punitive damages against the City for its failure to reasonably accommodate Plaintiffs under the FHA.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs are only entitled to nominal damages for their successful FHA claim against the City.

It  is therefore **ORDERED** that Plaintiffs Constance Swanston, Women's Elevated Sober Living LLC, and Shannon Jones are awarded nominal damages in the amount of one (1) dollar.

**IT IS SO ORDERED**.

**SIGNED this 12th day of July, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE