# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CONSTANCE SWANSTON, WOMEN'S ELEVATED SOBER LIVING LLC, and SHANNON JONES, § § § § *Plaintiffs*, § § v. § § CITY OF PLANO, TEXAS, § § *Defendant*. § § § | Civil Action No. 4:19-cv-412 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs Constance Swanston and Women's Elevated Sober Living LLC's Preliminary Request For Attorneys' Fees and Costs (Dkt. #129) and Final Request For Attorneys' Fees and Costs (Dkt. #140); as well as Plaintiff Shannon Jones' Motion For Attorneys' Fees and Costs (Dkt. #130). Having considered the motions and the relevant pleadings, the Court finds that Plaintiffs Constance Swanston and Women's Elevated Sober Living LLC's Preliminary Request For Attorneys' Fees and Costs (Dkt. #129) should be **DENIED as moot**; Plaintiffs Constance Swanston and Women's Elevated Sober Living LLC's Final Request For Attorneys' Fees And Costs (Dkt. #140) should be **GRANTED in part**; and Plaintiff Shannon Jones' Motion For Attorneys' Fees and Costs (Dkt. #130) should be **GRANTED**.

## BACKGROUND

The background of this case is more fully set forth in the Court's Memorandum Opinions and Orders and Findings of Fact and Conclusions of Law (Dkts. #120, #138). Briefly, this Court conducted a bench trial in the above-styled matter on February 8–9, 2021. Following the bench trial, the Court issued its Memorandum Opinion and Findings of Fact and Conclusions of Law as

to Defendant, City of Plano, Texas's (the "City") liability (Dkt. #120). The Court found the City liable for failing to accommodate Plaintiffs Constance Swanston ("Ms. Swanston"), Women's Elevated Sober Living LLC ("WESL"), and Shannon Jones ("Ms. Jones") under the Fair Housing Act ("FHA") and Americans With Disabilities Act ("ADA"). The Court entered a permanent injunction prohibiting Defendant the City of Plano, Texas (the "City") from (1) restricting the occupancy of the sober living home located at 7312 Stoney Point Drive in Plano, Texas (the "Home"), to less than fifteen residents as long as the property operates as an FHA- and ADA-compliant sober living home; (2) enforcing any other restriction on the use of the property as a sober living home that violates the FHA or ADA; and (3) retaliating against Plaintiffs for having pursued housing-discrimination complaints under the FHA and ADA. The Court ordered briefing on damages following its liability determinations and held a hearing on damages and attorneys' fees on July 1, 2022.

  The Court declined to award compensatory damages for mental anguish and lost profits, as well as punitive damages against the City (Dkt. #138). The Court awarded Plaintiffs only nominal damages in the amount of one dollar. The Court must now determine how much to award Plaintiffs, if any, in attorneys' fees and costs. Ms. Jones filed her motion for attorneys' fees and costs on November 17, 2021 (Dkt. #130); Ms. Swanston and WESL filed a preliminary application for fees and costs on November 9, 2021 (Dkt. #129). The City responded on November 22, 2021 (Dkt. #131) and December 1, 2021 (Dkt. #132). Plaintiffs replied on December 6, 2021 (Dkt. #133) and December 29, 2021 (Dkt. #134), respectively. The Court ordered supplemental briefing from the parties after it issued its order as to damages (Dkt. #139). Ms. Swanston and WESL filed their final application for fees and costs on July 13, 2022 (Dkt. #140), and the City filed its response on July 20, 2022 (Dkt. #141). On July 23, 2022, Ms. Swanston and WESL replied (Dkt. #143), and

2

on July 27, 2022, the City filed its sur-reply (Dkt. #144). The Court notes that Ms. Swanton and WESLs' final application for fees and costs supplants the preliminary application.

## LEGAL STANDARD

Under the FHA, attorneys' fees and costs are recoverable for the prevailing party. *Lopez v. City of Dall. Tex.*, 328 F. App'x 944, 945 (5th Cir. 2009). Courts use the lodestar method to calculate reasonable attorney's fees. To be a prevailing party, "a plaintiff must (1) obtain actual relief, such as an enforceable judgment or consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Id.* (quoting *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) and *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013)). To determine the appropriate amount in attorneys' fees, courts must first calculate the lodestar by multiplying the number of hours an attorney spent on the case by an appropriate hourly rate. *Combs v. City of Huntington*, 829 F.3d 388, 39–92 (5th Cir. 2016). A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The lodestar is presumptively reasonable. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The party seeking attorneys' fees must present adequately recorded time records. *Id.* The court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.*

The court then considers whether the circumstances warrant a lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any adjustment, the court considers twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (internal citation omitted).

## ANALYSIS

Plaintiffs, as the prevailing party in this matter, seek an award of attorneys' fees and costs incurred in pursuit of their claims against the City. Plaintiff Shannon Jones ("Ms. Jones") seeks attorneys' fees in the amount of $39,775.00 and litigation expenses in the amount of $11,076.80. Plaintiffs Constance Swanston ("Ms. Swanston") and Women's Elevated Sober Living LLC

4

("WESL") seek attorneys' fees in the amount of $605,921.88 and litigation expenses in the amount of $34,918.97, for a total amount of $640,840.85. Because Ms. Jones did not seek monetary damages in this suit, the Court will first consider her claims for attorneys' fees and costs.

## I. Ms. Jones' Attorneys' Fees

The City contests Ms. Jones' calculation of fees because she did not reduce downward for losing two of her three claims, rendering her request for fees excessive. Specifically, the City asserts that Ms. Jones should not recover fees for "legal services incurred prosecuting (including conducting discovery) the two claims Plaintiffs lost, . . . which are not factually or legally related to the failure to accommodate claim upon which Jones prevailed" (Dkt. #132 ¶ 4). Therefore, the City urges that the Court reduce the lodestar calculation by at least 66%.

Ms. Jones responds that her requests "relate intimately to her claim for a reasonable accommodation" and that "[t]he prosecution of her case for a reasonable accommodation included the necessary overlap of evidence to establish other claims of intentional discrimination and disparate impact" (Dkt. #133 at p. 2).

When faced with an argument like the City makes here—that Ms. Jones' requested fee is inflated by work done to further unsuccessful but intertwined claims—the Court has two options: (1) it may attempt to identify the specific hours that should be eliminated; or (2) it may reduce the award to account for the limited success. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). Although this "results obtained" analysis is "usually [] subsumed" within the lodestar, the Court may address it instead when analyzing whether enhancement or reduction is appropriate under the *Johnson* factors. *See id.* at 434 & n.9; *Combs*, 829 F.3d at 392–93 ("In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award. The court must first calculate the lodestar, . . . [which] the court may enhance or decrease [] based on the twelve *Johnson*

factors . . . .") (internal citations omitted). The key is simply that the Court does not consider the City's argument under both its lodestar calculation and its *Johnson*-factor analysis, which would result in "impermissible double counting." *See Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

It is difficult—if not practically impossible—to attempt to identify specific hours that should be eliminated in a case like this, where all claims shared a common core of facts and were based on related legal theories. *See Hensley*, 461 U.S. at 435. The City's argument is better suited for consideration under the *Johnson* factors rather than in the computation of the base lodestar. The City does not seek line-item reduction of the lodestar due to "excessive, duplicative, or inadequately documented" time. *See Combs*, 829 F.3d at 392. Instead, the core of the City's argument is that the lodestar should be decreased proportionally to reflect the relative level of Ms. Jones' success. This concern is squarely reflected in the *Johnson* factors, *see id.* at 391 n.1, which the Court may use to "enhance *or decrease*" the lodestar. *Id.* at 392 (emphasis added).

Accordingly, the Court first determines the base lodestar by calculating the product of reasonable hours times a reasonable rate, removing any duplicative or unnecessary hours in the billing submitted by Ms. Jones. The Court then analyzes the *Johnson* factors to determine whether the lodestar should be adjusted downward, as the City suggests, to reflect the actual results obtained in this case.[1]

---

[1] This is the framework endorsed by the Supreme Court in *Hensley*. *See* 461 U.S. at 434–36 (explaining that "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," but that the inquiry is not complete until the Court determines whether to adjust the fee upward or downward after considering other factors, including the "important factor" of "results obtained").

### A. The Lodestar

The Court determines that the rate of $250.00 suggested by Ms. Jones' counsel is reasonable. The City does not contest this. Further, the Court finds reasonable the 159.1 hours counsel submits he spent on this case. Likewise, the City does not contest this. The Court does not remove any duplicate or unnecessary hours in the billing, as it finds that Ms. Jones' counsel already omitted, deleted, or reduced approximately ten hours of his personal time and approximately twenty hours of his co-counsel's time. Therefore, the Court finds that the lodestar amount equals $39,775.

### B. The *Johnson* Factors

After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Here, the City argues that the "results obtained" require that the Court adjust the lodestar downward. As mentioned, Ms. Jones asserts her requests "relate intimately to her claim for a reasonable accommodation" and that "[t]he prosecution of her case for a reasonable accommodation included the necessary overlap of evidence to establish other claims of intentional discrimination and disparate impact" (Dkt. #133 at p. 2). The Court agrees.

The hours counsel billed in litigation for each of the claims Ms. Jones pursued—disparate treatment, disparate impact, and failure to reasonably accommodate under the ADA and FHA—would not have been materially reduced if Ms. Jones brought only a failure to accommodate claim. This is because a failure to accommodate claim under the ADA and FHA builds upon a claim of discriminatory practice. This is evident in the construction of the relevant statutes and the Court's Memorandum Opinion and Findings of Fact and Conclusions of Law as to the City's liability (Dkt. #120).

Under the FHA, it is unlawful to sell, rent, or otherwise make unavailable or deny "a dwelling to any buyer or renter because of a handicap" of "that buyer or renter"; "a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available"; or "any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1)(A)–(C). For purposes of this subsection, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3).

Further, Congress enacted the ADA "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001); *see* 42 U.S.C. § 12101(b)(1)–(4). Under Title II of the ADA, a "qualified individual with a disability" cannot "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" "by reason of such disability." 42 U.S.C. § 12132. Three, similar theories of liability exist under the FHA and ADA: (1) disparate treatment (or intentional discrimination); (2) disparate impact (or discriminatory effect); and (3) failure to make a reasonable accommodation. *Avalon Residential Care Homes, Inc. v. City of Dall.*, 130 F. Supp. 2d 833, 839 (N.D. Tex. 2000) (FHA); *Davis v. Grand Prairie Sports Facilities Dev. Corp.*, Inc., No. 3:06-CV-744, 2007 WL 9711467, at *2 (N.D. Tex. Mar. 27, 2007) (ADA). Notably, "[f]or each respective theory, the same analysis generally applies." *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 967 (7th Cir. 2018).

Plaintiffs succeeded on their claim for failure to reasonably accommodate under both the ADA and FHA. To succeed on this claim, Plaintiffs had to prove that (1) the residents of the Home are disabled, (2) Plaintiffs requested an accommodation and the City denied it, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford

8

WESL residents equal opportunity to use and enjoy the Home. As reflected in the Court's opinion (Dkt. #120), the residents' disability status was relevant for each of Plaintiffs' claims, including the two unsuccessful claims. Further, Plaintiffs could not have proved the latter three elements of a reasonable accommodation claim without their counsel working through the same legal theories and factual evidence necessary for the disparate impact or disparate treatment claim. To be sure, the City makes only one conclusory assertion on this point—that the two claims upon which Plaintiffs lost "are not factually or legally related to the failure to accommodate claim upon which Jones prevailed" (Dkt. #132 ¶ 4). For the foregoing reasons, this is inaccurate.

Additionally, as Plaintiffs asserted at the July 1, 2022 hearing, the Court should not consider the result in this case to be a 1/3 win for the Plaintiffs. Although they only proved one claim of discrimination, they only needed to prove one to secure a permanent injunction allowing them to continue operating and living in the Home. Because Ms. Jones only sought injunctive relief in this case, her degree of success is unrelated to Ms. Swanston's and WESL's requests for damages. Because Ms. Jones successfully secured the injunctive relief she sought, the Court declines to adjust the lodestar under this factor.

Considering the remaining factors, the Court is not inclined to adjust the lodestar in either direction. As mentioned, the *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717–19). Neither party urges the Court to adjust the lodestar based on these other considerations. "Still, the Court has considered them on its own initiative; and, having done so, finds that none of the other factors counsel in favor of a

9

modification of the lodestar.*" Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *15 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010). Accordingly, the Court declines to adjust the lodestar as it pertains to Ms. Jones.

## II.     Ms. Jones' Litigation Expenses

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Under 28 U.S.C. § 1920, courts may tax the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "[W]itness fees are recoverable as taxable costs under § 1920 if, at the time the deposition is taken, it appears likely that the testimony will be used in the case." *Deep Fix, LLC v. Marine Well Containment Co., LLC*, No. H-18-0948, 2020 WL 1845336, at *3 (S.D. Tex. Apr. 10, 2020).

As mentioned, Ms. Jones seeks litigation expenses in the amount of $11,076.80. She provided the Court with an itemized explanation of costs. The City responds that Ms. Jones' "explanation and documentation with respect to the recovery of deposition . . . is too conclusory to allow their recovery since copies of depositions that are duplicative or are for the convenience of counsel are not included in taxable costs" (Dkt. #132 ¶ 5). Specifically, the City claims that "[m]any of the witnesses who were deposed and/or testified at trial testified only about claims

10

upon which Plaintiffs did not prevail. Accordingly the fees and costs pertaining to tasks related to these witnesses can easily be segregated and eliminated" (Dkt. #132 ¶ 5, n.2). Ms. Jones replies that she "seeks reimbursement for costs . . . associated with Dr. Majer and depositions of her past fellow residents" (Dkt. #133 at p. 1).

Aside from court reporter fees, Ms. Jones indeed seeks fees for litigation expenses only for costs associated with the expert consulting and testimony of Dr. John M. Majer. Dr. Majer was critical in establishing the 'necessity' prong under 42 U.S.C. § 3604(f)(3)(B) of Ms. Jones's accommodation request" (Dkt. #133 at p. 2), and in the Court's analysis of therapeutic necessity. In arriving at its decision on the merits, the Court depended on the opinions that Dr. Majer developed during his "two-day visit to the Home, during which he fully toured the property; familiarized himself with the intake process and house rules; and spoke with ten to twelve residents, as well as Swanston and Jones" (Dkt. #120 at p. 31). Without retaining Dr. Majer as an expert consultant, Plaintiffs may not have succeeded on any claim in this suit. Thus, the Court finds that the expenses incurred to retain Dr. Majer and to cover the costs of the court reporters were reasonable. Accordingly, the Court finds Ms. Jones is entitled to litigation expenses in the amount of $11,076.80.

### III. Swanston's and WESL's Attorneys' Fees

Ms. Swanston and WESL seek attorneys' fees in the amount of $605,921.88 based on a 25% upward adjustment to the lodestar. The City contests this calculation of fees because Plaintiffs did not reduce downward for losing two of three claims, rendering the request excessive. Specifically, the City asserts that the Court should apply a substantial downward lodestar adjustment because Plaintiffs recovered only a portion of their requests for relief, both monetary and non-monetary.

### A. The Lodestar

The Court determines that the respective rates of $625.00 per hour for Mr. Richard Hunt and $525.00 per hour for Ms. Jeanne Huey are reasonable, especially given that these attorneys have specialized knowledge and experience in disability rights cases. The City does not contest this. Further, the Court finds reasonable the respective 717.2 hours and 69.2 hours the attorneys submit they spent on this case. Likewise, the City does not contest this. The Court does not remove any duplicate or unnecessary hours in the billing, as it finds that counsel already omitted, deleted, or reduced certain hours. Among other reasons, Mr. Hunt indicates he "reduced the total hours by the amount of time spent solely on claims denied by the Court," resulting in a total reduction of approximately $36,000 (Dkt. #140-1 at p. 1). After these reductions, the Court finds that the lodestar amount equals $484,737.50.

### B. The *Johnson* Factors

After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Here, Ms. Swanston and WESL urge the Court to apply a 25% upward adjustment "given the nature of the fee agreement, the time involved, the undesirability of the case and the results obtained" (Dkt. #140 at p. 1). The City responds that the "results obtained" require the Court to adjust the lodestar significantly downward and that the lodestar amount already accounts for loss of other employment in taking the case, time limitations imposed by client or circumstances, and case undesirability. Thus, the City submits the Court should not consider these factors.

The City correctly cites to *Fessler* for the proposition that "[t]he most critical factor in determining a reasonable fee is the degree of success obtained." *Fessler v. Porcelana Corona De*

12

*Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) (internal citations and quotations omitted). Key to analyzing the degree of success is whether the successful and unsuccessful claims are related. *See id.* As previously reasoned, the claims in this case were "inextricably intertwined," allowing counsel for Plaintiffs to "claim all hours reasonably necessary to litigate those issues." *Id.* (internal citations and quotations omitted).

Because the successful and unsuccessful "claims cannot be disentangled," the Court shifts its focus "to the results obtained." *Id.* at 416. Unlike Ms. Jones who sought only injunctive relief, Ms. Swanston and WESL requested injunctive relief, as well as $300,000 in mental anguish; $1,050,000 in lost profits; and $1,000,000 in punitive damages. The Court granted a permanent injunction against the City that would allow operation of the Home at full capacity. However, the Court awarded only nominal damages, finding Ms. Swanston and WESL had not established evidence that could legally support compensatory or punitive damages (Dkt. #138).

"[I]n a private civil rights suit, a district court must consider any disparity between the amount of damages sought and the amount of damages awarded." *Combs*, 829 F.3d at 395–96. But "the district court 'necessarily has discretion in making this equitable judgment.'" *Id.* at 396 (quoting *Hensley*, 461 U.S. at 436–37). While the Court in this case must consider the "results obtained" by Plaintiffs, the Court does so with other *Johnson* factors in mind: the time and labor required, the contingency fee, and the case undesirability.

As an initial matter, this was a civil rights lawsuit against a city for disability discrimination under the ADA and the FHA—not a private tort action like that in *Fessler*. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Although "proportionality remains 'an

appropriate consideration,'" fee awards need not "necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Combs*, 829 F.3d at 396 (first quoting *Hernandez v. Hill Country Telephone Co–Op, Inc.*, 849 F.2d 139, 144 (5th Cir. 1988); then quoting *Rivera*, 477 U.S. at 574). In civil rights cases, a proportionality requirement disrupts the ability "for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts" thereby undermining "Congress'[] purpose in enacting civil rights statutes." *Id.* Further, "[r]egardless of the form of relief [s]he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Rivera*, 477 U.S. at 574.

With this backdrop depicting the nature of attorneys' fees in civil rights litigation, the Court does not consider the result in this case to be a one-third win for Plaintiffs. Although Plaintiffs only proved one claim of discrimination, they only needed to prove one to secure what they ultimately hoped for—a permanent injunction allowing them to continue operating and living in the Home. Plaintiffs did just this. And as "*Hensley* holds[,] there should be no reduction in attorney's fees where plaintiff has prevailed and achieved substantial success on only part of its suit involving interrelated claims." *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991) (citing *Hernandez*, 849 F.2d at 144).

Further, this case underscores the undesirability of civil rights litigation. Counsel for Ms. Swanston and WESL took this case on a contingency basis and have litigated the matter for over three years, undertaking "an immediate 20% loss of revenue with the long-term possibility that none of that revenue would be recovered" (Dkt. #140, Exhibit 1). Aware of the potential losses, Plaintiffs' counsel went up against a municipality with substantial financial resources, a large in-house legal staff, and representation by a firm with 19 attorneys. The City also refused to settle the

case under any circumstances, despite the fact that the City's Chief Building Official indicated that the failure to accommodate was unlawful (Plaintiffs' Trial Exhibit 22). While the City's treatment of Plaintiffs was not, alone, sufficient for the Court to award monetary damages, the Court considers these factors in its determination of attorneys' fees. *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-912, 2021 WL 3702483, at *6 (E.D. Tex. June 4, 2021) ("The risk of non-recovery and undertaking expensive litigation against well-financed corporate defendants on a contingent fee has been held to make a case undesirable, warranting a higher fee." (cleaned up)).

Having considered each of these factors, the Court finds that the results obtained by Plaintiffs would likely warrant a downward adjustment to the lodestar in a private torts suit. However, given the inherent nature of civil rights litigation, Plaintiffs' success on their request for injunctive relief, and the undesirability of this case, the Court finds that the lodestar amount is reasonable. Accordingly, the Court declines to adjust the lodestar in either direction and will award attorneys' fees in the amount of $484,737.50.

### IV. Ms. Swanston and WESLs' Litigation Expenses

As mentioned, Ms. Swanston and WESL seeks litigation expenses in the amount of $34,918.97. They provide a breakdown of their costs as follows:

> a. Filing and service fees in the amount of $400.00[;] b. Costs of printed or electronically recorded transcripts in the amount of $9,670.30[;] c. Witness subpoena and other fees in the amount of $350.00[;] d. Copying costs for materials necessarily obtained for use in the case in the amount of $718.67

(Dkt. #140, Exhibit 1). Ms. Swanston and WESL also incurred $23,780.00 in expert witness fees for Dr. Majer. Defendants do not respond to Ms. Swanston and WESLs' requests for costs.

Having previously found that Dr. Majer was critical in establishing the 'necessity' prong under 42 U.S.C. § 3604(f)(3)(B) of Ms. Jones's accommodation request" (Dkt. #133 at p. 2), the Court determined that the expenses incurred to retain Dr. Majer were reasonable.

15

For these reasons, the Court will award Ms. Swanston and WESL litigation expenses in the amount of $34,918.97.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Shannon Jones' Motion For Attorneys' Fees And Costs (Dkt. #130) is **GRANTED**.

It is further **ORDERED** that:

1. Ms. Shannon Jones is awarded attorneys' fees in the amount of $39,775; and

2. Ms. Shannon Jones is awarded expenses in the amount of $11,076.80.

It is further **ORDERED** that Plaintiffs Constance Swanston and Women's Elevated Sober Living LLC's Preliminary Request For Attorneys' Fees and Costs (Dkt. #129) is **DENIED as moot**.

It is further **ORDERED** that Plaintiffs Constance Swanston and Women's Elevated Sober Living LLC's Final Request For Attorneys' Fees and Costs (Dkt. #140) is **GRANTED in part**;

It is further **ORDERED** that:

1. Ms. Swanston and WESL are awarded attorneys' fees in the amount of $484,737.50; and

2. Ms. Swanston and WESL are awarded expenses in the amount of $34,918.97.

**IT IS SO ORDERED**.
SIGNED this 18th day of August, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE